IN THE UNITED STATES
COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| STATESMAN II APARTMENTS, INC., | ) | No. 04-805C and No. 04-806C |
| | ) | (Consolidated) |
| Plaintiff, | ) | |
| v. | ) | Judge Lettow |
| | ) | |
| United States, | ) | **FIRST AMENDED COMPLAINT OF PLAINTIFF** |
| | ) | **BEACH HOUSE DEVELOPMENT COMPANY** |
| Defendant. | ) | |

## Preliminary Statement

1. Plaintiff Beach House Development Company ("Beach House") brings this action for damages resulting from the failure of the Defendant, United States of America, acting through the Department of Housing and Urban Development ("HUD"), to provide for automatic annual rent increases in 1998, 1999, 2000, 2001 and 2002 for the Lakeshore Village project ("Lakeshore Village"). Pursuant to the Housing Assistance Payment Contract ("HAP Contract") entered into between Beach House and HUD, Beach House is entitled to annual rent increases for the subject property more fully described herein. HUD and its agents have breached the HAP Contract by their failure and subsequent refusal to grant the rent increases, mandated by the HAP Contract, resulting in damages to Beach House in the amount of at least $384,000.

## Jurisdiction

2. This Court has subject matter jurisdiction pursuant to the provisions of the Tucker Act, 28 U.S.C. § 1491, as this claim is founded upon breaches of an express contract entered into between Beach House and HUD.

## Parties

3. Beach House is an Ohio Limited Partnership.

4. Beach House is the owner of a certain property known as Lakeshore Village which is located at 16151 Lake Shore Blvd., Cleveland, Ohio and consists of 102 two-bedroom and 6 three-bedroom units.

5. HUD is an agency of the United States of America and at all times relevant to the allegations in this Complaint was acting as an agent of the United States of America. The actions of HUD are therefore imputed to the United States of America.

## Statement of Operative Facts

6. Pursuant to the United States Housing Act of 1937, 42 U.S.C. 1437, *et seq.*, specifically 42 U.S.C. 1437f ("Section 8"), and the Department of Housing and Urban Development Act, 42 U.S.C. 3531, *et seq.*, Beach House entered into a HAP Contract with HUD for Lakeshore Village ("Lakeshore Village HAP Contract"), which was designated Lakeshore Village Project, HUD project number OH 12-002-012. Said Contract was effective October 4, 1982, for 60 units and October 25, 1982, for 48 units. (See Lakeshore Village HAP Contract attached as Exhibit A.)

7. Pursuant to the terms of the Lakeshore Village HAP Contract, HUD was to provide housing assistance payments to Beach House for units in the Lakeshore Village Project under lease by lower-income families.

8. The Lakeshore Village HAP Contract set forth the initial contract rent for each unit at $474 for two bedroom units and $537 for three bedroom units per month ("Initial Contract Rent"). Included within that Initial Contract Rent was an initial difference between that rent and fair market rent for comparable unassisted units of 20%.

9. Pursuant to Section 1.6(f)(1) of the Lakeshore Village HAP Contract, Beach House was required to submit monthly requests to HUD for housing assistance payments.

10. Under the provisions of 42 U.S.C. § 1437f(c)(1), the housing assistance payments provided by HUD were designed to reimburse Beach House for the difference between the rent called for under the Lakeshore Village HAP Contract for each unit ("Contract Rent") and the amount paid by each leasing family.

11. Section 1.8(b) of the Lakeshore Village HAP Contract, entitled "Automatic Annual Adjustments," contained a mechanism whereby the Contract Rent due Beach House was to be increased on an annual basis and provided in full as follows:

> (1) *Automatic Annual Adjustment Factors will be determined by the Government at least annually; interim revisions may be made as market conditions warrant. Such Factors and the basis for their determination will be published in the Federal Register. These published Factors will be reduced appropriately by the Government where utilities are paid directly by the Families.*
>
> (2) *On each anniversary date of the Contract, the Contract Rents shall be adjusted by applying the applicable Automatic Annual Adjustment Factor most recently published by the Government. Contract Rents may be adjusted upward or downward, as may be appropriate; however, in no case shall the adjusted Contract Rents be less than the Contract Rents on the effective date of the Contract.*

12. Section 1.8(d) of the Lakeshore Village HAP Contract further provided:

> (d) *Overall Limitation. Not withstanding any other provisions of this Contract, adjustments as provided in this Section shall not result in material differences between the rents charged for assisted and comparable unassisted units, as determined by the Government; provided, that this limitation shall not be construed to prohibit differences in rents between assisted and comparable unassisted units to*

*the extent that such differences may have existed with respect to the initial Contract Rents.*

13. On September 28, 1994, Congress enacted amendments to the United States Housing Act of 1937 including an amendment to 42 USCA §1437f(c)(2)(A) which limited adjustment of rents under HAP Contracts to situations where the owner demonstrates that the adjustment would not exceed comparable rents for unassisted units and required the deduction of one percent from the automatic annual adjustment factor ("AAAF") for units occupied by the same family ("Amendments"). Said Amendments were effective only for fiscal 1995 but were continued from year to year until they were made permanent for fiscal 1999 and thereafter.

14. After enactment of the Amendments, HUD issued Directive 95-12 ("Directive") to implement the Amendments. If existing contract rents exceeded HUD published fair market rents for the area, in order to receive an adjustment of rent, the Directive required owners to submit comparability studies showing comparable rents at least five percent above the existing rent. The Directive limited adjustments to the sum of comparable rent and initial difference. The Directive also provided for deduction of one percent from the AAAF for units occupied by the same families during the year and provided that adjustments in rent would only take effect 60 days from the date of application for same. Said Directive was effective only for fiscal 1995 but was continued from year to year until it was made permanent for fiscal 1999 and thereafter.

**<u>Count I</u>**
**(Breach of Contract Annual Rent Adjustment)**

15. Between contract inception and 1994, the monthly per unit Contract Rent for Lakeshore Village was increased pursuant to the provisions of Section 1.8(b) of the Lakeshore Village HAP Contract from $474 to $662 for two bedroom units and from $537 to $779 for three bedroom units.

16. Since the 1994 Contract Rent adjustment, the Government has published Automatic Annual Adjustment Factors each year.

17. Based upon the provisions of the Lakeshore Village HAP Contract cited above, Beach House was entitled to receive automatic Contract Rent adjustments for the years 1995 through 2002, which HUD has repeatedly failed to provide.

18. The failure by HUD to adjust the Contract Rents on the Lakeshore Village HAP Contract's anniversary dates resulted in substantially lower housing assistance payments being made by HUD to Beach House for Lakeshore Village since HUD's first failure to adjust the Contract Rent in 1995.

19. Despite Beach House's compliance with the express provisions of the Lakeshore Village HAP Contract, HUD continues to refuse to make retroactive rent adjustments for the years 1995 through 2002.

20. By its actions, HUD has breached the express terms of the Lakeshore Village HAP Contract in failing to grant automatic annual adjustments in the Contract Rent for the years 1995 through 2002.

21. As a result of HUD's breach of the HAP Contract between Beach House and HUD, Beach House has been damaged in an approximate amount of $384,000.

**Count II**
**(Breach of Contract - One Percent Reduction)**

22. Beach House realleges and revers the allegations contained in Paragraphs 1-21 of this Complaint as if fully rewritten herein.

23. HUD further breached the Lakeshore Village HAP Contract by reducing the AAAF by one percent for units occupied by the same tenant for the years 1995 through 2002.

**Count III**
**(Breach of Contract - Over-all Limitation)**

24. Beach House realleges and revers the allegations contained in Paragraphs 1-23 of this Complaint as if fully rewritten herein.

25. HUD further breached the Lakeshore Village HAP Contract by failing to apply the appropriate Overall Limitation of 120% of the sum of comparable rent and initial difference for the years 1995 through 2002.

**Count IV**
**(Breach of Contract - Comparability Studies and Time Limits)**

26. Beach House realleges and revers the allegations contained in Paragraphs 1-25 of this Complaint as if fully rewritten herein.

27. HUD further breached the Lakeshore Village HAP Contract by its application of the Directive's 60-day time limit and the requirement of Beach House to obtain comparability studies in order to obtain annual rent adjustments for the years 1995 through 2002.

28. On April 2, 2004, Beach House made a request to HUD for payment of the additional HAP payments alleged in the within Complaint and submitted the comparability studies for the years 1998 through 2002 and other documents required by the Directive. On April 23, 2004, said request was denied by HUD.

WHEREFORE, Beach House prays that this Court award it money damages in the amount of at least $384,000, all additional money damages suffered by Beach House from the filing of the within Complaint until entry of judgment, such additional other amounts that are proved at trial, together with pre- and post-judgment interest, attorney fees and any such other relief that the Court deems proper.

Respectfully submitted,

Dated: September 1, 2004

*/s/ Fred J. Livingstone*

Fred J. Livingstone
TAFT, STETTINIUS & HOLLISTER LLP
3500 BP Tower
200 Public Square
Cleveland, Ohio 44114-2302
(216) 241-2838

Attorney for Plaintiff

Of Counsel:
Mark J. Valponi
Majeed M. Makhlouf

**CERTIFICATE OF SERVICE**

I hereby certify that on September 1, 2004, a copy of the foregoing *First Amended Complaint of Beach House Development Company*. was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

Respectfully submitted,

*/s/ Fred J. Livingstone*

Fred J. Livingstone
TAFT, STETTINIUS & HOLLISTER LLP
3500 BP Tower
200 Public Square
Cleveland, Ohio 44114-2302
(216) 241-2838

Attorney for Plaintiff