SECTION 8 HOUSING ASSISTANCE PAYMENTS PROGRAM
SUBSTANTIAL REHABILITATION
PART I OF THE

**AMENDED CONTRACT**

# HOUSING ASSISTANCE PAYMENTS CONTRACT

PRIVATE-OWNER OR PHA OWNER PROJECT

| HAP CONTRACT LIST NUMBER AND DATE: | PROJECT NUMBER: |
| --- | --- |
| -80-251 4/10/80 Amended by: C-81-639 6/26/81 | OH 12-0008-069 |

This Housing Assistance Payments Contract *("Contract")* is entered into by and between the United States of America acting through the Department of Housing and Urban Development *("Government")*, and *SEE BELOW *("Owner")*, pursuant to the United States Housing Act of 1937 *("Act")*, 42 U.S.C. 1437, et seq., and the Department of Housing and Urban Development Act, 42 U.S.C. 3531, et seq.

*Statesman Apartment Development Company II, an Ohio Limited Partnership

The parties hereto agree as follows:

1.1 SIGNIFICANT DATES AND OTHER ITEMS: CONTENTS OF CONTRACT.

a. Effective Date of Contract. The effective date of this Contract is SEE EXECUTION OF CONTRACT IN STAGES, 19__. [This date shall be no earlier than the date of Government acceptance of the project.]

~~b. Term of Contract Where Relative Cost of Rehabilitation is Less Than 15 Percent of Value. The term of this Contract for any unit (see Section 1.4a, Alternative 1) shall be ____ years [not to exceed five years], beginning with the effective date of this Contract for~~ such unit.

c. Term of Contract Where Relative Cost of Rehabilitation Is 15 Percent or More of Value.

(1) Initial Term. The initial term of this Contract for any unit *(see Section 1.4a, Alternative 2)* shall be 5 years [not to exceed five years], beginning with the effective date of this Contract for such unit.

(2) Number and Length of Optional Additional Terms. The number and length of optional additional terms *(see Section 1.4a)* shall be 3 terms of 5 years each [not to exceed five years each].

(3) Maximum Total Term. The maximum total term of this Contract for any unit, including all renewals (see Section 1.4a) shall be 20 years. [Insert number as authorized by the Government pursuant to 24 CFR, Section 881.109, but in no event more than 20 years, or, in the case of a project owned by, or financed by a loan or a loan guarantee from, a State or local agency, the number, not to exceed 40, which will provide a term ending with the scheduled maturity date for the last payment under such financing.]

d. Fiscal Year. The ending date of each Fiscal Year *(see Section 1.4b)* shall be Sept. 30th [insert March 31, June 30, September 30, or December 31, as determined by the Government].

e. Maximum Housing Assistance Commitment. The maximum amount of the commitment for housing assistance payments under this Contract *(see Section 1.5a)* is $ 259,236, per annum.

f. Minimum Percentage of Occupancy by Very Low-Income Families. In the initial renting of the Contract Units, the Owner shall lease at least 30 percent [insert 30, or lower number if authorized by the Government in accordance with 24 CFR, Section 881.117] to Very Low-Income Families *(determined in accordance with the Government-established schedules and criteria)* and shall thereafter exercise his best efforts to achieve and maintain at least 30 percent occupancy of the Contract Units by Very Low-Income Families as determined in accordance with such schedules and criteria.

g. Contents of Contract. This Contract consists of Part I, Part II, and the following exhibits:

Exhibit A: The schedule showing the number of units by size *("Contract Units")* and their applicable rents *("Contract Rents")*;

Exhibit B: The project description;

Exhibit C: The statement of services, maintenance and utilities to be provided by Owner;

Exhibit D: The Affirmative Fair Housing Marketing Plan, if applicable; and

Additional exhibits: [Specify additional exhibits, if any. If none, insert "None."]

NONE

This Contract, including said exhibits, comprises the entire agreement between the parties hereto with respect to the matters contained therein, and neither party is bound by any representations or agreements of any kind except as contained herein or except agreements entered into in writing which are not inconsistent with this Contract.

2 OWNER'S WARRANTIES.

a. Legal Capacity. The Owner warrants that he has the legal right to execute this Contract and to lease dwelling units covered by this Contract.

b. Completion of Work. The Owner warrants that the project as described in Exhibit B is in good and tenantable condition and that the project has been completed in accordance with the terms and conditions of the Agreement to Enter into Housing Assistance Payments Contract *("Agreement")* or will be completed in accordance with the terms on which the project was accepted. The Owner further warrants that he will remedy any defects or omissions covered by this warranty if called to his attention within 12 months of the effective date of this Contract. The Owner and the Government agree that the continuation of this Contract shall be subject to the conditions set forth in Section 1.4f of the Agreement.

FAMILIES TO BE HOUSED; GOVERNMENT ASSISTANCE.

a. Families To Be Housed. The Contract Units are to be leased by the Owner to eligible Lower-Income Families *("Families")* for use and occupancy by such Families solely as private dwellings.

b. Government Assistance.

(1) The Government hereby agrees to make housing assistance payments on behalf of Families for the Contract Units, to enable such Families to lease Decent, Safe, and Sanitary housing pursuant to section 8 of the Act. Such housing assistance payments shall equal the difference between the Contract Rents for units leased by Families and the portion of such rents payable by Families as determined by the Owner in accordance with schedules and criteria established by the Government.

(2) If there is an Allowance for Utilities and Other Services and if such Allowance exceeds the Gross Family Contribution, the Owner shall pay the Family the amount of such excess on behalf of the Government upon receipt of funds from the Government for that purpose.

1.4 TERM OF CONTRACT; FISCAL YEAR.

a. Term of Contract.

[Alternative provisions - incorporate alternative 1 or 2]

Alternative 1 -- Where HUD has determined that the Cost of Rehabilitation Is Less Than 15 Percent of Value.

The term of this Contract for any unit shall be as stated in Section 1.1b; with no option for renewal in either party. If the project is completed in stages, this term shall be separately related to the units in each stage; Provided, however, that the total Contract term for all the stages, beginning with the effective date of the Contract with respect to the first stage, shall not exceed said Contract term plus two years.

Alternative 2 -- Where HUD Has Determined that the Cost of Rehabilitation Is 15 Percent or More of Value.

The initial term of this Contract for any unit shall be as stated in Section 1.1c(1). This Contract may be renewed at the sole option of the Owner, for the number and length of additional terms stated in Section 1.1c(2), provided that the total Contract term for any unit, including all renewals, shall not exceed the number of years stated in Section 1.1c(3). Renewal shall be automatic unless the Owner notifies the Government, no later than 60 days prior to the expiration of the current term, of his intention not to renew. If the project is completed in stages, the dates for the initial term and renewal terms shall be separately related to the units in each stage; Provided, however, that the total Contract term for all the stages, beginning with the effective date of the Contract with respect to the first stage, shall not exceed the total Contract term stated in Section 1.1c(3), plus two years. In any case where the project is owned by, or financed by a loan or loan guarantee from, a State or local agency, the housing assistance payments pursuant to this Contract with respect to any dwelling unit shall be payable over a period not to exceed 40 years.

b. Fiscal Year. The Fiscal Year for the project shall be the 12-month period ending on the date stated in Section 1.1d; Provided, however, that the first Fiscal Year for the project shall be the period beginning with the effective date of the Contract and ending on the last day of said established Fiscal Year which is not less than 12 months after such effective date. If the first Fiscal Year exceeds 12 months, the maximum total annual housing assistance payment in Section 1.5a may be adjusted by the addition of the pro rata amount applicable to the period of operation in excess of 12 months.

1.5 MAXIMUM HOUSING ASSISTANCE COMMITMENT; PROJECT ACCOUNT.

a. Maximum Housing Assistance Commitment. Notwithstanding any other provisions of this Contract *(other than paragraph b of this Section)* or any provisions of any other contract between the Government and the Owner, the Government shall not be obligated to make and shall not make any housing assistance payments under this Contract in excess of the amount per annum stated in Section 1.1e; Provided, however, that this amount shall be reduced commensurately with any reduction in the number of Contract Units or in the Contract Rents or pursuant to any other provisions of this Contract.

b. Project Account. In order to assure that housing assistance payments will be increased on a timely basis to cover increases in Contract Rents or decreases in Family Incomes:

(1) A Project Account shall be established and maintained, in an amount as determined by the Government consistent with its responsibilities under section 8(c)(6) of the Act, out of amounts by which the maximum Contract commitment per year exceeds amounts paid under the Contract for any Fiscal Year. This account shall be established and maintained by the Government as a specifically identified and segregated account. To the extent funds are available in said account, the maximum total annual housing assistance payments for any Fiscal Year may exceed the maximum amount stated in paragraph a of this Section to cover increases in Contract Rents or decreases in Family Incomes *(see Section 1.8)*. Any amount remaining in said account after payment of the last housing assistance payment with respect to the project shall be applied by the Government in accordance with law.

(2) Whenever the Government approved estimate of the required Annual Contribution exceeds the maximum Contract commitment then in effect, and would cause the amount in the Project Account to be less than an amount equal to 40 percent of such maximum Contract commitment, the Government shall, within a reasonable period of time, take such additional steps authorized by section 8(c)(6) of the Act as may be necessary to carry out this assurance, including *(as provided in that section of the Act)* "the reservation of annual contributions authority for the purpose of amending housing assistance contracts or the allocation of a portion of new authorizations for the purpose of amending housing assistance contracts."

1.6 HOUSING ASSISTANCE PAYMENTS TO OWNERS.

a. General.

(1) Housing assistance payments shall be paid to the Owner for units under lease by Families in accordance with the Contract. The housing assistance payment will cover the difference between the Contract Rent and that portion of said rent payable by the Family as determined in accordance with the Government-established schedules and criteria.

(2) The amount of housing assistance payment payable on behalf of a Family and the amount of rent payable by such Family shall be subject to change by reason of changes in Family Income, Family composition, or extent of exceptional medical or other unusual expenses, in accordance with the Government-established schedules and criteria; or by reason of adjustment by the Government of any applicable Allowance for Utilities and Other Services. Any such change shall be effective as of the date stated in a notification of such change to the Family.

b. Vacancies During Rent-up. If a Contract Unit is not leased as of the effective date of the Contract, the Owner shall be entitled to housing assistance payments in the amount of 80 percent of the Contract Rent for the unit for a vacancy period not exceeding 60 days from the effective date of the Contract, provided that the Owner (1) commenced marketing and otherwise complied with Section 1.3b of the Agreement, (2) has taken and continues to take all feasible actions to fill the vacancy, including, but not limited to, contacting applicants on his waiting list, if any, requesting the Public Housing Agency *("PHA")* and other appropriate sources to refer eligible applicants, and advertising the availability of the unit, and (3) has not rejected any eligible applicant, except for good cause acceptable to the Government.

c. Vacancies After Rent-up.

(1) If a Family vacates its unit *(other than as a result of action by the Owner which is in violation of the Lease or the Contract or any applicable law)*, the Owner shall receive housing assistance payments in the amount of 80 percent of the Contract Rent for a vacancy period not exceeding 60 days; Provided, however, that if the Owner collects any of the Family's share of the rent for this period in an amount which, when added to the 80 percent payments, results in more than the Contract Rent, such excess shall be payable to the Government or as the Government may direct. *(See also Section 1.9b.)* The Owner shall not be entitled to any payment under this subparagraph unless he: (i) immediately upon learning of the vacancy, has notified the Government of the vacancy or prospective vacancy and the reasons for the vacancy, and (ii) has taken and continues to take the actions specified in paragraphs b(2) and b(3) of this Section.

(2) If the Owner evicts a Family, he sh[illegible] be entitled to any payment under paragraph e(1) [illegible] is Section unless the request for such payment is supported by a cert[illegible]ation that (i) he gave such Family a written notice of the proposed eviction, stating the grounds and advising the Family that it had 10 days within which to present its objections to the Owner in writing or in person and (ii) the proposed eviction was not in violation of the Lease or the Contract or any applicable law;

d. Limitation on Payments for Vacant Units. The Owner shall not be entitled to housing assistance payments with respect to vacant units under this Section to the extent he is entitled to payments from other sources *(e.g., payments for losses of rental income incurred for holding units vacant for relocatees pursuant to Title I of the Housing and Community Development Act of 1974 or payments under Section 1.9b of this Contract).*

e. Government Not Obligated for Family Rent. The Government has not assumed any obligation for the amount of rent payable by any Family or the satisfaction of any claim by the Owner against any Family other than in accordance with Section 1.9b of this Contract. The financial obligation of the Government is limited to making housing assistance payments on behalf of Families in accordance with this Contract.

f. Owner's Monthly Requests for Payments.

(1) The Owner shall submit monthly requests to the Government for housing assistance payments. Each such request shall set forth: (i) the name of each Family and the address and/or number of the unit leased by the Family; (ii) the address and/or the number of units, if any, not leased to Families for which the Owner is claiming payments; (iii) the Contract Rent as set forth in Exhibit A for each unit for which the Owner is claiming payments; (iv) the amount of rent payable by the Family leasing the unit *(or, where applicable, the amount to be paid the Family in accordance with Section 1.3b(2));* and (v) the total amount of housing assistance payments requested by the Owner.

(2) Each of the Owner's monthly requests shall contain a certification by him that to the best of his knowledge and belief (i) the dwelling units are in Decent, Safe, and Sanitary condition, (ii) all the other facts and data on which the request for funds is based are true and correct, (iii) the amount requested has been calculated in accordance with the provisions of this Contract and is payable under the Contract, and (iv) none of the amount claimed has been previously claimed or paid.

(3) If the Owner has received an excessive payment, the Government, in addition to any other rights to recovery, may deduct the amount from any subsequent payment or payments.

(4) The Owner's monthly requests for housing assistance payments shall be made subject to penalty under 18 U.S.C. 1001, which provides, among other things, that whoever knowingly and willfully makes or uses a document or writing containing any false, fictitious, or fraudulent statement or entry, in any mat[illegible] within the jurisdiction of any department or agency of the United States, shall be fined not more than $10,000 or impri[illegible] for not more than five years, or both.

g.* Recoupment of Savings in Financing Cost.

(1) In the event that interim financing is continued after the first year of the term of the Contract and the debt service of the interim financing for any period of three months, after such first year, is less than the anticipated debt service under the permanent financing on which the Contract Rents were based, an amount reflecting the savings in financing cost, computed in accordance with paragraph g(2) of this Section, shall be credited by the Government to the Project Account, and withheld from housing assistance payments to the Owner. If during the course of the same year there is any period of three months in which the debt service is greater than the anticipated debt service under the permanent financing, an adjustment shall be made so that only the net amount of savings in financing cost for the year is credited by the Government to the Project Account and withheld from housing assistance payments to the Owner as aforesaid *(no increased payments shall be made to the Owner on account of any net excess for the year of actual interim debt service over the anticipated debt service under the permanent financing).* Nothing in this paragraph g shall be construed as requiring a reduction in the Contract Rents or precluding adjustments of Contract Rents in accordance with Section 1.8.

(2) The computation and recoupment under this paragraph g may be made on an annual or on a quarterly or other periodic basis, but in any event no later than as of the end of each Fiscal Year; Provided, however, that if recoupment is to be made less often than quarterly, the amounts of recoupment shall be computed on at least a quarterly basis and the funds shall be deposited in a special account from which withdrawals may be made only with the authorization of the Government. The manner of computing the amount of recoupment shall be as follows:

(i) Determine the amount by which the interest cost for the debt service for the period in question is less than the anticipated debt service under the permanent financing on which the Contract Rents were based;

(ii) Determine what percentage the amount found under paragraph g(2)(i) of this Section is of the aggregate Contract Rents for all Contract Units for the period in question;

(iii) Apply the percentage found in paragraph g(2)(ii) of this Section to the aggregate Contract Rents for those Contract Units which are included in the Owner's claim(s) for housing assistance payments for the period in question; and

(iv) The amount found in paragraph g(2)(iii) of this Section shall be credited to the Project Account and withheld from the next housing assistance payment or payments to the Owner.

MAINTENANCE, OPERATION AND INSPECTION.

a. Maintenance and Operation. The Owner agrees (1) to maintain and operate the Contract Units and related facilities so as to provide Decent, Safe, and Sanitary housing, and (2) to provide all the services, maintenance and utilities set forth in Exhibit C. If the Government determines that the Owner is not meeting one or more of these obligations, the Government shall have the right, in addition to its other rights and remedies under this Contract, to abate housing assistance payments in whole or in part.

b. Inspection.

(1) Prior to occupancy of any unit by a Family, the Owner and the Family shall inspect the unit and both shall certify, on forms prescribed by the Government, that they have inspected the unit and have determined it to be Decent, Safe, and Sanitary in accordance with the criteria provided in the prescribed forms. Copies of these reports shall be kept on file by the Owner for at least three years.

(2) The Government shall inspect or cause to be inspected each Contract Unit and related facilities at least annually and at such other times *(including prior to initial occupancy and rerenting of any unit)* as may be necessary to assure that the Owner is meeting his obligation to maintain the units in Decent, Safe, and Sanitary condition and to provide the agreed upon utilities and other services. The Government shall take into account complaints by occupants and any other information coming to its attention in scheduling inspections and shall notify the Owner and the Family of its determination.

c. Units Not Decent, Safe, and Sanitary. If the Government notifies the Owner that he has failed to maintain a dwelling unit in Decent, Safe, and Sanitary condition and the Owner fails to take corrective action within the time prescribed in the notice, the Government may exercise

[illegible]e this paragraph unless the project is subject to 24 CFR, Section 881.125.

any of its rights or remedies under the Contract, including abatement of housing assistance payments, even if the Family continues to occupy the unit. If, however, the Family wishes to be rehoused in another dwelling unit with section 8 assistance and the Government does not have other section 8 funds for such purposes, the Government may use the abated housing assistance payments for the purpose of rehousing the Family in another dwelling unit. Where this is done, the Owner shall be notified that he will be entitled to resumption of housing assistance payments for the vacated dwelling unit if (1) the unit is restored to Decent, Safe, and Sanitary condition, (2) the Family is willing to and does move back into the restored unit, and (3) a deduction is made for the expenses incurred by the Family for both moves.

d. <u>Notification of Abatement</u>. Any abatement of housing assistance payments shall be effective as provided in written notification to the Owner. The Government shall promptly notify the Family of any such abatement.

e. <u>Overcrowded and Underoccupied Units</u>. If the Government determines that a Contract Unit is not Decent, Safe, and Sanitary by reason of increase in Family size, or that a Contract Unit is larger than appropriate for the size of the Family in occupancy, housing assistance payments with respect to such unit will not be abated, unless the Owner fails to offer the Family a suitable unit as soon as one becomes vacant and ready for occupancy. In the case of an overcrowded unit, if the Owner does not have any suitable units or if no vacancy of a suitable unit occurs within a reasonable time, the Government will assist the Family in finding a suitable dwelling unit and require the Family to move to such a unit as soon as possible. The Owner may receive housing assistance payments for the vacated unit if he complies with the requirements of Section 1.6e(1).

1.8 <u>RENT ADJUSTMENTS.</u>

a. <u>Funding of Adjustments:</u> Housing assistance payments will be made in increased amounts commensurate with Contract Rent adjustments under this Section, up to the maximum amount authorized under Section 1.5a of this Contract.

b. <u>Automatic Annual Adjustments.</u>

(1) Automatic Annual Adjustment Factors will be determined by the Government at least annually; interim revisions may be made as market conditions warrant. Such Factors and the basis for their determination will be published in the Federal Register. These published Factors will be reduced appropriately by the Government where utilities are paid directly by the Families.

(2) On each anniversary date of the Contract, the Contract Rents shall be adjusted by applying the applicable Automatic Annual Adjustment Factor most recently published by the Government. Contract Rents may be adjusted upward or downward, as may be appropriate; however, in no case shall the adjusted Contract Rents be less than the Contract Rents on the effective date of the Contract.

c. <u>Special Additional Adjustments</u>. Special additional adjustments shall be granted, when approved by the Government, to reflect increases in the actual and necessary expenses of owning and maintaining the Contract Units which have resulted from substantial general increases in real property taxes, utility rates, or similar costs *(i.e., assessments, and utilities not covered by regulated rates)*, but only if and to the extent that the Owner clearly demonstrates that such general increases have caused increases in the Owner's operating costs which are not adequately compensated for by automatic annual adjustments. The Owner shall submit to the Government financial statements which clearly support the increase.

d. <u>Overall Limitation</u>. Notwithstanding any other provisions of this Contract, adjustments as provided in this Section shall not result in material differences between the rents charged for assisted and comparable unassisted units, as determined by the Government; provided, that this limitation shall not be construed to prohibit differences in rents between assisted and comparable unassisted units to the extent that such differences may have existed with respect to the initial Contract Rents.

e. <u>Incorporation of Rent Adjustment</u>. Any adjustment in Contract Rents shall be incorporated into Exhibit A by a dated addendum to the exhibit establishing the effective date of the adjustment.

f.[2] <u>Adjustment to Reflect Actual Cost of Permanent Financing</u>. This paragraph f shall apply if the project is not permanently financed until after the effective date of the Contract. After the project is permanently financed, the Financing Agency shall submit a certification to the Government as to the actual financing terms. If the actual debt service under the permanent financing is lower than the anticipated debt service on which the Contract Rents were based, the Contract Rents currently in effect shall be reduced commensurately, and the amount of the savings shall be credited to the Project Account. The maximum Contract commitment shall not be reduced. If the actual debt service is higher, the Contract Rents shall not be increased.

.9 <u>MARKETING AND LEASING OF UNITS.</u>

a. <u>Compliance with Equal Opportunity</u>. Marketing of units and selection of Families by the Owner shall be in accordance with the Owner's Government-approved Affirmative Fair Housing Marketing Plan, shown as Exhibit D, and with all regulations relating to fair housing advertising.

b. <u>Security and Utility Deposits.</u>

(1) The Owner may require Families to pay a security deposit in an amount equal to one month's Gross Family Contribution. If a Family vacates its unit, the Owner, subject to State and local law, may utilize the deposit as reimbursement for any unpaid rent or other amount owed under the Lease. If the Family has provided a security deposit, and it is insufficient for such reimbursement, the Owner may claim reimbursement from HUD, not to exceed an amount equal to the remainder of one month's Contract Rent. Any reimbursement under this Section shall be applied first toward any unpaid rent. If a Family vacates the unit owing no rent or other amount under the Lease or if the amount owed is less than the amount of the security deposit, the Owner shall refund the full amount or the unused balance, as the case may be, to the Family.

(2) In those jurisdictions where interest is payable by the Owner on security deposits, the refunded amount shall include the amount of interest payable. All security deposit funds shall be deposited by the Owner in a segregated bank account, and the balance of this account, at all times, shall be equal to the total amount collected from tenants then in occupancy, plus any accrued interest. The Owner shall comply with all State and local laws regarding interest payments on security deposits.

(3) Families shall be expected to obtain the funds to pay security and utility deposits, if required, from their own resources and/or other private or public sources.

c. <u>Eligibility, Selection and Admission of Families.</u>

(1) The Owner shall be responsible for determination of eligibility of applicants, selection of families from among those determined to be eligible, and computation of the amount of housing assistance payments on behalf of each selected Family in accordance with schedules and criteria established by the Government. *(See also Section 1.11.)*

(2) The Lease entered into between the Owner and each selected Family shall be on the form of Lease approved by the Government.

(3) The Owner shall make a reexamination of Family Income, composition, and the extent of medical or other unusual expenses incurred by the Family, at least annually *(except that such reviews may be made at intervals of no longer than two years in the case*

---

[2] ...lete this paragraph unless the project is subject to 24 CFR, Section 881.125.



52622A
HUD 52622A (6-76)

*of eligible Families*, and appropriate redeterminations shall be made by the Owner of the amount of Family contribution and the amount of housing assistance payment, all in accordance with schedules and criteria established by the Government. In connection with the reexamination, the Owner shall determine what percentage of Families in occupancy are Very Low Income Families. If there are fewer than 30 percent Very Low Income Families in occupancy, the Owner shall report the fact to the Government and shall adopt changes in his admission policies to achieve, as soon as possible, at least 30 percent occupancy by such Families.

d. Rent Redetermination after Adjustment in Allowance for Utilities and Other Services. In the event that the Owner is notified of a Government determination making an adjustment in the Allowance for Utilities and Other Services applicable to any of the Contract Units, the Owner shall promptly make a corresponding adjustment in the amount of rent to be paid by the affected Families and the amount of housing assistance payments.

e. Processing of Applications and Complaints. The Owner shall process applications for admission, notifications to applicants, and complaints by applicants in accordance with applicable Government requirements and shall maintain records and furnish such copies or other information as may be required by the Government.

f. Government Review; Incorrect Payments. In making housing assistance payments to Owners, the Government will review the Owner's determinations under this Section. If as a result of this review, or other reviews, audits or information received by the Government at any time, it is determined that the Owner has received improper or excessive housing assistance payments, the Government shall have the right to deduct the amount of such overpayments from any amounts otherwise due the Owner, or otherwise effect recovery thereof.

.10 TERMINATION OF TENANCY.

The Owner shall be responsible for termination of tenancies, including evictions. However, conditions for payment of housing assistance payments for any resulting vacancies shall be as set forth in Section 1.6c.

11 REDUCTION OF NUMBER OF CONTRACT UNITS FOR FAILURE TO LEASE TO ELIGIBLE FAMILIES.

a. After First Year Of Contract. If at any time, beginning six months after the effective date of this Contract, the Owner fails for a continuous period of six months to have at least 80 percent of the Contract Units leased or available for leasing by Families, the Government may on 30 days notice reduce the number of Contract Units to not less than the number of units under lease or available for leasing by Families, plus 10 percent of such number if the number is 10 or more, rounded to the next highest number.

b. At End of Initial and Each Renewal Term. At the end of the initial term of the Contract and of each renewal term, the Government may, by notice to the Owner, reduce the number of Contract Units to not less than (1) the number of units under lease or available for leasing by Families at that time or (2) the average number of units so leased or available for leasing during the last year, whichever is the greater number, plus 10 percent of such number if the number is 10 or more, rounded to the next highest number.

c. Restoration of Units. The Government will agree to an amendment of the Contract to provide for subsequent restoration of any reduction made pursuant to paragraph [illegible] of this Section if the Government determines that the restoration is justified as a result of changes in demand and in the light of the Owner's record of compliance with his obligations under this Contract and if annual contributions contract authority is available; and the Government will take such steps authorized by section 8(c)(6) of the Act as may be necessary to carry out this assurance *(see Section 1.5)*.

WARNING: 18 U.S.C. 1001 provides, among other things, that whoever knowingly and willfully makes or uses a document or writing containing any false, fictitious, or fraudulent statement or entry, in any matter within the jurisdiction of any department or agency of the United States, shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

OWNER ______________________

By ______________________

______________________
*(Official Title)*

Date ______________________ 19 ____

United States of America
Secretary of Housing and Urban Development

By ______________________

______________________
*(Official Title)*

Date ______________________ 19 ____

SEE EXECUTION OF CONTRACT IN STAGES

[If project is to be completed and accepted in stages, execution of the Contract with respect to the several stages appears on the following pages of Contract.]



52622A

HUD 52622A (6-76)

EXECUTION OF CONTRACT WITH RESPECT TO CONTRACT UNITS COMPLETED AND ACCEPTED IN STAGES
STAGE 1

This Contract is hereby executed with respect to the units described in Exhibit A-1.

EFFECTIVE DATE. The effective date of this Contract is November 14, 1980, 19__. [Insert date which shall be no earlier than the date of Government acceptance of the project.]

4 - 1BR Units
12 - 2BR Units
16 Total

16711 & 16727 VanAken Blvd.

OWNER Statesman Apartment Development Company, II, an Ohio Limited Partnership

By [signature]
Jerome Spevack
Managing General Partner
(Official Title)

Date January 19, 19 81

United States of America
Secretary of Housing and Urban Development

By [signature]
George T. Ray, Jr.
Service Office Supervisor
(Official Title)

Date Jan. 21, 19 81

EXECUTION OF CONTRACT WITH RESPECT TO CONTRACT UNITS COMPLETED AND ACCEPTED IN STAGES
STAGE 2

This Contract is hereby executed with respect to the units described in Exhibit A-2.

EFFECTIVE DATE. The effective date of this Contract is February 1, 19 81. [Insert date which shall be no earlier than the date of Government acceptance of the project.]

12 - 1BR Units
3 - 2BR Units
15 Total

OWNER Statesman Apartment Development Co., II an Ohio Limited Partnership

By [signature]
Jerome Spevack
Managing General Partner
(Official Title)

Date May 15, 19 81

United States of America
Secretary of Housing and Urban Development

By [signature] for
George T. Ray, Jr.
Service Office Supervisor
(Official Title)

Date 7-1-1981, 19__

EXECUTION OF CONTRACT WITH RESPECT TO CONTRACT UNITS COMPLETED AND ACCEPTED IN STAGES
STAGE 3

This Contract is hereby executed with respect to the units described in Exhibit A-3.

EFFECTIVE DATE. The effective date of this Contract is April 1, 19 81. [Insert date which shall be no earlier than the date of Government acceptance of the project.]

Buildings #2 and #4
Final Stage

OWNER Statesman Apartment Development Co., II an Ohio Limited Partnership

By [signature]
Jerome Spevack
Managing General Partner
(Official Title)

Date May 15, 19 81

United States of America
Secretary of Housing and Urban Development

By [signature] for
George T. Ray, Jr.
Service Office Supervisor
(Official Title)

Date 7-1-1981, 19__



52622A 6-76
HUD-52622A (6-76)

U. S. DE... MENT OF HOUSING AND URBAN DEVELOPMENT
SECTION 8 HOUSING ASSISTANCE PAYMENTS PROGRAM
SUBSTANTIAL REHABILITATION

PART II OF THE

# HOUSING ASSISTANCE PAYMENTS CONTRACT

PRIVATE-OWNER OR PHA-OWNER PROJECT

| HAP CONTRACT LIST NUMBER AND DATE: | PROJECT NUMBER: |
|---|---|
| C-80-251 4/10/80 | OH 12-0008-069 |

Amended by: C-81-639 6/26/81

2.1 NONDISCRIMINATION IN HOUSING.

a. The Owner shall not in the selection of Families, in the provision of services, or in any other manner, discriminate against any person on the grounds of race, color, creed, religion, sex, or national origin. No person shall be automatically excluded from participation in, or be denied the benefits of, the Housing Assistance Payments Program because of membership in a class such as unmarried mothers, recipients of public assistance, etc.

b. The Owner shall comply with all requirements imposed by Title VIII of the Civil Rights Act of 1968, and any rules and regulations pursuant thereto.

c. The Owner shall comply with all requirements imposed by Title VI of the Civil Rights Act of 1964, Public Law 88-352, 78 Stat. 241; the regulations of the Department of Housing and Urban Development issued thereunder, 24 CFR, Subtitle A, Part 1, Section 1.1, et seq.; the requirements of said Department pursuant to said regulations; and Executive Order 11063 to the end that, in accordance with that Act, the regulations and requirements of said Department thereunder, and said Executive Order, no person in the United States shall, on the grounds of race, color, creed, religion or national origin, be excluded from participation in, or be denied the benefits of, the Housing Assistance Payments Program, or be otherwise subjected to discrimination. This provision is included pursuant to the regulations of the Department of Housing and Urban Development, 24 CFR, Subtitle A, Part 1, Section 1.1, et seq.; issued under Title VI of the said Civil Rights Act of 1964, and the requirements of said Department pursuant to said regulations; and the obligation of the Owner to comply therewith inures to the benefit of the Government and the said Department, either of which shall be entitled to invoke any remedies available by law to redress any breach thereof or to compel compliance therewith by the Owner.

2.2 TRAINING, EMPLOYMENT, AND CONTRACTING OPPORTUNITIES FOR BUSINESSES AND LOWER-INCOME PERSONS.[3]

a. The project assisted under this Contract is subject to the requirements of section 3 of the Housing and Urban Development Act of 1968, as amended, 12 U.S.C. 1701u. Section 3 requires that, to the greatest extent feasible, opportunities for training and employment be given lower-income residents of the project area and contracts for work in connection with the project be awarded to business concerns which are located in, or owned in substantial part by persons residing in, the area of the project.

b. Notwithstanding any other provision of this Contract, the Owner shall carry out the provisions of said section 3 and the regulations issued pursuant thereto by the Secretary of Housing and Urban Development set forth in 24 CFR, Part 135 (published in 38 Federal Register 29220, October 23, 1973), and all applicable rules and orders of the Secretary issued thereunder prior to the execution of this Contract. The requirements of said regulations include, but are not limited to, development and implementation of an affirmative action plan for utilizing business concerns located within, or owned in substantial part by persons residing in, the area of the project; the making of a good faith effort, as defined by the regulations, to provide training, employment, and business opportunities required by section 3; and incorporation of the "section 3 clause" specified by section 135.20(b) of the regulations and paragraph d of this Section in all contracts for work in connection with the project. The Owner certifies and agrees that he is under no contractual or other disability which would prevent him from complying with these requirements.

c. Compliance with the provisions of section 3, the regulations set forth in 24 CFR, Part 135, and all applicable rules and orders of the Secretary issued thereunder prior to approval by the Government of the application for this Contract, shall be a condition of the Federal financial assistance provided to the project, binding upon the Owner, his successors and assigns. Failure to fulfill these requirements shall subject the Owner, his contractors and subcontractors, his successors and assigns to the sanction specified by this Contract, and to such sanctions as are specified by 24 CFR, Section 135.135.

d. The Owner shall incorporate or cause to be incorporated into any contract or subcontract for work pursuant to this Contract in excess of $50,000 cost, the following clause:

"EMPLOYMENT OF PROJECT AREA RESIDENTS AND CONTRACTORS

"A. The work to be performed under this Contract is on a project assisted under a program providing direct Federal financial assistance from the Department of Housing and Urban Development and is subject to the requirements of section 3 of the Housing and Urban Development Act of 1968, as amended, 12 U.S.C. 1701u. Section 3 requires that, to the greatest extent feasible, opportunities for training and employment be given lower-income residents of the project area and contracts for work in connection with the project be awarded to business concerns which are located in, or owned in substantial part by persons residing in, the area of the project.

"B. The parties to this Contract will comply with the provisions of said section 3 and the regulations issued pursuant thereto by the Secretary of Housing and Urban Development set forth in 24 CFR, Part 135, and all applicable rules and orders of the Department issued thereunder prior to the execution of this Contract. The parties to this Contract certify and agree that they are under no contractual or other disability which would prevent them from complying with these requirements.

"C. The contractor will send to each labor organization or representative of workers with which he has a collective bargaining agreement or other contract or understanding, if any, a notice advising the said labor organization or workers' representative of his commitments under this section 3 clause and shall post copies of the notice in conspicuous places available to employees and applicants for employment or training.

"D. The contractor will include this section 3 clause in every subcontract for work in connection with the project and will, at the direction of the applicant for or recipient of Federal financial assistance, take appropriate action pursuant to the subcontract upon a finding that the subcontract is in violation of regulations issued by the Secretary of Housing and Urban Development, 24 CFR, Part 135. The contractor will not subcontract with any subcontractor where it has notice or knowledge that the latter has been found in violation of regulations under 24 CFR, Part 135, and will not let any subcontract unless the subcontractor has first provided it with a preliminary statement of ability to comply with the requirements of these regulations.

"E. Compliance with the provisions of section 3, the regulations set forth in 24 CFR, Part 135, and all applicable rules and orders of the Department issued thereunder prior to the execution of the Contract, shall be a condition of the Federal financial assistance provided to the project, binding upon the applicant or recipient for such assistance, its successors, and assigns. Failure to fulfill these requirements shall subject the applicant or recipient, its contractors and subcontractors, its successors, and assigns to those sanctions specified by the grant or loan agreement or contract through which Federal assistance is provided, and to such sanctions as are specified by 24 CFR, Section 135.135."

[3] ...the this Section of the Contract Rents on the effective date of this Contract, over the maximum term of this Contract, are ...

e. The Owner agrees that he will be bou[illegible]y the above Employment of Project Area Residents an[illegible] contractors clause with respect to his own employment practices when he participates in federally assisted work.

2.3 <u>COOPERATION IN EQUAL OPPORTUNITY COMPLIANCE REVIEWS.</u> The Owner shall cooperate with the Government in the conducting of compliance reviews and complaint investigations pursuant to all applicable civil rights statutes, Executive Orders, and rules and regulations pursuant thereto.

2.4 <u>FLOOD INSURANCE.</u> If the project is located in an area that has been identified by the Secretary of Housing and Urban Development as an area having special flood hazards and if the sale of flood insurance has been made available under the National Flood Insurance Act of 1968, the Owner agrees that the project will be covered, during its anticipated economic or useful life, by flood insurance in an amount at least equal to its development or project cost (less estimated land cost) or to the maximum limit of coverage made available with respect to the particular type of property under the National Flood Insurance Act of 1968, whichever is less.

2.5 <u>CLEAN AIR ACT AND FEDERAL WATER POLLUTION CONTROL ACT.</u>[1] In compliance with regulations issued by the Environmental Protection Agency ("EPA"), 40 CFR, Part 15, 39 F.R. 11099, pursuant to the Clean Air Act, as amended ("Air Act"), 42 U.S.C. 1857, <u>et seq.</u>, the Federal Water Pollution Control Act, as amended ("Water Act"), 33 U.S.C. 1251, <u>et seq.</u>, and Executive Order 11738, the Owner agrees that:

a. Any facility to be utilized in the performance of this Contract or any subcontract shall not be a facility listed on the EPA List of Violating Facilities pursuant to section 15.20 of said regulations;

b. He will promptly notify the Department of Housing and Urban Development field office director of the receipt of any communication from the EPA indicating that a facility to be utilized for the Contract is under consideration to be listed on the EPA List of Violating Facilities;

c. He will comply with all the requirements of section 114 of the Air Act and section 308 of the Water Act relating to inspection, monitoring, entry, reports, and information, as well as all other requirements specified in section 114 and section 308 of the Air Act and the Water Act, respectively, and all regulations and guidelines issued thereunder; and

d. He will include or cause to be included the provisions of this Section in every nonexempt subcontract, and that he will take such action as the Government may direct as a means of enforcing such provisions.

2.6 <u>REPORTS AND ACCESS TO PREMISES AND RECORDS.</u>

a. The Owner shall furnish such information and reports pertinent to the Contract as reasonably may be required from time to time by the Government.

b. The Owner shall permit the Government or any of its duly authorized representatives to have access to the premises and, for the purpose of audit and examination, to have access to any books, documents, papers and records of the Owner that are pertinent to compliance with this Contract, including the verification of information pertinent to the housing assistance payments.

2.7 <u>DEFAULT BY THE OWNER UNDER CONTRACT.</u>

a. A default by the Owner under this Contract shall result if:

(1) The Owner has violated or failed to comply with any provision of, or obligation under, this Contract or of any Lease; or

(2) The Owner has asserted or demonstrated an intention not to perform some or all of his obligations under this Contract or under any Lease.

b. Upon a determination by the Government that a default has occurred, the Government shall notify the Owner of (1) the nature of the default, (2) the actions required to be taken and the remedies to be applied on account of the default (including actions by the Owner to cure the default, and, where appropriate, abatement of housing assistance payments in whole or in part and recovery of overpayments), and (3) the time within which the Owner shall respond with a showing that he has taken all the actions required of him. If the Owner fails to respond or take action to the satisfaction of the Government, the Government shall have the right to terminate this Contract in whole or in part or to take other corrective action to achieve compliance.

c. The availability of any remedy under this Contract shall not preclude the exercise of any other remedy available under this Contract or under any provisions of law, nor shall any action taken in the exercise of any remedy be deemed a waiver of any other rights or remedies. Failure to exercise any right or remedy shall not constitute a waiver of the right to exercise that or any other right or remedy at any time.

2.8 <u>DISPUTES.</u>

a. Except as otherwise provided herein, any dispute concerning a question of fact arising under this Contract which is not disposed of by agreement between the Department of Housing and Urban Development field office and the Owner may be submitted by the Owner to the Secretary of Housing and Urban Development. The decision of the Secretary or duly authorized representative for the resolution of such disputes shall be final and conclusive, unless determined by a court of competent jurisdiction to have been fraudulent, or capricious, or arbitrary, or so grossly erroneous as necessarily to imply bad faith, or not supported by substantial evidence. In connection with any proceeding under this Section, the Owner shall be afforded an opportunity to be heard and to offer evidence in support of his position.

b. This Section does not preclude consideration of questions of law in connection with the decision rendered under paragraph a of this Section: Provided, however, that nothing herein shall be construed as making final the decision of any administrative official, representative, or board, on a question of law.

2.9 <u>INTEREST OF MEMBERS, OFFICERS, OR EMPLOYEES OF PHA, MEMBERS OF LOCAL GOVERNING BODY OR OTHER PUBLIC OFFICIALS.</u> No member, officer, or employee of the PHA, no member of the governing body of the locality (city and county) in which the project is situated, no member of the governing body of the locality in which the PHA was activated, and no other public official of such locality or localities who exercises any functions or responsibilities with respect to the project, during his tenure or for one year thereafter, shall have any interest, direct or indirect, in this Contract or in any proceeds or benefits arising therefrom.

2.10 <u>INTEREST OF MEMBER OF OR DELEGATE TO CONGRESS.</u> No member of or delegate to the Congress of the United States of America or resident commissioner shall be admitted to any share or part of this Contract or to any benefits which may arise therefrom.

[1] *Strike this Section if the Contract Rents on the effective date of this Contract, over the maximum total term of this Contract, are $100,000 or less.*

2.11 ASSIGNMENT, SALE, OR FORECLOSURE.

a. The Owner agrees that he has not made and will not make any sale, assignment, or conveyance or transfer in any other form, of this Contract or the project or any part thereof or any of his interest therein, without the prior consent of the Government; Provided, however, that in the case of an assignment as security for the purpose of obtaining financing of the project, the Government shall consent in writing if the terms of the financing have been approved by the Government.

b. The Owner agrees to notify the Government promptly of any proposed action covered by paragraph a of this Section. The Owner further agrees to request the written consent of the Government in regard thereto.

c. (1) A transfer by the Owner, in whole or in part, or a transfer by a party having a substantial interest in said Owner, or transfers by more than one party of interests aggregating a substantial interest in said Owner, or any other similarly significant change in the ownership of interests in the Owner, or in the relative distribution thereof, or with respect to the parties in control of the Owner or the degree thereof, by any other method or means (e.g., increased capitalization, merger with another corporation or other entity, corporate or other amendments, issuance of new or additional ownership interests or classification of ownership interests or otherwise) shall be deemed an assignment, conveyance, or transfer for purposes of this Section 2.11. An assignment by the Owner to a limited partnership, in which no limited partner has a 25 percent or more interest and of which the Owner is the sole general partner, shall not be considered an assignment, conveyance, or transfer.

(2) The term "substantial interest" means the interest of any general partner, any limited partner having a 25 percent or more interest in the organization, any corporate officer or director, and any stockholder having a 10 percent or more interest in the organization.

(3) The Owner, and the party signing this Contract on behalf of said Owner, represent that they have the authority of all of the parties having ownership interests in the Owner to agree to this provision on their behalf and to bind them with respect thereto.

d. In the event of foreclosure, including foreclosure by the Government, and in the event of assignment or sale agreed to by the Government or made to the Government, housing assistance payments shall continue in accordance with the terms of the Contract.

[If the project is subject to 24 CFR, Section 881.125, paragraph d above shall be stricken and the following shall be used instead:

e. In the event of foreclosure, or assignment or sale to the financing agency in lieu of foreclosure, or in the event of assignment or sale agreed to by the financing agency and approved by the Government (which approval shall not be unreasonably delayed or withheld), housing assistance payments shall continue in accordance with the terms of the Contract.]