CERTIFICATE OF VALUE

I hereby certify that I have personally inspected the subject property being appraised, and the comparable properties; That the statements contained in this appraisal and upon which the opinions expressed herein are based, are true and correct to the best of my knowledge and belief, subject to limiting conditions herein set forth; and that to the best of my knowledge and belief no pertinent information has been overlooked in the appraisal of the following property:

**Statesman Apartments**
**16705-16825 Van Aken Boulevard**
**Shaker Heights, Cuyahoga County, Ohio**

The undersigned hereby certifies that, to the best of my knowledge and belief, except as otherwise noted in this appraisal report:

1. The statements of fact contained in this report are true and correct.

2. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.

3. I have no present or prospective interest in the property that is the subject of this report, and no personal interest with respect to the parties involved.

4. I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

5. My engagement in this assignment was not contingent upon developing or reporting predetermined results.

6. My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

7. My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.

8. I have made a personal inspection of the property that is the subject of this report.

9. No one other than the undersigned prepared the analyses, conclusions, and opinions concerning the real estate that are set forth in this appraisal report.

10. Disclosure of the content of this appraisal report is governed by the by-laws and regulations of the Appraisal Institute.

11. I certify that, to the best of my knowledge and belief, the reported analyses, opinions and conclusions were developed, and this report has been prepared, in conformity with the requirements of the Code of Professional Ethics and the Standards of Professional Appraisal Practice of the Appraisal Institute.

12. I certify that the use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

13. As of the date of this report, I, Richard G. Racek, Jr., MAI, have completed the requirements of the continuing education program of the Appraisal Institute.

Respectfully submitted,

Richard G. Racek, Jr., MAI
Appraiser

## LIMITING CONDITIONS AND SPECIAL ASSUMPTIONS

(Unless specifically stated otherwise in this report.)

This rent survey covers the property as described within this report. The areas and dimensions as shown herein are assumed to be correct. The information identified in this report as being furnished by others is believed to be reliable, but no responsibility for its accuracy is assumed.

Responsible ownership, competent management, and a marketable title to the property are assumed, and that it is free and clear of all liens and encumbrances, unless otherwise stated. No responsibility is assumed for matters involving legal or title considerations.

The parcel dimensions and sketches in this report are included to assist the reader in visualizing the property. No land survey was ordered or made by the appraisers, and no responsibility is assumed for such matters. Any sketch or identified survey of the property included in this report is only for the purpose of assisting the reader.

The appraisers were not provided with any sub-surface reports in which to determine the stability of the soil, thus it is assumed that the subject soils and conditions are adequate to support the improvements.

No opinion is expressed as to the value of sub-surface oil, gas or mineral rights or whether the property is subject to surface entry for the exploration or removal of such materials.

The measurements of the improvements were taken by the appraisers and/or from architectural drawings furnished by the client. Additional maps and exhibits found in this report are for the readers reference purposes only. No guarantee as to the accuracy is expressed or implied.

The appraisers, by reason of this rent survey, are not required to give testimony or attendance in court, unless arrangements have been previously made therefore.

Possession of this report, or a copy thereof, does not carry with it the right of publication, nor may it be used for any purpose by anyone but the client for whom it was made without the consent of the appraisers and the client.

Neither all nor any part of the contents of this report shall be conveyed to the public through advertising, public relations, news, sales or other media, or publication without the written consent of the authors, particularly as to valuation conclusions, the identity of the appraisers or firm with which we are connected, or reference to any professional organization to which we are associated.

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. No specific compliance survey and analysis of this property has been made to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property, together with a detailed analysis of the requirements of the ADA, could reveal that the property is not in compliance with one or more of the requirements of the Act. If so, this fact could have a negative effect upon the value of the property. As there is no direct evidence relating to this issue, possible non-compliance with the requirements of ADA was not considered in estimating the market rent for the property.

The market rent estimated in this report is based on the assumption that the property is not negatively affected by the existence of hazardous substances or detrimental environmental conditions. The appraisers are not expert in the identification of hazardous substances or detrimental environmental conditions. The appraisers' routine inspection of, and inquiries about the subject property did not develop any information that indicated any apparent significant hazardous substances or detrimental environmental conditions which would affect the property negatively. It is possible that tests and inspections made by a qualified hazardous substance and environmental expert would reveal the existence of materials and environmental conditions that are considered hazardous by the environmental protection agency on or around the property that would negatively affect the marketability of the individual units.

**Additional special assumptions incorporated into this analysis are delineated as follows:**

1. **That the real estate is free and clear of any materials or conditions that are considered hazardous by the Environmental Protection Agency. If it should be discovered that such materials or conditions exist, the appraisers reserve the right to revise the final rent conclusion.**

2. **All mechanicals are assumed to be in good working condition.**

3. **Various other assumptions, conditions, and projections as described herein.**

MARKET RENT DEFINITION

Market rent, according to The Dictionary of Real Estate Appraisal, Third Edition, published by the Appraisal Institute is defined as follows:

> Market Rent: The rental income that a property would most probably command in the open market; indicated by the current rents paid and asked for comparable space as of the date of this appraisal.

# SUBJECT LOCATION MAP



# HUD RENT SURVEY
# OF
# A 47 Unit Apartment Building

**Owner:** Statesman Apartments Development Company II **Map Ref.:** 17-B-2
**Property Address:** 16705-16825 Van Aken Boulevard **PPN:** 735-06-063 to -070

**City:** Shaker Heights **County:** Cuyahoga **State:** Ohio **Zip Code:** 44120
**SMSA/Census Tract:** 1680/1835.02

**Client:** Associated Estates Management Company
**Client's Address:** 5025 Swetland Court, Richmond Heights, Ohio 44143

**Sales History**

| | |
|---|---|
| **Current Sale Price:** N/A | **Current Sale Date:** N/A |
| **Previous Sale Date:** | No transfer has occurred since 1980. |
| **Property Rights Appraised:** | Fee simple, subject to short term leases. |
| **Purpose of Analysis:** | Estimate market rent. |
| **Intended Use of Appraisal:** | External reporting. |
| **Effective Date of Appraisal:** | December 1, 1998, December 1, 1999, December 1, 2000 December 1, 2001and December 1, 2002 |
| **Date of Inspection:** | August 1, 2000 |

**SCOPE OF WORK**

The first section of this report will include a descriptive analysis of the general and specific neighborhood market area, the site, and improvements. This analysis will ascertain the market in which the subject units exists. The second portion of the report will include the analysis employed to estimate the market rent of the subject units within its market.

The data that was selected in developing this rent survey was considered the most pertinent available. The extent of the data verification was commensurate with what was believed necessary to complete this assignment. This typically included a review of courthouse records, actual documentation that is retained in our files, and an interview with at least one person involved with each comparable property surveyed.

**NEIGHBORHOOD ANALYSIS**

| | | | | |
|---|---|---|---|---|
| **Location:** | Suburban | | **Property Values:** | Increasing |
| **Built-up:** | 99% | | **Housing Demand/Supply:** | In Balance |
| **Present Land Use:** | Single Family: | 62% | **Predominant Occupancy:** | Owner |
| | Two-Four Family: | 1% | **Change in Present Land Use:** | Not Likely |
| | Multi-Family: | 25% | | |
| | Commercial: | 10% | | |
| | Vacant: | 1% | | |

**Single Family**

| | | | | | |
|---|---|---|---|---|---|
| **Price Range:** | $125,000 | To | $750,000 Plus | **Predominant:** | $200,000 |
| **Age:** | 45 | To | 80 Years Plus | **Predominant:** | 70± Years |

**Typical Apartment**

| | | | | | |
|---|---|---|---|---|---|
| **Type:** | Walk-up | **No. Stories:** | 2-7 levels | | |
| **No. Units:** | 6-40± | **Age:** | 65± Years | | |
| **Condition:** | Average to Good | **Rent Levels:** | Stable to Rising | **Rent Controls:** | None |

**Estimated Neighborhood Apartment Vacancy Rate:** 5%-10%

**Overall Rating**

| | | | |
|---|---|---|---|
| **Employment Stability:** | Average | **Property Compatibility:** | Average - Good |
| **Adequacy Of Utilities:** | Average | **Protection From Detrimental Conditions:** | Average |
| **Convenience Of Schools:** | Average | **General Appearance Of Properties:** | Average - Good |
| **Police And Fire Protection:** | Average | **Appeal to Market:** | Average - Good |
| **Recreational Facilities:** | Average | | |

| **Accessibility To** | **Distance** | **Access Or Convenience** |
|---|---|---|
| **Public Transportation:** | Immediate | Good |
| **Employment Centers:** | 1-6 Miles | Average - Good |
| **Shopping Facilities:** | Immediate | Good |
| **Grammar Schools:** | 1/4 Mile | Average |
| **Freeway Access:** | 5± Miles | Average |

# STATESMAN APARTMENTS

16705-16825 Van Aken Blvd.
Shaker Heights, Ohio 44120
(216) 283-1813

*An Associated Estates Quality Community for Independent Seniors Offering:*




1-BEDROOM SUITE




2-BEDROOM SUITE

**APARTMENT FEATURES**

- 1 and 2 Bedrooms
- Water Included (Plus Utility Allowance)
- Kitchen with Disposal
- Refrigerator & Electric Range
- Fully Carpeted Suites
- Walk-In Closets
- Central Heat & Air Conditioning
- Mini-Blinds In Bedrooms
- Smoke Detectors & Automatic Sprinklers
- Laundry Centers in Building (Including Handicapped)
- Intercom Entry System
- Cable TV Available

**RECREATION**

- Party Room
- Social Activity Programs

**DINING**

- Community Room with Kitchen

**CONVENIENCE**

- Visiting Nurse Weekly
- Shaker Heights Van Trasportation
- Walk to Shopping & Dining
- Easy Access to Major Highways, Medical Facilities & Senior Center

Professionally Mc aged By Associated Estates Realty Corporation
*Artist renderings only; actual dimensions & f... may vary slightly.

**Comments:** The subject property is located in a mature residential area on the southeast side of Shaker Heights, Ohio. This specific area is considered to be Shaker Heights' most desirable rental market and therefore has some of the highest rental rates. The neighborhood is a mixture of multi-family and single family land uses with retail facilities located close by. The retail facilities are situated just south of the subject at the intersection of Van Aken Boulevard and Lee Road within the subject City of Shaker Heights, as well as, at Van Aken Boulevard and Warrensville Center Road. Additional local shopping is available northwest of the subject at the intersection of Shaker and North/South Moreland Boulevards, (commonly known as Shaker Square within the adjacent City of Cleveland). A very desirable attribute of the area is the Shaker Rapid System (RTA) which provides direct and easy access to Downtown Cleveland. This facility, used by many of Greater Cleveland's east side residents makes access to the Downtown Cleveland area quick and inexpensive.

The commercial areas located immediately east and west of the subject property provide retail facilities, restaurants, and service type facilities. This commercial development along with the Rapid Transit creates demand for residential units, both single and multi-family in nature for the subject's locale. These amenities (shopping and public transportation) contribute to the very low vacancy rates currently in existence. Additionally, the subject neighborhood is a strong residential rental area due to its proximity to University Circle which includes the Cleveland Clinic, University Hospital and Case Western Reserve. As was indicated previously, the subject's market area is a mature residential area. Due to the age and density of the improvements in this area, parking is quite limited. The subject however has 44 garage spaces as well as approximately 15 open on-site parking spaces which is considered to be of great benefit to the property. The subject neighborhood, due to its proximity to employment, shopping and transportation, should remain a desirable apartment rental market into the foreseeable future.

**SITE ANALYSIS**

**Dimensions:** 765'± x irregular **Area:** 97,513 SF or 2.239± acres
**Topography:** Generally level to slightly sloping.
**View Amenity:** Average - Multi family residential and single family dwellings.
**Drainage/Flood Conditions:** None noted at the time of inspection.
**Is The Property Located In A HUD Identified Special Flood Area?** No: Zone C (CP#390129 0003 B - December 2, 1988)
**Zoning:** Apartment.
**Present Improvements:** Permitted use of the land.
**Highest And Best Use:** Present multi-family use.

**Off-Site Improvements**

| | | | |
|---|---|---|---|
| **Electricity:** | Public | **Storm Sewer:** | Yes |
| **Gas:** | Public | **Curb/Gutter:** | Yes-Concrete |
| **Water:** | Public | **Sidewalk:** | Yes-Concrete |
| **Sanitary Sewer:** | Public | **Streetlight:** | Yes-Pole Mounted |

**Street:** Asphalt Paved - 180' ROW along Van Aken Boulevard and 50' along Chalfant Road.
**Ingress And Egress (Adequacy):** Adequate - from Van Aken Boulevard.

**Comments: (Including Any Easements Or Encroachments Or Any Nonconforming Use(s) Or Present Improvements)**
There are no apparent adverse easements or encroachments associated with the subject property. However, normal utility easements are assumed. As indicted the subject has frontage on two public rights-of-way.

**DESCRIPTION OF IMPROVEMENTS**

**Type:** Walk-up **No. Of Stories:** 2 **No. Of Bldgs.:** 5
**Bldg. Size:** 48,716± sq.ft. **Unit Mix:** 47:20 one bedroom units and 27 two bedroom units.
**No. Of Rooms:** 215 **No. Of Baths:** 47 **Year Built:** 1957-58
**Basic Structural System:** Masonry **Exterior Walls:** Brick **Windows:** Single hung in metal frames.
**Roof:** Flat, built-up & asphalt shingle **Interior Walls:** Drywall
**Floors:** Carpet & composition **Bath Floors & Walls:** Composition & ceramic tile
**Adequacy Of Soundproofing:** Average **Heating:** Individual units **Type:** Forced air
**Fuel:** Gas **Condition:** Good **Air Conditioning:** Central.
**Elevator(s):** None **Security Features:** Buzzer entry, locking doors and windows.
**Kitchen Cabinets, Drawers And Counter Space:** Average **Condition:** Good

**Appliances**

**Range/Oven:** 47 **Refrigerator:** 47 **Dishwasher:** 0 **Disposal:** 47
**Hot Water Heater(s):** Gas fired, water heaters with holding tanks (property owner pays for hot water).
**Plumbing Fixtures:** Four fixtures per unit.
**Electrical Service:** Adequate considering age (property owner pays for electric).
**Recreational Facilities:** Activity room with kitchen and two half baths.
**Effective Age:** 20-25 Years **E.timated Remaining Economic Life:** 25-30 Years

**Overall Property Ratings**

| | |
|---|---|
| **General Appearance Of Property:** | Good |
| **Quality Of Construction (Materials And Finish):** | Average |
| **Condition Of Improvements:** | Average to Good |
| **Room Size And Layout:** | Average |
| **Closets And Storage:** | Average |
| **Plumbing-Adequacy And Condition:** | Average |
| **Electrical-Adequacy And Condition:** | Average |
| **Amenities And Parking Facilities:** | Average to Good |
| **Appeal To Market:** | Average |

**Comments: (Special Features, Functional Or Physical Inadequacies, Repairs Needed, Modernization, Etc.)**
The subject property consists of a late 1950's vintage, masonry, garden apartment building that has been fairly well maintained. The property contains a total of 47 units consisting of 20, one bedroom and 27, two bedroom suites. Refer to the facing page for a typical room layout. The individual units are accessed off of common hallways. These units are typically finished with painted drywall walls, painted drywall ceilings, carpeted or composition tile floors. Each suite has one full bathroom and a kitchen. The units are heated by individual gas fired forced air furnaces and also have central air conditioning. The common amenities include halls/stairways, laundry rooms, an activities room with kitchen and two half baths, and a management office. Site improvements include an asphalt drive and parking area, detached garages, lawn and general landscaping.

At the time of inspection, it was indicated that as these suites roll over, the units are renovated with new carpeting, painting and kitchen cabinets with appliances. Each of the units inspected were considered to be in average to good overall condition. No evidence of deferred maintenance was noted at the time of inspection.

## HIGHEST AND BEST USE

Highest and best use is a fundamental concept in the valuation of real estate which is defined as follows:

> "The reasonably probable and legal use of vacant land or an improved property, which is physically possible, appropriately supported, financially feasible, and that results in the highest value. The four criteria the highest and best use must meet are legal permissibility, physical possibility, financial feasibility, and maximum profitability."

SOURCE: The Dictionary of Real Estate Appraisal. - 3rd edition. Appraisal Institute, 1993.

The highest and best use of the land, considered separately **as if vacant** and available for development, may differ from the highest and best use of the property **as improved** with existing building improvements. Therefore, for improved properties, a separate analysis of highest and best use must be developed for each of the following:

1. The highest and best use of the site as **if vacant**.
2. The highest and best use of the site as **improved**.

The only exception in valuing land as if vacant is when the site has been developed to an intensity that is higher than would be allowed under the current zoning. If the remaining economic life of the building improvements is sufficient, the land is valued according to the intensity of development. By doing so, an economic balance is maintained between the agents of production (land, labor, capital, and coordination) which will result in a more accurate value indication.

Factors that must be taken into consideration in determining the highest and best use of the property include the following:

1. Existing land use regulations.
2. Probable modifications to the existing land use regulations.
3. Economic demand.
4. Physical adaptability of the property.
5. Neighborhood trends.
6. Optimal use of the property.

### Subject Review

As was indicated previously, the subject property is a late 1950's vintage apartment complex consisting of 47 suites. The units consist of one (20) and two (27) bedroom units. A modernly designed facility would typically comprise a more functional complex and unit layout, however, the existing units are quite acceptable. The property is currently in average to good condition. The building improvements are considered to comprise a legal, conforming use of the land according to the City of Shaker Heights Zoning Department. Demand exists for such facilities as is evidenced by stable occupancy levels within the general subject market area.

### Highest and Best Use as Vacant

The highest and best use of the subject site, if vacant, is considered to be for permitted multi-family development.

### Highest and Best Use as Improved

The highest and best use of the subject site, as improved, is considered to be for its continued multi-family use. Inasmuch as the value of the subject property is significantly greater than the value of the subject site if vacant, as w , as the fact that there is no reason to raze the existing improvements, it is therefore concluded that the highest and best use of the subject property is its current multi-family use.

## METHOD OF ANALYSIS

As was indicated previously the purpose of this report is to estimate the current market rent for the units (one and two bedroom) located within the subject property which are participating in a HUD rent assistance program. Presented on the following pages are the U.S. Department of Housing and Urban Development (HUD) Form HUD-92273 (-S8) which were used in analyzing the rents for the subject units. A total of five apartment projects located within the immediate area were analyzed. Adjustments were made due to the variance in the size of an individual units, utility expense responsibilities and overall condition of the properties. Plus adjustments were made in cases where features of the comparable property were deemed to be inferior to that of the subject and conversely minus adjustments were made when features of the comparable property were determined to be superior to that of the subject property. The following paragraphs will briefly describe why each of the adjustments were made.

**Line 8 - Condition/Street Appeal:** Each of the properties surveyed involve 1950's vintage apartment complexes which are located within close proximity to the subject. However, Comparable Nos. 1 through 3 involve properties which have not been renovated in recent years. Thus, the interior and exterior condition of these properties were considered to be inferior to the subject. Therefore, a $50.00 plus adjustment was made. Comparable Nos. 4 and 5 involve elevator apartment complexes which have been renovated in more recent years and involve buildings which are in superior condition both on the exterior as well as the interior suites. Thus, $25.00 minus adjustments were made to these properties. However, in 2002, Comparable Nos. 1 through 3 were renovated which would negate the need for the adjustment. Comparable Nos. 4 and 5 have not been updated and have caught up to the market. Thus, no adjustment is needed in 2002.

**Line 13 - Unit Interior Square Feet:** Adjustments were made to each of the comparable properties when the square footage of the suites had differed from the subject property. The difference in square footage between each of the comparables and the subject was multiplied by approximately $0.15 per square foot in order to arrive at an adjustment. Thus, each comparable has a somewhat different adjustment depending on the unit size.

**Line 15 - AC: Central/Wall:** Comparable Nos. 1 and 2 involve apartment buildings which do not provide any type of air conditioning units. Thus, a $15.00 plus adjustment was made to each of these complexes to reflect this inferior characteristic. The remaining three complexes surveyed all had various types of air conditioning available.

**Line 17 - Microwave/Dishwasher:** Comparable Nos. 3, 4 and 5 involve suites which are improved with dishwashers. This is considered to be a superior characteristic in which a $15.00 minus adjustment was made. Comparable Nos. 1 and 2 are similar to the subject in that they do not have any microwaves or dishwashers. Thus, no adjustments were made.

**Line 24 - Parking:** Garage parking was available on all of the comparable properties surveyed. However, each complex included a garage parking space within their rental rate and thus a $20.00 minus adjustment was made to each of these properties.

**Line 27 - Clubhouse/Meeting Rooms:** The subject property has a small meeting room with a kitchen and two half baths. This is superior to each of the comparable properties surveyed and thus a minimal $5.00 minus adjustment was made to each of the surveyed properties.

**Line 33 - Heat:** Similar to the subject property, Comparable No. 1 included gas heat within their rental rates. However, Comparable Nos. 2 through 5 require that the tenant pay for their own gas heat. Thus, a $20.00 plus adjustment was made to each of these properties for the years 1998 and 1999 and then increased to $25.00 per unit per month for the last two years to account for inflationary trends.

**Line 34 - Cooling:** Comparable Nos. 3, 4 and 5 require that the tenant pay for their own electric usage in running their air conditioning units. Thus, a $5.00 plus adjustment was made for each of these properties.

**Line 35 - Cooking:** Comparable No. 1 included the cost of cooking within their monthly rent. However, Comparable Nos. 2 through 5 require that the tenant pay for this expense. Thus, a $5.00 plus adjustment was made to Comparable Nos. 2 through 5.

**Line 36 - Hot Water:** Hot water is provided by the landlord in the subject property as well as all the comparable properties with the exception of Comparable No. 4. In this property, the tenants have individual hot water heaters with the cost of the gas being the responsibility of the tenant. Therefore, a $5.00 upward adjustment has been made to this property.

**Line 37 - Other Electric:** Each of the properties surveyed required that the tenants pay for their own electric usage. Thus, a $20.00 plus adjustment has been made for each of the properties surveyed for the years of 1998 and 1999. This upward adjustment has been increased to $25.00 per unit per month for the years of 2000 and 2001.

After a thorough inspection of the subject property, it appears that the condition and location of the subject falls within the range that has been established by competing conventional apartment buildings. Thus, the rental rates for the suites within the subject property should be within the range of rental rates established by the market surveys. Therefore, it is estimated that all 20, one bedroom suites within the subject property should have a contract unit rent of $570 per month as of December 1, 1998. This rental rate would include all utilities except telephone and cable television. The contract rent potential of the subject property is estimated by multiplying the contract unit rent per month by the total number of one bedroom apartment units within the complex. Thus, the monthly contract rent potential of the one bedroom apartment units is developed as follows:

$570 x 20 units = **$11,400**

Based upon the market rent survey which is provided within the addendum of this report, it is estimated that the 27, two bedroom apartment units within the subject property should have a contract rent of $660 per month as of December 1, 1998 including all utilities except telephone and cable television. Thus, the monthly contract rent potential of the two bedroom apartment units is developed as follows:

$660 x 27 units = **$17,820**

Based upon the market rent survey which is provided within the addendum of this report, it is estimated that the 20, one bedroom apartment units within the subject property should have a contract rent of $580 per month as of December 1, 1999 including all utilities except telephone and cable television. Thus, the monthly contract rent potential of the one bedroom apartment units is developed as follows:

$580 x 20 units = **$11,600**

Based upon the market rent survey which is provided within the addendum of this report, it is estimated that the 27, two bedroom apartment units within the subject property should have a contract rent of $670 per month as of December 1, 1999 including all utilities except telephone and cable television. Thus, the monthly contract rent potential of the two bedroom apartment units is developed as follows:

$670 x 27 units = **$18,090**

Based upon the market rent survey which is provided within the addendum of this report, it is estimated that the 20, one bedroom apartment units within the subject property should have a contract rent of $600 per month as of December 1, 2000 including all utilities except telephone and cable television. Thus, the monthly contract rent potential of the one bedroom apartment units is developed as follows:

$600 x 20 units = **$12,000**

Based upon the market rent survey which is provided within the addendum of this report, it is estimated that the 27, two bedroom apartment units within the subject property should have a contract rent of $685 per month as of December 1, 2000 including all utilities except telephone and cable television. Thus, the monthly contract rent potential of the two bedroom apartment units is developed as follows:

$685 x 27 units = **$18,495**

Based upon the market rent survey which is provided within the addendum of this report, it is estimated that the 20, one bedroom apartment units within the subject property should have a contract rent of $610 per month as of December 1, 2001 including all utilities except telephone and cable television. Thus, the monthly contract rent potential of the one bedroom apartment units is developed as follows:

$610 x 20 units = **$12,200**

Based upon the market rent survey which is provided within the addendum of this report, it is estimated that the 27, two bedroom apartment units within the subject property should have a contract rent of $690 per month as of December 1, 2001 including all utilities except telephone and cable television. Thus, the monthly contract rent potential of the two bedroom apartment units is developed as follows:

$690 x 27 units = **$18,630**

Based upon the market rent survey which is provided within the addendum of this report, it is estimated that the 20, one bedroom apartment units within the subject property should have a contract rent of $620 per month as of December 1, 2002 including all utilities except telephone and cable television. Thus, the monthly contract rent potential of the one bedroom apartment units is developed as follows:

$620 x 20 units = **$12,400**

Based upon the market rent survey which is provided within the addendum of this report, it is estimated that the 27, two bedroom apartment units within the subject property should have a contract rent of $700 per month as of December 1, 2002 including all utilities except telephone and cable television. Thus, the monthly contract rent potential of the two bedroom apartment units is developed as follows:

$700 x 27 units = **$18,900**