Attachment 12a

OMB Approval # 2502-0507 (exp. 7/01)

*Rent Comparability Grid* — *Unit Type*: **Two Bedroom** — *Subject's FHA #:*

| # | *Subject*<br>Statesman Apartments<br>16705-16825 Van Aken Blvd<br>Shaker Heights, Cuyahoga Cnty | Data on Subject | *Comp #1*<br>Shaker Dale Apts.<br>3747 Warrensville Ctr. Rd.<br>Shaker Hts. Cuy Cnty | $ Adj | *Comp #2*<br>Shaker Dale North Apts<br>3733 Warrensville Ctr. Rd.<br>Shaker Hts. Cuy Cnty | $ Adj | *Comp #3*<br>Warren Garden Apts<br>3610 Warrensville Ctr. Rd.<br>Shaker Hts. Cuy Cnty | $ Adj | *Comp #4*<br>Shaker Park Apts<br>19220 Van Aken Blvd<br>Shaker Hts. Cuy Cnty | $ Adj | *Comp #5*<br>Shaker Terrace Apts<br>19806 Van Aken Blvd<br>Shaker Hts. Cuy Cnty | $ Adj |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | **$ Last Rent / Restricted?** | | | | | | | | | | | |
| 2 | **Date Last Leased (mo/yr)** | | | — | | — | | — | | — | | — |
| 3 | **Rent Concessions** | | | — | | — | | — | | — | | — |
| 4 | **Occupancy for Unit Type** | | | | | | | | | | | |
| 5 | **Effective Rent & Rent/ sq. ft** | | **$700** | $0.83 | **$685** | $0.82 | **$675** | $0.78 | **$675** | $0.65 | **$775** | $0.66 |
| | *In Parts B thru E, adjust only for differences the subject's market values.* | | | | | | | | | | | |
| 6 | **Structure / Stories** | WU/2 | | — | | — | | — | | — | | — |
| 7 | **Yr. Built/Yr. Renovated** | 1957-58 | | | | | | | | | | |
| 8 | **Condition /Street Appeal** | G/G | | | | | | | | | | |
| 9 | **Neighborhood** | G | | — | | — | | — | | — | | — |
| 10 | **Same Market? Miles to Subj** | | | | | | | | | | | |
| 11 | **# Bedrooms** | 2 | | | | | | | | | | |
| 12 | **# Baths** | 1 | | | | | | | | | | ($15) |
| 13 | **Unit Interior Sq. Ft.** | 780 | | ($9) | | ($9) | | ($13) | | ($40) | | ($58) |
| 14 | **Balcony/ Patio** | N | | | | | | — | | — | | — |
| 15 | **AC: Central/ Wall** | C | | $15 | | $15 | | — | | — | | — |
| 16 | **Range/ refrigerator** | R/F | | | | | | | | | | |
| 17 | **Microwave/ Dishwasher** | N/N | | | | | | ($15) | | ($15) | | ($15) |
| 18 | **Washer/Dryer** | L | | — | | — | | — | | — | | — |
| 19 | **Floor Coverings** | C | | — | | — | | — | | — | | — |
| 20 | **Window Coverings** | B | | — | | — | | — | | — | | — |
| 21 | **Cable/ Satellite/Internet** | C | | | | | | | | | | |
| 22 | **Special Features** | | | | | | | | | | | |
| 23 | | | | | | | | | | | | |
| 24 | **Parking ($ Fee)** | G/20 | | ($20) | | ($20) | | ($20) | | ($20) | | ($20) |
| 25 | **Extra Storage** | N | | | | | | | | | | |
| 26 | **Security** | Y | | | | | | | | | | |
| 27 | **Clubhouse/ Meeting Rooms** | N/Y | | $5 | | $5 | | | | $5 | | $5 |
| 28 | **Pool/ Recreation Areas** | N/N | | — | | — | | — | | — | | — |
| 29 | **Business Ctr / Nbhd Netwk** | N | | — | | — | | — | | — | | — |
| 30 | **Service Coordination** | N | | | | | | | | | | |
| 31 | **Non-shelter Services** | N | | | | | | | | | | |
| 32 | | | | | | | | | | | | |
| 33 | **Heat (in rent?/ type)** | Y/G | | — | | $25 | | $25 | | $25 | | $25 |
| 34 | **Cooling (in rent?/ type)** | Y/E | | — | | | | $5 | | $5 | | $5 |
| 35 | **Cooking (in rent?/ type)** | Y/E | | | | $5 | | $5 | | $5 | | $5 |
| 36 | **Hot Water (in rent?/ type)** | Y/G | | | | | | | | $5 | | |
| 37 | **Other Electric** | Y | | $25 | | $25 | | $25 | | $25 | | $25 |
| 38 | **Cold Water/ Sewer** | Y/Y | | — | | — | | — | | — | | |
| 39 | **Trash /Recycling** | Y | | | | | | | | | | |
| 40 | **# Adjustments B to D** | | | 2 | | 2 | | 3 | | 3 | | 4 |
| 41 | **Sum Adjustments B to D** | | | ($29) | | ($29) | | ($48) | | ($75) | | ($108) |
| 42 | **Sum Utility Adjustments** | | | | | | | | | | | |
| 43 | ***Net/ Gross Adjmts B to E*** | | | *$74* | | *$104* | | *$108* | | *$145* | | *$173* |
| | **Adjusted Rent (5+ 43)** | | **$716** | | **$731** | | **$687** | | **$670** | | **$732** | |
| 45 | Adj Rent/Last rent | | | 102% | | 107% | | 102% | | 99% | | 94% |
| | Estimated Market Rent | **$700** | **$0.90** | | | | | | | | | |

[signature] 3/18/04

Appraiser's Signature — Date

Grid was prepared: Manually Using HUD's Excel form

HUD 92273 - S8

# RENT COMPARABLE LOCATION MAP





Rent Comparable 1



Rent Comparable 2



Rent Comparable 3



Rent Comparable 4



Rent Comparable 5

*Attachment #1a*

*Appraiser Certification*

*Project Name:* Statesman Apartments *FHA Project No :* _______________

*By my signature below, I certify that, to the best of my knowledge and belief:*

1. The statements of fact contained in this report are true and correct.
2. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.
3. I have no present or prospective financial interest in the above property, its ownership or management agent entity, or the principals of those entities. I am not an employee of those principals or entities and I have no business or close personal/family interest with those parties that commonly would be perceived to create bias or a conflict of interest.
4. I have no bias with respect to the property that is the subject of this report or to the ownership or management parties involved with this assignment.
5. My engagement in and compensation for this assignment were and are not contingent upon the reporting of a predetermined rent or direction in rent. My fee is my only compensation for this rent study assignment. There are no other side agreements or considerations.
6. My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice and all applicable HUD procedures for performing Rent Comparability Studies for Section 8 contracts.
7. Richard G. Racek, Jr inspected the interior and exterior of the subject property. Richard G. Racek, Jr inspected the exteriors of the properties used as comparables in this report.
8. No one provided significant professional assistance to the person signing this report except the persons listed here: _______________. If anyone is listed here, his/her contribution is identified in the Scope of Work section of this report.
9. I am a certified general appraiser, licensed and in good standing with the state appraiser regulatory agency where the subject property is located and I meet all of the appraiser qualifications required in HUD's rent comparability procedures.
10. I am not debarred or suspended from doing business with the Federal Government. I also am not under a Limited Denial of Participation (LDP) imposed by the HUD Multifamily HUB or Program Center having jurisdiction over the Section 8 project. Any LDPs in effect now or in the past three years were imposed by the following HUD offices: _______________.

**Warning:** **If you knowingly make a false statement on this form, you may be subject to civil penalties under Section 1001 of Title 18 of the United States Code. In addition, any person who knowingly and materially violates any required disclosure of information, including intentional non-disclosure, is subject to civil money penalty not to exceed $10,000.00 for each violation.**

Appraiser's Name: Richard G. Racek, Jr. Signature: [signature]
Date: 3/18/04

Permanent License No: 428964 Issuing State: Ohio

Expires: 7/04

Did you prepare the RCS under a temporary license? No *If so, attach a copy of the temporary license.*

**APPRAISER QUALIFICATIONS OF**
**RICHARD G. RACEK, JR., MAI**

| | |
|---|---|
| **BUSINESS ADDRESS:** | 1110 Euclid Avenue, Suite 300, Cleveland, Ohio 44115 |
| **EDUCATION:** | Graduate, Ohio State University, Class of 1996<br>B.S. in Business Administration With a Major in Real Estate and Urban Analysis |
| **FIELD OF STUDY:** | Real Estate Appraising, Real Estate Law, Real Estate Financing, City and Regional Planning, and Architecture<br>Appraisal Institute Courses:<br>Appraisal Principles 110 — General Applications 320<br>Appraisal Procedures 120 — Standards of Prof. Prac. Part A<br>Basic Income Capitalization 310 — Standards of Prof. Prac. Part B<br>Advanced Income Capitalization 510<br>Highest & Best Use and Market Analysis 520<br>Advanced Sales Comparison & Cost Approaches 530<br>Report Writing and Valuation Analysis 540<br>Advanced Applications 550 |
| **EXPERIENCE:**<br>1996-Present | Real Estate Appraiser<br>Calabrese, Racek and Markos, Inc.<br>Cleveland, Ohio |
| June 1989 - 1996 | Real Estate/Intern<br>Calabrese, Racek and Markos, Inc.<br>Cleveland, Ohio |
| **SCOPE OF APPRAISAL EXPERIENCE:** | Comprehensive background in commercial, industrial, residential and multi-family real estate appraisal. Including: various new and proposed commercial and industrial properties in Greater Cleveland and throughout the State of Ohio, including but not limited to offices, strip shopping centers, apartments, heavy industrial complexes, multiple occupancy light industrial complexes, vacant land, residential, restaurants, auto dealerships and special use properties. Expert testimony has been performed at numerous Board of Revisions and the Ohio Board of Tax Appeals. This work has been completed at the request of various commercial banks, major insurance companies, government agencies, many commercial and industrial corporations, attorneys and private individuals. |
| **STATE LICENSE/ CERTIFICATES:** | Licensed real estate sales person, State of Ohio<br>Certified General Real Estate Appraiser, State of Ohio<br>Certificate #428964 |
| **MEMBERSHIPS:** | MAI - Appraisal Institute |

Revised 06/17/03

# APPRAISER DISCLOSURE STATEMENT

In compliance with Ohio Revised Code Section 4763.12 (C)

1. Name of Appraiser: Richard G. Racek, Jr.

2. Class of Certification/Licensure:

   X Certified General
   ____ Certified Residential
   ____ Licensed Residential
   ____ Temporary ____ General ____ Licensed

   Certification/Licensure Number: 428964

3. Scope: This report X is within the scope of my Certification/License

   ____ is not within the scope of my Certification/License

4. Service provided by: X disinterested & unbiased third party
   ____ interested & biased third party
   ____ interested third party on contingent fee basis

5. Signature of person preparing and reporting the appraisal

   [signature]

THIS FORM MUST BE INCLUDED IN CONJUNCTION WITH ALL APPRAISAL ASSIGNMENTS OR SPECIALIZED SERVICES PERFORMED BY A STATE-CERTIFIED OR STATE-LICENSED REAL ESTATE APPRAISER.

State of Ohio
Department of Commerce
Division of Real Estate
Appraiser Section
Cleveland OH
(216) 787-3100

**U.S. Department of Housing and Urban Development**
**Cleveland Office, Region V**
**US Bank Centre**
**1350 Euclid Avenue, Suite 500**
**Cleveland, Ohio 44115-1815**

APR 23 2004

Fred Livingstone
Taft, Stettinius & Hollister LLP
3500 BP Tower
200 Public Square
Cleveland, Ohio 44114-2302

Dear Mr. Livingstone:

SUBJECT: AAF Rent Increases
Statesman Apartments II / OH12 0008 069 / Cleveland, OH
Lakeshore Village / OH12 0002 012 / Cleveland, OH

We are in receipt of your letters dated April 2, 2004 as well as the accompanying information, in which you request adjustments to the rents for the subject properties from 1998 to the expiration dates of the original HAP Contracts. The basis for this request is cited as CMHA v. U.S., 57 Fed. Cl. 751.

At present, the case of CMHA v. U.S. is not final. The Department of Housing and Urban Development continues to believe that its position in this matter is correct and expects that owners receiving Section 8 subsidy at their properties will comply with HUD Notices, including Notice 95-12 and its progeny.

Instructions contained in Notice 95-12 and its offspring require submission within specific time frames for the local office to consider acceptance of the request: "If the owner's request for the annual rent adjustment is submitted after the extended deadline, the owner's request is not accepted, and the contract rent is not increased."

In addition, the submission includes a, "...calculation of the comparability limitation and include(s) a 20% materiality component." Current HUD instructions contained in the aforementioned Notices do not provide for a 20% materiality component'.

Therefore, since the basis for this request for rent increases is a continuing court case, and because the request has been submitted after the extended deadline for the subject Contracts, and also contains a component that does not meet the required format, we must deny your request.

Should there be any questions regarding this matter, please contact me at 216-522-4058 x7169.

Sincerely,

Dennis G. Morton
Director
Multifamily Housing Program Center

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
SECTION 8 HOUSING ASSISTANCE PAYMENTS PROGRAM
NEW CONSTRUCTION

GRATTAN

PART I OF THE

# HOUSING ASSISTANCE PAYMENTS CONTRACT

PRIVATE-OWNER OR PHA-OWNER PROJECT

| HAP CONTRACT LIST NUMBER AND DATE: | PROJECT NUMBER: |
|---|---|
| C-82-389, 5/5/82 | OH-12-0002-012 |

This Housing Assistance Payments Contract ("Contract") is entered into by and between the United States of America acting through the Department of Housing and Urban Development ("Government"), and Beach House Development Company ("Owner"), pursuant to the United States Housing Act of 1937 ("Act"), 42 U.S.C. 1437, et seq., and the Department of Housing and Urban Development Act, 42 U.S.C. 3531, et seq.

The parties hereto agree as follows:

1.1 SIGNIFICANT DATES AND OTHER ITEMS; CONTENTS OF CONTRACT.

a. Effective Date of Contract. The effective date of this Contract is SEE EXECUTION OF CONTRACT IN STAGES, 19____. [This date shall be no earlier than the date of Government acceptance of the project.]

b. Initial Term of Contract. The initial term of this Contract (see Section 1.4a) shall be 5 years [not to exceed five years], beginning with the effective date of this Contract and ending __________, 19____.

c. Number and Length of Optional Additional Terms. The number and length of optional additional terms (see Section 1.4a) shall be 3 terms of 5 years each [not to exceed five years each].

d. Maximum Total Term of Contract. The maximum total term of this Contract for any unit, including all renewals (see Section 1.4a) shall be 20 years. [Insert 20, except that (1) in the case of a project owned by, or financed by a loan or loan guarantee from, a State or local agency, insert the number, not to exceed 40, which will provide a term ending with the scheduled maturity date for the last payment under such financing, and (2) in the case of a mobile homes project, insert number as authorized by the Government pursuant to 24 CFR, Section 880.109, not to exceed 20.]

e. Fiscal Year. The ending date of each Fiscal Year (see Section 1.4b) shall be June 30 [insert March 31, June 30, September 30, or December 31, as determined by the Government].

f. Maximum Housing Assistance Commitment. The maximum amount of the commitment for housing assistance payments under this Contract (see Section 1.5a) is $ 684,360.00 per annum.

g. Contents of Contract. This Contract consists of Part I, Part II, and the following exhibits:

Exhibit A: The Schedule showing the number of units by size ("Contract Units") and their applicable rents ("Contract Rents");

Exhibit B: The project description;

Exhibit C: The statement of services, maintenance and utilities to be provided by Owner;

Exhibit D: The Affirmative Fair Housing Marketing Plan, if applicable; and

Additional exhibits: [Specify additional exhibits, if any. If none, insert "None."]

Attachment A

This Contract, including such exhibits, comprises the entire agreement between the parties hereto with respect to the matters contained herein, and neither party is bound by any representations or agreements of any kind except as contained herein or except agreements entered into in writing which are not inconsistent with this Contract.

1.2 OWNER'S WARRANTIES.

a. Legal Capacity. The Owner warrants that he has the legal right to execute this Contract and to lease dwelling units covered by this Contract.

b. Completion of Work. The Owner warrants that the project as described in Exhibit B is in good and tenantable condition and that the project has been completed in accordance with the terms and conditions of the Agreement to Enter into Housing Assistance Payments Contract ("Agreement") or will be completed in accordance with the terms on which the project was accepted. The Owner further warrants that he will remedy any defects or omissions covered by this warranty if called to his attention within 12 months of the effective date of this Contract. The Owner and the Government agree that the continuation of this Contract shall be subject to the conditions set forth in Section 1.4f of the Agreement.

1.3 FAMILIES TO BE HOUSED; GOVERNMENT ASSISTANCE.

a. Families To Be Housed. The Contract Units are to be leased by the Owner to eligible Lower-Income Families ("Families") for use and occupancy by such Families solely as private dwellings.

b. Government Assistance.

(1) The Government hereby agrees to make housing assistance payments on behalf of Families for the Contract Units, to enable such Families to lease Decent, Safe, and Sanitary housing pursuant to section 8 of the Act. Such housing assistance payments shall equal the difference between the Contract Rents for units leased by Families and the portion of such rents payable by Families as determined by the Owner in accordance with schedules and criteria established by the Government.

(2) If there is an Allowance for Utilities and Other Services and if such Allowance exceeds the Gross Family Contribution, the Owner shall pay the Family the amount of such excess on behalf of the Government upon receipt of funds from the Government for that purpose.

1.4 TERM OF CONTRACT: FISCAL YEAR.

a. Term of Contract.

[Alternative provisions—incorporate alternative 1 or 2, as applicable.]

Alternative 1—General:

The initial term of this Contract shall be as stated in Section 1.1b. This Contract may be renewed, at the sole option of the Owner, for the number and length of additional terms started in Section 1.1c, provided that the total Contract term for any unit, including all renewals, shall not exceed the number of years stated in Section 1.1d. Renewal shall be automatic unless the Owner notifies the Government, no later than 60 days prior to the expiration of the current term, of his intention not to renew. If the project is completed in stages, the dates for the initial term and renewal terms shall be separately related to the units in each stage; Provided, however, that the total Contract term for all the stages, beginning with the effective date of the Contract with respect to the first stage, shall not exceed the total Contract term stated in Section 1.1d, plus two years. In any case where the project is owned by, or financed by a loan or loan guarantee from, a State or local agency, the housing assistance payments pursuant to this Contract with respect to any dwelling unit shall be payable over a period not to exceed 40 years.

Alternative 2—For mobile homes project:

In the case of mobile homes, the initial term of this Contract for each mobile home shall be as stated in Section 1.1b. This Contract shall be renewed, as may be mutually agreed upon by the Owner and the Government, with respect to any mobile home, for the number and length of additional terms as stated in Section 1.1c, provided that the total Contract term for any mobile home, including all renewals, shall not exceed the number of years stated in Section 1.1d. Renewals shall become effective only if either party gives written notice, no later than 60 days prior to the expiration of the current term, of his desire to renew, and the other party concurs or fails to object before the expiration of the current term. If the project is completed in stages, the dates for the initial term and renewal terms shall be separately related to the mobile homes in each stage; Provided, however, that the total Contract term for all the stages, beginning with the effective date of the Contract with respect to the first stage, shall not exceed the total Contract term stated in Section 1.1d, plus two years. For purposes of this paragraph a, the term "mobile home" means the original mobile home and any replacement(s), combined.

b. Fiscal Year. The Fiscal Year for the project shall be the 12-month period ending on the date stated in Section 1.1e; Provided, however, that the first Fiscal Year for the project shall be the period beginning with the effective date of the Contract and ending on the last day of said established Fiscal Year which is not less than 12 months after such effective date. If the first Fiscal Year exceeds 12 months, the maximum total annual housing assistance payment in Section 1.5a may be adjusted by the addition of the pro rata amount applicable to the period of operation in excess of 12 months.

1.5 MAXIMUM HOUSING ASSISTANCE COMMITMENT: PROJECT ACCOUNT.

a. Maximum Housing Assistance Commitment. Notwithstanding any other provisions of this Contract (other than paragraph b of this Section) or any provisions of any other contract between the Government and the Owner, the Government shall not be obligated to make and shall not make any housing assistance payments under this Contract in excess of the amount per annum stated in Section 1.1f; Provided, however, that this amount shall be reduced commensurately with any reduction in the number of Contract Units or in the Contract Rents or pursuant to any other provisions of this Contract.

b. Project Account. In order to assure that housing assistance payments will be increased on a timely basis to cover increases in Contract Rents or decreases in Family Incomes:

(1) A Project Account shall be established and maintained, in an amount as determined by the Government consistent with its responsibilities under section 8(c)(6) of the Act, out of amounts by which the maximum Contract commitment per year exceeds amounts paid under the Contract for any Fiscal Year. This account shall be established and maintained by the Government as a specifically identified and segregated account. To the extent funds are available in said account, the maximum total annual housing assistance payments for any Fiscal Year may exceed the maximum amount stated in paragraph a of this Section to cover increases in Contract Rents or decreases in Family Incomes (see Section 1.8). Any amount remaining in said account after payment of the last housing assistance payment with respect to the project shall be applied by the Government in accordance with law.

(2) Whenever the Government approved estimate of the required Annual Contribution exceeds the maximum Contract commitment then in effect, and would cause the amount in the Project Account to be less than an amount equal to 40 percent of such maximum Contract commitment, the Government shall, within a reasonable period of time, take such additional steps authorized by section 8(c)(6) of the Act as may be necessary to carry out this assurance, including (as provided in that section of the Act) "the reservation of annual contributions authority for the purpose of amending housing assistance contracts or the allocation of a portion of new authorizations for the purpose of amending housing assistance contracts."

1.6 HOUSING ASSISTANCE PAYMENTS TO OWNERS.

a. General.

(1) Housing assistance payments shall be paid to the Owner for units under lease by Families in accordance with the Contract. The housing assistance payment will cover the difference between the Contract Rent and that portion of said rent payable by the Family as determined in accordance with the Government-established schedules and criteria.

(2) The amount of housing assistance payment payable on behalf of a Family and the amount of rent payable by such Family shall be subject to change by reason of changes in Family Income, Family composition, or extent of exceptional medical or other unusual expenses, in accordance with the Government-established schedules and criteria; or by reason of adjustment by the Government of any applicable Allowance for Utilities and Other Services. Any such change shall be effective as of the date stated in a notification of such change to the Family.

b. Vacancies During Rent-up. If a Contract Unit is not leased as of the effective date of the Contract, the Owner shall be entitled to housing assistance payments in the amount of 80 percent of the Contract Rent for the unit for a vacancy period not exceeding 60 days from the effective date of the Contract, provided that the Owner (1) commenced marketing and otherwise complied with Section 1.3b of the Agreement, (2) has taken and continues to take all feasible actions to fill the vacancy, including, but not limited to, contacting applicants on his waiting list, if any, requesting the Public Housing Agency ("PHA") and other appropriate sources to refer eligible applicants, and advertising the availability of the unit, and (3) has not rejected any eligible applicant, except for good cause acceptable to the Government.

c. Vacancies After Rent-up.

(1) If a Family vacates its unit (other than as a result of action by the Owner which is in violation of the Lease or the Contract or any applicable law), the Owner shall receive housing assistance payments in the amount of 80 percent of the Contract Rent for a vacancy period not exceeding 60 days; Provided, however, that if the Owner collects any of the Family's share of the rent for this period in an amount which, when added to the 80 percent payments, results in more than the Contract Rent, such excess shall be payable to the Government or as the Government may direct. (See also Section 1.9b.) The Owner shall not be entitled to any payment under this subparagraph unless he: (i) immediately upon learning of the vacancy, has notified the Government of the vacancy or prospective vacancy and the reasons for the vacancy, and (ii) has taken and continues to take the actions specified in paragraphs b(2) and b(3) of this Section.