IN THE UNITED STATES
COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **STATESMAN II APARTMENTS, INC.,** | ) | CASE NOS. 04-805C and No. 04-806C |
| | ) | (Consolidated) |
| Plaintiff, | ) | |
| | ) | JUDGE LETTOW |
| v. | ) | |
| | ) | **PLAINTIFFS' PROPOSED** |
| **THE UNITED STATES OF AMERICA,** | ) | **FINDINGS OF UNCONTROVERTED** |
| | ) | **FACT** |
| Defendant. | ) | |
| | ) | |

Plaintiffs, Statesman II Apartments, Inc. ("Statesman II") and Beach House Development Company ("Beach House), submit the following Proposed Findings of Uncontroverted Fact under Rule 56(h)(1) of the Rules of the United States Court of Federal Claims:

1. Between November 14, 1980, and October 25, 1982, the Properties each entered into separate HAP Contracts with HUD. Copies of the Statesman Apts. and Beach House HAP Contracts are at the Appendix to Defendant's Motion for Summary Judgment ("Def App.") at 61 and 122, respectively. (*See also* Defendant's Proposed Findings of Uncontroverted Facts ("DPFUF"), ¶2; Statesman II Answer, ¶6; Beach House Answer, ¶6.)

2. The HAP Contracts specify an initial, per unit, Contract Rent for each Property. Pursuant to Section 1.8(b) of the HAP Contracts ("Section 1.8(b)"), HUD is required to increase the Contract Rent annually based upon Automatic Annual Adjustment Factors ("AAAFs") determined and published by the Government. Such provision permits the reduction of the factor only if the utilities are paid directly by the families:

> 1) Automatic Annual Adjustment Factors will be determined by the Government at least annually; interim revisions may be made as market conditions warrant. Such Factors and the basis for their determination will be published in the Federal

> Register. **These published Factors will be reduced appropriately by the Government where utilities are paid directly by the families.**
>
> 2) On each anniversary date of the Contract, the Contract Rents shall be adjusted by applying the applicable Automatic Annual Adjustment Factor most recently published by the Government. Contract Rents may be adjusted upward or downward, as may be appropriate; however, in no case shall the adjusted Contract Rents be less than the Contract Rents on the effective date of this Contract.

Section 1.8(b), Def. App. 64, 125 (emphasis added); Statesman II Answer, ¶11; Beach House Answer, ¶11.

3. On September 28, 1994, Congress passed the Department of Veteran's Affairs and Housing and Urban Development and Independent Agencies Appropriations Act of 1995 ("1995 Act"). Among the many components of this Act, 42 U.S.C. §1437f(c)(2)(A) was amended ("1994 Amendments"). Prior to the 1994 Amendments, 42 U.S.C. §1437f(c)(2)(A), read as follows:

> The assistance contract shall provide for adjustment annually or more frequently in the maximum monthly rents for units covered by the contract to reflect changes in the fair market rentals established in the housing area for similar types and sizes of dwelling units, or, if the Secretary determines, on the basis of a reasonable formula.

42 U.S.C. §1437f(c)(2)(A). Section 1.8(b) reflects this language. (*See* Def. App., 64, 125.)

Under the 1994 Amendments, the following language was added to 42 U.S.C. §1437f(c)(2)(A):

> However, where the maximum monthly rent, for a unit in a new construction, substantial rehabilitation, or moderate rehabilitation project, to be adjusted using an annual adjustment factor exceeds the fair market rental for an existing dwelling unit in the market area, the Secretary shall adjust the rent only to the extent that the owner demonstrates that the adjusted rent would not exceed the rent for an unassisted unit of similar quality, type, and age in the same market area, as determined by the Secretary...Except for assistance under the certificate program, for any unit occupied by the same family at the time of the last annual rental adjustment, where the assistance contract provides for the adjustment of the maximum monthly rent by applying an annual adjustment factor and where the rent for a unit is otherwise eligible for an adjustment based on the full amount of the factor, 0.01 shall be subtracted from the amount of the factor, except that the factor shall not be reduced to less than 1.0.

42 U.S.C. §1437f(c)(2)(A). *See also* Statesman II Answer,¶13; Beach House Answer, ¶13.

4. After enactment of the 1994 Amendments, HUD issued Notice 95-12. In HUD Notice 95-12 and its successors, HUD has construed the 1994 Amendments to require the submission of a comparability study if the unadjusted Contract Rent is more than HUD's published fair market rent for the area. *See* HUD Notice 95-12, reproduced at Def. App. 1. *See also* HUD Notice 97-14 (3/17/97), Def. App. 25-41; HUD Notice 98-3 (1/23/98), Def. App. 42-43; HUD Notice 99-17 (7/8/99), Def. App. 44; HUD Notice 00-14 (8/9/00), Def. App. 45; and HUD Notice 2002-10 (5/17/02), Def. App. 46-60. HUD Notice 95-12 limited any such adjustment to the lesser of (a) the comparable rent determined by the study plus the Initial Difference or (b) the AAAF adjusted rent. Def. App. 4. HUD Notice 95-12 requires HAP Contract owners to submit such comparability study and additional information at least 60 days before the requested increase becomes effective (60 Day Requirement). Def. App. 3. It also precludes any increase in Contract Rent if the project owner fails to submit the required information within the contract year. *Id.* *See also* Statesman II Answer, ¶14; Beach House Answer, ¶14.

5. When each HAP Contract was executed, an initial difference existed with respect to each property. Statesmen II Answer, ¶8; Beach House Answer, ¶8. *See also* Racek, Supplements to Rent Surveys ("Racek Supplements"), reproduced at Def. App. 85, 159. Each year between the time the Properties and HUD entered into the HAP Contracts through 1994, the Contract Rents for each of the Properties were increased pursuant to application of the AAAFs as set forth below:

| Property | Initial Contract Rent | | Initial Difference[1] | | 1994 Contract Rent | |
|---|---|---|---|---|---|---|
| | 1 BR | 2 BR | 1 BR | 2 BR | 1 BR | 2 BR |
| Statesman | $370 | $424 | $70 | $82 | $586 | $671 |
| | 2 BR | 3 BR | 2 BR | 3 BR | 2 BR | 3 BR |
| Beach House | $474 | $537 | $79 | $89 | $662 | $779 |

DPFUF, ¶¶4, 6; Statesman II Answer, ¶15; Beach House Answer, ¶15; Def. App. 85, 159 for initial difference.

6. Since the 1994 Contract Rent adjustments, the Government published AAAFs for the years 1995 through 2002:

| | Non-Turnover Units | Turnover Units |
|---|---|---|
| 1995 | 1.018 | 1.028 |
| 1996 | 1.008 | 1.018 |
| 1997 | 1.013 | 1.023 |
| 1998 | 1.020 | 1.030 |
| 1999 | 1.024 | 1.034 |
| 2000 | 1.033 | 1.043 |
| 2001 | 1.003 | 1.013 |
| 2002 | 1.047 | 1.057 |

Statesman II Answer, ¶16; Beach House Answer, ¶16; Def. App. 196-241. *See also* Federal Register, 60 FR 12594, 60 FR 55934, 61 FR 66132, 63 FR 11956, 63 FR 51224, 64 FR 51860, 64 FR 66888 and 66 FR 59055, reproduced at Def. App. 196-241.

7. The initial monthly contract rents under the Statesman II HAP Contract were $370 for each of the one-bedroom apartments and $424 for each of the two-bedroom apartments. Statesman II Answer, ¶8; Exhibit A to Statesman II HAP Contract, reproduced at Def. App. 70.

---

[1] Although the Racek Supplements indicate initial differences of $95 and $104 for one and two bedroom units at Statesman Apts. and $277 and $290 for two and three bedroom units at Beach House, only $70 and $82 is being claimed for Statesman Apts. and $79 and $89 for Beach House. The claimed figures for each Property are the 20% of Initial Contract Rent maximum allowed by 42 U.S.C. §1437f(c)(1).

8. The initial monthly contract rents under the Beach House HAP Contract were $474 for each of the two-bedroom apartments and $537 for each of the three-bedroom apartments. Beach House Answer, ¶8; Exhibit A to Beach House HAP Contract, reproduced at Def. App. 133.

9. Between contract inception and 1994, the monthly per unit Contract Rent for Statesman Apartments was increased pursuant to the provisions of Section 1.8(b) of the Statesman Apartments HAP Contract from $370 to $586 for one bedroom units and from $424 to $671 for two bedroom units. Statesman II Answer, ¶15.

10. Between contract inception and 1994, the monthly per unit Contract Rent for Lakeshore Village was increased pursuant to the provisions of Section 1.8(b) of the Lakeshore Village HAP Contract from $474 to $662 for two bedroom units and from $537 to $779 for three bedroom units. Beach House Answer, ¶15.

11. Since the 1994 Contract Rent adjustment, the Government has published Automatic Annual Adjustment Factors each year. *See* Statesman II First Amended Complaint, and Defendant's Answer, ¶16; Beach House First Amended Complaint, and Defendant's Answer, ¶16.

12. The Properties last received rent adjustments based upon the published AAAFs in 1994. DPFUF, ¶¶6, 15; Statesman II First Amended Complaint, and Defendant's Answer, ¶19; Beach House First Amended Complaint, and Defendant's Answer, ¶19.

13. In letters dated April 2, 2004, the Properties requested payment of the past due annual rent increases for the year 1998 through November, 2000 in the case of Statesman Apts. and through September, 2002 in the case of Beach House. Said letters enclosed comparable rent studies, turnover information, and all other documentation required by HUD Notice 95-12. *See*

letters reproduced at Def. App. 76, 150. DPFUF, ¶¶9, 16; Statesman II First Amended Complaint, and Defendant's Answer, ¶27; Beach House First Amended Complaint, and Defendant's Answer, ¶27. The Properties requested that the increases reflect each of the AAAF's applicable since the rents were last adjusted in 1994. *Id.*

14. By letter dated April 23, 2004, HUD denied the requests of the Properties, citing HUD Notice 95-12, the lack of a materiality component in its instructions, and a pending lawsuit as the reasons for the denial. *See* letter reproduced at Def. App.121. DPFUF, ¶¶9, 16; Statesman II First Amended Complaint, and Defendant's Answer, ¶27; Beach House First Amended Complaint, and Defendant's Answer, ¶27.

15. In calculating the Overall Limitation under Section 1.8(d) of the HAP Contracts, a Material Difference is an amount greater than 120% of the sum of the comparable rent and the Initial Difference. *See National Leased Hous. Assn. v. United States*, 22 Cl.Ct. 649 (1991); *Park Village Apts v. United States*, 25 Cl. Ct. 729 (1992); *Park Village Apts. v. United States*, 32 Fed. Cl. 441 (1994), *aff'd* 105 F.3d 1612 (Fed. Cir. 1997); *National Leased Hous. Assn. v. United States*, 32 Fed. Cl. 454 (1994), *aff'd* 152 F.3d 943 (Fed. Cir. 1998). *See also Sheridan Square Partnership v. United States*, 761 F.Supp. 738, 743, n. 2 (D. Colo. 1991).

Respectfully submitted,

/s/ *Fred J. Livingstone*
Fred J. Livingstone (0009528)
Taft, Stettinius & Hollister LLP
3500 BP Tower
200 Public Square
Cleveland, OH 44114-2302
(216) 241-2838
(216) 241-3707 – Fax
flivingstone@taftlaw.com

Attorney for Plaintiff
Statesman II Apartments, Inc.,

Of Counsel:
Mark J. Valponi
Majeed G. Makhlouf
Taft, Stettinius & Hollister LLP
3500 BP Tower
200 Public Square
Cleveland, Ohio 44114-2302
(216) 241-2838
(216) 241-3707 – Fax

Dated: January 7, 2005

**CERTIFICATE OF SERVICE**

I hereby certify that on January 7th, 2005 I electronically filed a copy of the foregoing *Plaintiff's Proposed Findings of Uncontroverted Facts* with the Clerk of the Court. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

/s/ *Fred J. Livingstone*
Fred J. Livingstone