IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| STATESMAN II APARTMENTS, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Nos. 04-805C, 04-806C (consolidated) |
| v. | ) | |
| | ) | (Judge Lettow) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S STATEMENT OF GENUINE ISSUES

Pursuant to RCFC 56(h)(2), defendant, the United States, respectfully submits the following responses to "Plaintiff's Proposed Findings of Uncontroverted Fact" dated January 7, 2005:[1]

1. Between November 14, 1980, and October 25, 1982, the Properties each entered into separate HAP Contacts with HUD. Copies of the Statesman Apts. and Beach House HAP Contracts are at the Appendix to Defendant's Motion for Summary Judgment ("Def App.") at 61 and 122, respectively. *(See also* Defendant's Proposed Findings of Uncontroverted Facts ("DPFUF"), ¶2; Statesman II Answer, ¶6; Beach House Answer, ¶6.)

RESPONSE: Admits.

2. The HAP Contracts specify an initial, per unit, Contract Rent for each Property. Pursuant to Section 1.8(b) of the HAP Contracts ("Section 1.8(b)"), HUD is required to increase the Contract Rent annually based upon Automatic Annual Adjustment Factors ("AAAFs") determined and published by the Government. Such provision permits the reduction of the factor only if the utilities are paid directly by the families:

[1] In this document, "Def. App. ____" refers to the referenced page(s) of the appendix to "Defendant's Motion for Summary Judgment" dated November 5, 2004.

> 1) Automatic Annual Adjustment Factors will be determined by the Government at least annually; interim revisions may be made as market conditions warrant. Such Factors and the basis for their determination will be published in the Federal Register. **These published Factors will be reduced appropriately by the Government where utilities are paid directly by the families**.
>
> 2) On each anniversary date of the Contract, the Contract Rents shall be adjusted by applying the applicable Automatic Annual Adjustment Factor most recently published by the Government. Contract Rents may be adjusted upward or downward, as may be appropriate; however, in no case shall the adjusted Contract Rents be less than the Contract Rents on the effective date of this Contract.

Section 1.8(b), Def. App. 64, 125 (emphasis added); Statesman II Answer, ¶11; Beach House Answer, ¶ 11.

RESPONSE: This proposed finding of uncontroverted fact contains conclusions of law to which no response is required. Defendant respectfully refers the Court to the Statesman II and Beach House HAP Contracts for a complete statement of their contents. See Def. App. 61-73, 122-145.

3. On September 28, 1994, Congress passed the Department of Veteran's Affairs and Housing and Urban Development and Independent Agencies Appropriations Act of 1995 ("1995 Act"). Among the many components of this Act, 42 U.S.C. §1437f(c)(2)(A) was amended ("1994 Amendments"). Prior to the 1994 Amendments, 42 U.S.C. §1437f(c)(2)(A), read as follows:

> The assistance contract shall provide for adjustment annually or more frequently in the maximum monthly rents for units covered by the contract to reflect changes in the fair market rentals established in the housing area for similar types and sizes of dwelling units, or, if the Secretary determines, on the basis of a reasonable formula.

42 U.S.C. §1437f(c)(2)(A). Section 1.8(b) reflects this language. *(See* Def. App., 64, 125.)

Under the 1994 Amendments, the following language was added to 42 U.S.C. §1437f(c)(2)(A):

> However, where the maximum monthly rent, for a unit in a new construction, substantial rehabilitation, or moderate rehabilitation project, to be adjusted using an annual adjustment factor exceeds the fair market rental for an existing dwelling unit in the market area, the Secretary shall adjust the rent only to the extent that the owner demonstrates that the adjusted rent would not exceed the rent for an existing dwelling unit in the market area, the Secretary shall adjust the rent only to the extent that the owner demonstrates that the adjusted rent would not exceed the rent for an unassisted unit of similar quality, type, and age in the same market area, as determined by the Secretary...Except for assistance under the certificate program, for any unit occupied by the same family at the time of the last annual rental adjustment, where the assistance contract provides for the adjustment of the maximum monthly rent by applying an annual adjustment factor and where the rent for a unit is otherwise eligible for an adjustment based on the full amount of the factor, 0.01 shall be subtracted from the amount of the factor, except that the factor shall not be reduced to less than 1.0.

42 U.S.C. §1437f(c)(2)(A). *See also* Statesman II Answer,913; Beach House Answer, 913.

RESPONSE: Denies the first and second sentences of this proposed finding of uncontroverted fact, except to admit that, on September 28, 1994, the Department of Veterans Affairs and Housing and Urban Development and Independent Agencies Appropriations Act of 1995 was enacted and that, among other things, this legislation amended 42 U.S.C. § 1437f(c)(2)(A); admits the third sentence of this proposed finding of uncontroverted fact; the fourth sentence of this proposed finding of uncontroverted fact is a conclusion of law to which no response is required; admits the third sentence of this proposed finding of uncontroverted fact.

4. After enactment of the 1994 Amendments, HUD issued Notice 95-12. In HUD Notice 95-12 and its successors, HUD has construed the 1994 Amendments to require the submission of a comparability study if the unadjusted Contract Rent is more than HUD's published fair market rent for the area. *See HUD* Notice 95-12, reproduced at Def. App. 1.

*See also HUD* Notice 97-14 (3/17/97), Def. App. 25-41; HUD Notice 98-3 (1/23/98), Def. App. 4243; HUD Notice 99-17 (7/8/99), Def. App. 44; HUD Notice 00-14 (8/9/00), Def. App. 45; and HUD Notice 2002-10 (5/17/02), Def. App. 46-60. HUD Notice 95-12 limited any such adjustment to the lesser of(a) the comparable rent determined by the study plus the Initial Difference or (b) the AAAF adjusted rent. Def. App. 4. HUD Notice 95-12 requires HAP Contract owners to submit such comparability study and additional information at least 60 days before the requested increase becomes effective (60 Day Requirement). Def. App. 3. It also precludes any increase in Contract Rent if the project owner fails to submit the required information within the contract year. *Id. See also* Statesman II Answer, 914; Beach House Answer, 914.

RESPONSE: Admits that, following the amendment of 42 U.S.C. § 1437f(c)(2)(A) in 1994, HUD issued Notice 95-12. Defendant respectfully refers the Court to HUD Notice 95-12 for a complete statement of its contents. See Def. App. 1-24.

5. When each HAP Contract was executed, an initial difference existed with respect to each property. Statesmen II Answer, 98; Beach House Answer, 98. *See also* Racek, Supplements to Rent Surveys ("Racek Supplements"), reproduced at Def. App. 85, 159. Each year between the time the Properties and HUD entered into the HAP Contracts through 1994, the Contract Rents for each of the Properties were increased pursuant to application of the AAAFs as set forth below:

| Property | Initial Contract Rent | | Initial Difference | | 1994 Contract Rent | |
|---|---|---|---|---|---|---|
| | 1 BR | 2 BR | 1 BR | 2 BR | 1 BR | 2 BR |
| Statesman | $370 | $424 | $70 | $82 | $586 | $671 |

| | 2 BR | 3 BR | 2 BR | 3 BR | 2 BR | 3 BR |
|---|---|---|---|---|---|---|
| Beach House | $474 | $537 | $79 | $89 | $662 | $779 |

DPFUF, ¶¶4, 6; Statesman II Answer, ¶15; Beach House Answer, ¶15; Def. App. 85, 159 for initial difference.

RESPONSE: Admits the first sentence of this proposed finding of uncontroverted fact; denies the second sentence contained in this proposed finding of uncontroverted fact, except to admit that, in the case of Beach House, the last rent adjustment received under the Beach House HAP Contract was effective in 1994, that the initial monthly contract rents for Statesman Apartments under the Statesman II HAP Contract and for Lakeshore Village under the Beach House HAP Contract are as set forth in this proposed finding of uncontroverted fact, and that, in 1994, the monthly contract rents for Statesman Apartments under the Statesman II HAP Contract and for Lakeshore Village under the Beach House HAP Contract are as set forth in this proposed finding of uncontroverted fact.

Defendant specifically denies that the amounts of the initial differences with respect to contract rents under the Statesman II and Beach House HAP contracts are as set forth in the chart contained in this proposed finding of uncontroverted fact. The HUD Handbook effective in 1980, when the Statesman II HAP contract was entered, provided for a 10% adjustment in the case of a Section 8 HAP project without a HUD-insured mortgage and in the case of a Section 8 HAP project with a HUD-insured project in which 100% of the revenue-producing units were assisted, "to compensate for the increased security services and higher costs of owning and maintaining assisted *family* housing . . . ." HUD Handbook 7420.1 CHG, ch. 9, at 9-13 (May 1978) (quoted in National Leased Housing, 32 Fed. Cl. at 469 n.9). Consistent with that policy,

the initial contract rents for Statesman Apartments included a 10% special adjustment to the comparable unassisted rents, $34 in the case of the one-bedroom units (10 % of the $336 comparable unassisted rent, rounded up to the nearest dollar) and $39 in the case of the two-bedroom units (10 % of the $385 comparable unassisted rent, rounded up to the nearest dollar). See Declaration of Dennis Morton, ¶¶ 2, 3, Def. Supp. App. 13, 14.

The HUD Handbook in effect in 1982, when the Beach House HAP contract was entered, was revised to allow a 10 percent adjustment for all Section 8 projects, subject to a "rent reasonableness" test. National Leased Housing, 32 Fed. Cl. at 470 n.9; see also HUD Handbook 7420.1 REV-1, ch. 9, at 9-4 to 9-5 (Feb. 1981) (quoted in National Leased Housing, 32 Fed. Cl. at 470 n.9).

6. Since the 1994 Contract Rent adjustments, the Government published AAAFs for the years 1995 through 2002:

| | Non-Turnover Units | Turnover Units |
|---|---|---|
| 1995 | 1.018 | 1.028 |
| 1996 | 1.008 | 1.018 |
| 1997 | 1.013 | 1.023 |
| 1998 | 1.020 | 1.030 |
| 1999 | 1.024 | 1.034 |
| 2000 | 1.033 | 1.043 |
| 2001 | 1.003 | 1.013 |
| 2002 | 1.047 | 1.057 |

Statesman II Answer, ¶16; Beach House Answer, ¶16; Def. App. 196-241. *See also* Federal Register, 60 FR 12594, 60 FR 55934, 61 FR 66132, 63 FR 11956, 63 FR 51224, 64 FR 51860, 64 FR 66888 and 66 FR 59055, reproduced at Def. App. 196-241.

RESPONSE: Denies this proposed finding of uncontroverted fact, except to admit that the published "annual adjustment factors" ("AAFs") for non-turnover and turnover units for fiscal years 1995 through 2002 are as set forth in this proposed finding of uncontroverted fact.

7. The initial monthly contract rents under the Statesman II HAP Contract were $370 for each of the one-bedroom apartments and $424 for each of the two-bedroom apartments. Statesman II Answer, ¶8: Exhibit A to Statesman II HAP Contract, reproduced at Def. App. 70.

RESPONSE: Admits.

8. The initial monthly contract rents under the Beach House HAP Contract were $474 for each of the two-bedroom apartments and $537 for each of the three-bedroom apartments. Beach House Answer, ¶8; Exhibit A to Beach House HAP Contract, reproduced at Def. App. 133.

RESPONSE: Admits.

9. Between contract inception and 1994, the monthly per unit Contract Rent for Statesman Apartments was increased pursuant to the provisions of Section 1.8(b) of the Statesman Apartments HAP Contract from $370 to $586 for one bedroom units and from $424 to $671 for two bedroom units. Statesman II Answer, ¶15.

RESPONSE: Denies. The last rent adjustment for Statesman Apartments under the Statesman II HAP Contract was effective on November 14, 1992. See Def. App. 74-75.

10. Between contract inception and 1994, the monthly per unit Contract Rent for Lakeshore Village was increased pursuant to the provisions of Section 1.8(b) of the Lakeshore Village HAP Contract from $474 to $662 for two bedroom units and from $537 to $779 for three bedroom units. Beach House Answer, ¶15.

RESPONSE: Admits.

11. Since the 1994 Contract Rent adjustment, the Government has published Automatic Annual Adjustment Factors each year. *See* Statesman II First Amended Complaint, and Defendant's Answer, ¶16; Beach House First Amended Complaint, and Defendant's Answer, ¶16.

RESPONSE: Denies, except to admit that, after 1994, the Government continued to publish AAFs in the Federal Register for each fiscal year. See Def. App. 195-243.

12. The Properties last received rent adjustments based upon the published AAAFs in 1994. DPFUF, ¶¶6, 15; Statesman II First Amended Complaint, and Defendant's Answer, ¶19; Beach House First Amended Complaint, and Defendant's Answer, ¶19.

RESPONSE: Denies, except to admit that, in 1994, monthly contract rents under the Beach House HAP Contract were adjusted based upon the applicable, published AAFs. See Def. App. 146-149.

13. In letters dated April 2, 2004, the Properties requested payment of the past due annual rent increases for the year 1998 through November, 2000 in the case of Statesman Apts. and through September, 2002 tn the case of Beach House. Said letters enclosed comparable rent studies, turnover information, and all other documentation required by HUD Notice 95-12. *See* letters reproduced at Def. App. 76, 150. DPFUF, ¶¶9, 16; Statesman II First Amended Complaint, and Defendant's Answer, ¶27; Beach House First Amended Complaint, and Defendant's Answer, ¶27. The Properties requested that the increases reflect each of the AAAF's applicable since the rents were last adjusted in 1994. *Id.*

RESPONSE: Denies the first sentence contained in this proposed finding of uncontroverted fact, except to admit that, in a letter dated April 2, 2004, Beach House's attorney requested rent increases for the year 1998 through September 2002; the second sentence of this proposed

finding of uncontroverted fact is a conclusion of law to which no response is required; denies the third sentence contained in this proposed finding of uncontroverted fact. See Def. App. 76-77,

14. By letter dated April 23, 2004, HUD denied the requests of the Properties, citing HUD Notice 95-12, the lack of a materiality component in its instructions, and a pending lawsuit as the reasons for the denial. *See* letter reproduced at Def. App.121. DPFUF, ¶¶9, 16; Statesman II First Amended Complaint, and Defendant's Answer, ¶27; Beach House First Amended Complaint, and Defendant's Answer, ¶27.

RESPONSE: Admits. Defendant respectfully refers the Court to the referenced HUD correspondence for a complete statement of its contents. See Def. App. 121.

15. In calculating the Overall Limitation under Section 1.8(d) of the HAP Contracts, a Material Difference is an mount greater than 120% of the sum of the comparable rent and the Initial Difference. *See National Leased Hous. Assn. v. United States,* 22 C1.Ct. 649 (1991); *Park Village Apts v. United States,* 25 C1. Ct. 729 (1992); *Park Village Apts. v. United States,* 32 Fed. Cl. 441 (1994), *aff'd* 105 F.3d 1612 (Fed. Cir. 1997); *National Leased Hous. Assn. v. United States,* 32 Fed. C1. 454 (1994), *aff'd* 152 F.3d 943 (Fed. Cir. 1998). *See also Sheridan Square Partnership v. United States,* 761 F.Supp. 738, 743 n. 2 (D. Colo. 1991).

RESPONSE: This proposed finding of uncontroverted fact is a conclusion of law to which no response is required.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/John E. Kosloske
JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-0282
(FAX)(202) 514-8624

Attorneys for Defendant

OF COUNSEL:

C. ALLEN VILLAFUERTE
Trial Attorney
Office of General Counsel
Department of Housing
and Urban Development
Washington, DC

FEBRUARY 4, 2005