# PLAINTIFF'S SUPPLEMENTAL APPENDIX

IN THE UNITED STATES
COURT OF FEDERAL CLAIMS

**STATESMAN II APARTMENTS, INC.,**

Plaintiff,

v.

**THE UNITED STATES OF AMERICA,**

Defendant.

CASE NOS. 04-805C and No. 04-806C
(Consolidated)

JUDGE LETTOW

**AFFIDAVIT OF FRED J. LIVINGSTONE**

Fred J. Livingstone, after being duly sworn, deposes and states that I am one of the attorneys of record for the Plaintiff in the above-captioned case.

I have personal knowledge of the factual assertions contained in this Affidavit.

Attached hereto is a true and accurate copy of an excerpt of the Post Trial Brief filed by the Government on February 14, 1994 in the case of Park Village Apartments v. the United States, 32 Fed. Cl. 762 (1994), aff'd, 152 F.3d 943 (Fed. Cir. 1998).

I personally obtained this excerpt from the case file maintained by the Washington National Records Center in Suitland, Maryland.

FURTHER AFFIANT SAYETH NAUGHT.

Fred J. Livingstone

Sworn to before me and subscribed in my presence this 17th day of February, 2005.

Notary Public
Virginia M. Judd, Notary Public,
State of Ohio, Cuyahoga County
My Commission Expires Jan. 2, 2007

**SUPPLEMENTAL
APPENDIX
PAGE 1**

ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
JUN 17 1994
U.S. COURT OF FEDERAL CLAIMS

No. 701-88C
(Judge Andewelt)

PARK VILLAGE APARTMENTS

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S POST-TRIAL BRIEF

FRANK W. HUNGER
Assistant Attorney General

DAVID M. COHEN
Director

ARNOLD M. AUERHAN
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
2nd Floor, Todd Bldg
Washington, D.C. 20530
Tele: (202) 307-0290

Attorneys for Defendant

OF COUNSEL:

HOWARD SCHMELTZER
STEVE CERNY

U.S. Department of Housing and Urban Development

June 17, 1994

### There Exists No Material Difference Between The Actual Rents Park Village Received And The Market Rents For Comparable Unassisted Units

Congress granted the Government the authority to determine whether comparable rents differed materially from the rents resulting from application of the annual adjustment factor ("AAF"). HUD's determination should be sustained by the Court unless it was arbitrary and capricious or an abuse of authority. In implementing the Section 8 program, HUD developed a policy for determining when a material difference arose. National Leased Housing Association v. United States, 22 Cl. Ct. 649, 661 (1991); PX8. A HUD memorandum dated January 14, 1986, advised all of HUD's regional directors of housing that

> a material difference exists whenever the adjusted Section 8 rent would exceed 120 percent times the sum of the comparable rent and the initial difference.

PX8 at page 3.

This definition of material difference refers to those situations in which the AAF ("factored") rent would exceed the comparable rent. HUD did not anticipate that the overall limitation provision would be applicable to those situations in which the comparable rent would exceed the factored rent. PX8 at page 3. Accordingly, HUD did not develop a policy statement for determining when a material difference existed in this reverse situation. Common sense suggests, however, that a mirror image approach would be appropriate for those situations where comparable rent exceeds the factored rent. To develop a mirror

image approach, we need to examine how HUD's policy was implemented.

The 1986 memorandum demonstrates that HUD's goal was to eliminate material differences, not all differences. PX8 at attachment 2. If the comparable rent plus initial difference equaled $360, the 120 percent material difference limitation would cap the annual adjustment at $432. Id. at example 1B. A factored rent that exceeded $432 would be materially different from the comparable rent plus initial difference. Id. Accordingly, HUD would eliminate the material difference by approving an adjusted contract rent of $432. The Section 8 program participant would receive an adjusted contract rent that was 120 percent greater than the comparable rent plus initial difference. Id. Nonetheless, this would not constitute a material difference. Id.

To develop a mirror image policy for situations where the comparable rent exceeded the factored rent, as in this case, HUD would begin with its determination of the comparable rent. We would not add the initial difference to the comparable rent in this situation because the initial difference has been preserved in the lower factored rent amount. To avoid a double recovery of the costs associated with the initial difference, the prudent approach in this case is to begin with the comparable rent conclusion alone.

The material difference threshold should be calculated by subtracting 20 percent from the comparable rent. For example,



REPRODUCED AT THE NATIONAL ARCHIVES

defendant's rent conclusion for 1986 was $600. DX6. Subtracting 20 percent ($120) results in a material difference threshhold of $480. The factored rent should be $480 or greater, anything less would be materially different from the comparable rent of $600. For 1986, the factored rent provided by HUD to Park Village was $533, well within the material difference threshhold. Accordingly, if the Court adopts Yovino-Young's conclusions, there would be no material difference for 1986.

Park Village has never received adjusted contract rents materially different from the rents obtained by comparable unassisted units for the years at issue in this case. This is demonstrated by the following chart:

| Year | Yovino-Young's Conclusions DX6 | Material Difference Threshhold (-20%) | Actual Rents Paid By HUD DX6 |
|---|---|---|---|
| 1983 | $ 440 | $ 352 | $ 425 |
| 1984 | 520 | 416 | 449 |
| 1985 | 575 | 460 | 494 |
| 1986 | 600 | 480 | 533 |
| 1987 | 630 | 504 | 564 |
| 1988 | 675 | 540 | 606 |
| 1989 | 675 | 540 | 631 |
| 1990 | 680 | 544 | 669 |
| 1991 | 675 | 540 | 698 |
| 1992 | 700 | 560 | 733 |
| 1993 | 710 | 568 | 767 |

The above chart demonstrates that the contract rents provided by HUD to Park Village were always greater than an





REPRODUCED AT THE NATIONAL ARCHIVES

amount 20 percent less than the comparable rent for that year. Should the Court determine that the initial difference amount of $29 should be added to defendant's rent conclusions, the calculations would be as follows:

| Year | Yovino-Young's Conclusions Plus Initial Difference ($29) DX6; TT321-322 | Material Difference Threshhold (-20%) | Actual Rents Paid By HUD DX6 |
|---|---|---|---|
| 1983 | $ 469 | $ 375 | $ 425 |
| 1984 | 549 | 439 | 449 |
| 1985 | 604 | 483 | 494 |
| 1986 | 629 | 503 | 533 |
| 1987 | 659 | 527 | 564 |
| 1988 | 704 | 563 | 606 |
| 1989 | 704 | 563 | 631 |
| 1990 | 709 | 567 | 669 |
| 1991 | 704 | 563 | 698 |
| 1992 | 729 | 583 | 733 |
| 1993 | 739 | 591 | 767 |

This chart demonstrates that even if the initial difference amount of $29 is added to defendant's comparable rent conclusions, Park Village actually received an adjusted rent amount greater than the material difference threshhold.

V. The Government's Determination That The Initial Difference Should Be Preserved As A Fixed Dollar Amount Is Not Arbitrary, Capricious, Or An Abuse Of Authority

HUD determined that the initial difference between the HAP contract rent and the market rent for comparable unassisted units should be preserved through the life of the contract as a fixed



REPRODUCED AT THE NATIONAL ARCHIVES

IN THE UNITED STATES
COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **STATESMAN II APARTMENTS, INC.,** | ) | CASE NOS. 04-805C and No. 04-806C |
| | ) | (Consolidated) |
| Plaintiffs, | ) | |
| | ) | JUDGE LETTOW |
| v. | ) | |
| | ) | |
| **THE UNITED STATES OF AMERICA,** | ) | **AFFIDAVIT OF RICHARD RACEK, JR.** |
| | ) | |
| Defendant. | ) | |
| | ) | |

Richard Racek, Jr., after being duly sworn, deposes and states as follows:

1. I have personal knowledge of the facts recited herein.

2. I am a licensed and certified General Real Estate Appraiser in the State of Ohio, and a partner in the real estate appraisal firm of Calabrese, Racek & Markos, Inc.

3. On March 18, 2004, I provided the attached letters to Fred J. Livingstone of Taft, Stettinius & Hollister LLP. These letters state the studies I performed and the conclusions I reached in calculating the historic rental rates for the Statesmen Apartments as of January 1, 1981, and Lakeshore Village (Beach House Apartments) as of January 1, 1983.

4. The attached letters are incorporated into this affidavit by reference.

FURTHER AFFIANT SAYETH NAUGHT.

[signature]
Richard Racek, Jr.

Sworn to before me and subscribed in my presence this 22 day of February, 2005.

[signature: Debra A. Duncan]
Notary Public

DEBRA A. DUNCAN, Notary Public
State of Ohio & Cuyahoga County
My Commission Expires 9/25/2005

CALABRESE, RACEK AND MARKOS, INC.
REAL ESTATE SERVICES
1110 EUCLID AVENUE, SUITE 300
CLEVELAND, OHIO 44115-1603

216/696-5442
FAX 216/696-5499
www.crmonline.com

OFFICERS

ANTHONY J. CALABRESE, MAI (1934-1989)
RICHARD G. RACEK, MAI
STEVEN A. CALABRESE, MAI
CLIFFORD D. FEIERABEND, MAI
DAVID S. CALABRESE

ASSOCIATES

DWIGHT A. KUMLER, MAI
MARK E. PAUL, SRA, MAI
RICHARD G. RACEK, JR., MAI
DOUGLAS P. SLOAN, MAI
ERIC M. CALABRESE
PATRICK J. CALABRESE
DANIEL L. SMITH
BRIAN J. TOBEY

March 18, 2004

Associated Estates Management Company
c/o Taft, Stettinius & Hollister, LLP
3500 BP Tower
200 Public Square
Cleveland, Ohio 44114-2302

Attention: Fred J. Livingstone, Esq.

RE: Statesman Apartments Rent Survey
Effective January 1, 1981

Dear Mr. Livingstone:

Please be advised that I have reviewed the asking rates for two apartment complexes which are located in close proximity to the subject property in Shaker Heights, Ohio. Provided below are the historical asking rates and their effective dates.

Colony Apartments
2809 Van Aken Boulevard
Shaker Heights, Ohio

Historical Rental Rates as of November, 1980
$275.00 for a 1 Bedroom Unit
$325.00 for a 2 Bedroom Unit

Shaker Terrace Apartments
19606 Van Aken Boulevard
Shaker Heights, Ohio

Historical Rental Rates as of November, 1980
$360.00 for a 1 Bedroom Unit
$415.00 for a 2 Bedroom Unit

The conventional apartment units that are listed in the foregoing develop unadjusted rental rates which are in a range from $275.00 per unit per month to $360.00 per unit per month for a one bedroom suite and $325.00 per unit per month to $415.00 per unit per month for a two bedroom suite. Adjusting these suites for the size units, the amenities provided, their location and overall desirability, it is concluded that the adjusted rental rate for a one bedroom unit in the buildings on the subject property, as of January 1, 1981 is $325.00 per month for a one bedroom unit and $385.00 per month for a two bedroom unit.

All accessory data and information upon the foregoing estimate is based is being retained in my file. If you have any further questions concerning this rental estimate, I would be pleased to discuss them with you at your convenience.

Very truly yours,
CALABRESE, RACEK & MARKOS, INC.

Richard G. Racek, Jr., MAI

CALABRESE, RACEK AND MARKOS, INC.
REAL ESTATE SERVICES
1110 EUCLID AVENUE, SUITE 300
CLEVELAND, OHIO 44115-1603

216/696-5442
FAX 216/696-5499
www.crmonline.com

OFFICERS

ANTHONY J. CALABRESE, MAI (1934-1989)
RICHARD G. RACEK, MAI
STEVEN A. CALABRESE, MAI
CLIFFORD D. FEIERABEND, MAI
DAVID S. CALABRESE

ASSOCIATES

DWIGHT A. KUML
MARK E. PAUL, S
RICHARD G. RAC
DOUGLAS P. SLC
ERIC M. CALABR
PATRICK J. CALA
DANIEL L. SMITH
BRIAN J. TOBEY

March 18, 2004

Associated Estates Management Company
c/o Taft, Stettinius & Hollister, LLP
3500 BP Tower
200 Public Square
Cleveland, Ohio 44114-2302

Attention: Fred J. Livingstone, Esq.

RE: Lakeshore Village Rent Survey
Effective January 1, 1983

Dear Mr. Livingstone:

Please be advised that I have reviewed the asking rates and or rent rolls for the following three apartment complexes located in Euclid and Willoughby Hills, Ohio. Provided below are the historical rental rates and their effective dates.

| | |
|---|---|
| Americana Apartments<br>24451 Lakeshore Boulevard<br>Euclid, Ohio | Historic Rental Rates as of September, 1984<br>$344.00 for a 2 Bedroom Unit<br>$408.00 for a 3 Bedroom Unit |
| Watergate Apartments<br>26241 Lakeshore Boulevard<br>Euclid, Ohio | Historic Rental Rates as of March, 1980<br>$319.00 for a 2 Bedroom Unit<br>$399.00 for a 3 Bedroom Unit |
| Winchester I & II Apartments<br>27400 Chardon Road<br>Willoughby Hills, Ohio | Historic Rental Rates as of January, 1980<br>$325.00 for a 2 Bedroom Unit<br>$425.00 for a 3 Bedroom Unit |

The conventional apartment units that are listed in the foregoing developed unadjusted rental rates which are in a range from $319.00 per unit to $344.00 per unit per month for a two bedroom suite and $399.00 per unit to $425.00 per unit per month for a three bedroom suite. Adjusting these suites for the size of the units, the amenities provided, their location and overall desirability, it is concluded that the adjusted rental rate for a two bedroom unit in the buildings on the subject property, as of January 1, 1983 is $290.00 per month and $350 per unit per month for a three bedroom unit.

CALABRESE, RACEK AND MARKOS, INC.

Associated Estates Management Company
c/o Taft, Stettinius & Hollister, LLP
3500 BP Tower
200 Public Square
Cleveland, Ohio 44114-2302

Attention: Fred J. Livingstone, Esq.

RE: Lakeshore Village Rent Survey
Effective January 1, 1983

All accessory data and information upon which the foregoing estimate is based is being retained in my file. If you have any further questions concerning this rental estimate, I would be pleased to discuss with you at your convenience.

Very truly yours,
CALABRESE, RACEK & MARKOS, INC.

Richard G. Racek, Jr., MAI