IN THE UNITED STATES
COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **STATESMAN II APARTMENTS, INC., ET AL.,** | ) | CASE NOS. 04-805C and No. 04-806C (Consolidated) |
| Plaintiffs, | ) | JUDGE LETTOW |
| v. | ) | |
| **THE UNITED STATES OF AMERICA,** | ) | **PLAINTIFFS' SUPPLEMENTAL RESPONSE TO FILING BY DEFENDANT OF SUPPLEMENTAL AUTHORITY** |
| Defendant. | ) | |

Defendant's filing of the Decision on the Motion for Summary Judgment on the question of damages in the case of *Cuyahoga Metro. Hous. Auth. v. United States*, Nos. 10-46C, 01-251C, 10-416C (June 2, 2005) ("Decision") along with the accompanying Motion, enumerated three issues which the Court decided in the Government's favor. This Memorandum responds to the Decision on those three issues.

I. The Decision makes meaningless the word "material" in the phrase "material difference" in Section 1.8(d) of the HAP Contract and thereby omits a necessary factor for increase of the Overall Limitation amount of that section.

Section 1.8(d) provides:

> Notwithstanding any other provisions of this Contract, adjustments as provided in this Section shall not result in **material** differences between the rents charged for assisted and comparable unassisted units, as determined by the Government; **provided**, that this limitation shall not be construed to prohibit differences in rents between assisted and comparable unassisted units to the extent that such differences may have existed with respect to the initial Contract Rents. (Emphasis added).

The *Cuyahoga* Court incorrectly interpreted the entire provision to be for the Government's protection. Section 1.8(d), however, expressly provides two separate safeguards that are solely for the **protection of the property owner** and not the Government: (1) requiring rent differences between assisted and comparable unassisted units to be "material" before they can be precluded and (2) specifically mandating in the proviso that initial differences are not to

be considered in determining what is the material difference from comparable rent. The "material" requirement protects the property owner for future rents after entry of the HAP Contract, and the "proviso" protects the rents that were agreed upon when the HAP Contracts were entered, so that they are not used as a basis for future limitation. After all, the Government had already approved rents in accordance with the initial differences when the HAP Contracts were entered. The proviso protects the property owner from having the Government use the initial differences that it had originally approved as a basis for denying future increases.

The Decision agrees basically with HUD's interpretation of the term "material difference": namely, anything in excess of the sum of comparable rent and initial difference. Yet it adds a condition: namely, initial difference must amount to a sum "sufficiently large so that its addition to the comparable rents results in a sum materially greater than the comparable rents themselves." (Decision at 21.) The HAP Contracts, however, nowhere provide for such an interpretation. The Decision, in effect, did specifically that which the "proviso" prohibits the Government from doing in Section 1.8(d), i.e., using initial differences that were approved by the Government when the HAP Contracts were entered as a basis for future limitation. In effect, so long as the approved initial difference is material, the Decision equates "material difference" with "initial difference" thereby taking away the protections afforded to the property owner in Section 1.8(d). Indeed, the interpretation given in the Decision would just as aptly fit a provision without the word "material" as the provision at issue here which contains the word "material." Accordingly, there is no meaning for the term "material" which is in the HAP Contracts for the protection of the property owner.

It is hornbook law that all terms in a contract must be given meaning if possible.[1] Accord *Beal Mortgage, Inc. v. F.D.I.C.*, 132 F.2d 85, 88 (D.C.Cir. 1998) (recognizing "cardinal interpretive principle that we read a contract 'to give meaning to all of its provisions and to render them consistent with each other'"); *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriter Non-Marine Assn.*, 117 F.3d 1328, 1338 (11th Cir. 1998) ("an interpretation which gives a reasonable meaning to all provisions of a contract is preferred to one which leaves a part useless or inexplicable"); *Jameson v. Mut. Life Ins. Co. of New York*, 415 F.2d 1017, 1020 (5th Cir. 1969) ("[a]n interpretation which gives a reasonable meaning to all provisions is preferable to one which leaves a portion of the policy useless, inexplicable or creates surplusage").

Giving meaning to the word "material" as part of the phrase "material difference" in the HAP Contracts means that it is a factor which HUD has the discretion to define along with what else it has discretion to define: namely, what are comparable unassisted units and what are comparable rents for such units. It must, however, give each of those factors a reasonable meaning, especially when the "materiality factor" seeks to protect the property owner against limitation on any differences in rents. Comparable rent is determined by an appraisal. Since appraisal is not an exact science, use of the word "material" along with "difference" makes allowance for the lack of exactness. It is unreasonable to fail to give meaning to the word "material" in the HAP Contracts, which Black's Law Dictionary (8th ed. 2004) defines as

---

[1] The Restatement (Second) of Contracts § 203 (Standard of Preference (a)) (1981) provides:

> In the interpretation of a promise or agreement or a term thereof, the following standards of preference are generally applicable:
>
> (a) an interpretation which gives a reasonable, lawful and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect.

"essential" or "significant" (Decision at 23), or to equate it with the initial differences against the express language of the proviso in Section 1.8(d).

HUD's omission of the material difference factor stems from the language of the 1994 Amendments to the Housing Act. The 1994 Amendments require, among other things, that an owner seeking an adjustment of HAP Rents demonstrate that the contract rent adjusted by the latest annual adjustment factor does not exceed the rent for a comparable unassisted unit.[2] The omission of the concept of "material difference" in that formulation causes HUD to breach the HAP Contracts which contain the phrase "material difference" in describing what the adjusted rent cannot exceed.

II. The Decision ignores the fact that the term "material difference" is not mentioned in HUD Notice 95-12 and unreasonably equates the initial difference factor to the material difference factor when they are separate concepts.

HUD issued its 1986 Memorandum for the purpose of defining the term "material difference". In 1992, HUD proposed but never adopted a regulation re-defining the term. To assume that Notice 95-12 is defining material difference by equating it to "initial difference" when it never mentions the term "material difference", is unreasonable, especially when that assumption leaves the word "material" without any meaning as demonstrated above. "Material

---

[2] 42 U.S.C. §1437f(c)(2)(A):

> However, where the maximum monthly rent, for a unit in a new construction, substantial rehabilitation, or moderate rehabilitation project, to be adjusted using an annual adjustment factor exceeds the fair market rental for an existing dwelling unit in the market area, **the Secretary shall adjust the rent only to the extent that the owner demonstrates that the adjusted rent would not exceed the rent for an unassisted unit of similar quality, type, and age in the same market area, as determined by the Secretary**…Except for assistance under the certificate program, for any unit occupied by the same family at the time of the last annual rental adjustment, where the assistance contract provides for the adjustment of the maximum monthly rent by applying an annual adjustment factor and where the rent for a unit is otherwise eligible for an adjustment based on the full amount of the factor, 0.01 shall be subtracted from the amount of the factor, except that the factor shall not be reduced to less than 1.0. (Emphasis added).

difference" and "initial difference" are two separate factors to be utilized along with comparable rent in determining what the overall limitation is on the adjustment of HAP Rent. HUD certainly understood the term and the need to exercise its discretion to define it.

III. The Decision is unreasonable in finding that the principle of Judicial Estoppel does not apply to require HUD to continue using the last definition of "material difference" which it had advocated and courts had adopted in five different decisions.

The Doctrine of Judicial Estoppel provides that an interpretation given by an agency to a statute, which is adopted by a court, will be adhered to by the court in the face of the agency's later contrary interpretation. *Maislin Indus. U.S., Inc. v. Primary Steel, Inc.*, 497 U.S. 116, 131 (1990); *Norfolk & Southern Ry. Co. v. Shanklin*, 529 U.S. 344, 356 (2000). The Decision unreasonably does not do that. Pages 30-35 of the Decision contain an extensive summary of the 1990's cases and the Government's briefs dealing with the subject of material difference in specific terms. This discussion is introduced with the comment:

> But, a review of several of its prior briefs reveals that defendant (i.e., the Government) has come perilously close to arguing that the 120 percent rule was the exclusive HUD standard for materiality – so close, perhaps, as to lead a reasonable jurist into believing this proposition, even though it is not true.

Then the Court examined the cases and briefs, and in only one, the earliest, *National Leased Housing I*, 22 Ct.Cl. 649 (1991), was an additional standard for defining material difference enunciated, albeit in a footnote in one brief. However, in *Park Village II*, 32 Ct.Cl. 441 (1994), the Government's briefs were characterized by the Court as "potentially misleading" when the Government flat out argued for the 20% material difference standard to be applied to a situation in which it was in the Government's interest to so argue. The *Park Village* Court accepted the Government's view and held that the 20% material difference standard was applicable.

The *Cuyahoga* Decision on page 33, states:

> Based, in particular, on the latter two excerpts, the court finds that defendant hitherto has argued constructions of the 1986 memorandum, and derivatively the concept of "material difference" contained therein, that differ from what it asserts here.

The Decision then points out how the Government's argument probably affected the decisions in other cases which had held only one standard, the 120% rule, was the definition of material difference determined by HUD in the 1986 Memorandum. But then, seemingly ignoring everything just recited, the Decision goes back to the *National Leased Housing I* decision and says the Government's position in the *Cuyahoga* case is not inconsistent with that case. That argument does not square with the reason for the concept of Judicial Estoppel, namely, to protect the integrity of the courts or, as some cases have phrased it, to keep people from "playing fast and loose" with the courts. See *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (and cases cited therein at pages 749-750); *U.S. Phillips Corp. v. Sears Roebuck & Co.*, 55 F.3d 592, 596 (Fed.Cir. 1995).

In any case, the Decision concludes that the 1986 Memorandum no longer applies but rather Notice 95-12 in which HUD "recalibrated somewhat" its interpretation of what is a "material difference". (Decision at 33.) As demonstrated above, it is unreasonable to allow a HUD Notice to define the term "material difference" when the Notice never mentions such term and, in any case, never gives it any meaning. HUD advocated the last conclusive definition of the term in the five decisions cited above. No other definition has been propounded since then. In fact, Congress has mandated the term's elimination through the enactment of Amendments which thereby caused a repudiation of the HAP Contracts' provision embodying same.

IV. The Decision ignores the principle of *inclusio unius est exclusio alterius* or, in this case, when the HAP Contracts set forth one ground for reduction of the annual adjustment factor, they impliedly exclude others such as the 1% reduction for non-turnover units.

The HAP Contracts provide that after HUD determines the annual adjustment factor it may reduce same in cases where the tenant pays the utilities. They provide no other

basis for reduction. The Decision deals only with the statute which allows HUD to establish automatic adjustment factors. And that language the Decision believes does not limit HUD to a single, monolithic factor. However, the Decision on page 10 does not deal with the contract language which only gives one basis for reduction of the annual adjustment factor: namely, utility costs paid by the tenants. Further, utility costs were the only basis for reduction provided by HUD Regulations in effect for 1980 and 1982, which were substantially identical, when the Contracts were entered.[3] It was the 1994 Amendments which mandated a 1% reduction in the annual adjustment factor and thereby caused HUD to breach the HAP Contracts.

For the reasons cited above, this Court should not follow the *Cuyahoga* Decision and should grant the Plaintiffs' Motion for Summary Judgment in its entirety and find that the 1994 Amendments and Notice 95-12 caused breaches of Plaintiffs' HAP Contracts in:

---

[3] 24 C.F.R. 886.203 (Apr. 1, 1980) provided:

> **§888.203 Use of contract rent automatic annual adjustment factors.**
>
> (a) To compute an adjustment to a Contract Rent, find the schedule of Automatic Annual Adjustment Factors for the appropriate Census Region or Standard Metropolitan Statistical Area, as indicated in Schedule C.
>
> (1) If the Contract Rent includes all utilities, use the factor shown on the basis schedule for the rent bracket within which the particular Contract Rent falls and for the applicable size of unit (by number of bedrooms).
>
> (2) If the Contract Rent does not include all utilities but does include the highest cost utility, use the appropriate factor shown on the basic schedule.
>
> (3) If the Contract Rent does not include any utilities or includes some utilities but not the highest cost utility, use the Annual Adjustment Factor for Contract Rent (Excluding Utilities).
>
> (b) The adjusted monthly amount of the Contract Rent of a dwelling unit shall be determined by multiplying the Contract Rent in Effect on the anniversary date of the contract by the applicable Automatic Annual Adjustment Factor (see paragraph (a) of this section) and rounding the result to the next higher whole dollar amount.

1. not applying the automatic annual adjustment factors to then Contract Rents for the years in question;

2. reducing the automatic annual adjustment factor for non-turnover units by 1%;

3. subjecting the rent adjustments to an overall limitation which omitted a material difference factor;

4. not calculating the overall limitation by using HUD's advocated and judicially adopted interpretation of the material difference factor, namely, 20% of the sum of comparable rent and initial difference; and

5. requiring Plaintiffs to furnish rent comparability studies.

Dated: June 24, 2005

Respectfully submitted,

/s/ *Fred J. Livingstone*
Fred J. Livingstone (0009528)
Taft, Stettinius & Hollister LLP
3500 BP Tower
200 Public Square
Cleveland, OH 44114-2302
(216) 241-2838
(216) 241-3707 – Fax
flivingstone@taftlaw.com

*Attorney for Plaintiff*
*Statesman II Apartments, Inc.*,

Of Counsel:
Mark J. Valponi
Majeed G. Makhlouf
Taft, Stettinius & Hollister LLP
3500 BP Tower
200 Public Square
Cleveland, Ohio 44114-2302
(216) 241-2838
(216) 241-3707 – Fax

**CERTIFICATE OF SERVICE**

I hereby certify that on June 24, 2005, a copy of the foregoing *Plaintiffs' Supplemental Response to Filing by Defendant of Supplemental Authority* was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Respectfully submitted,

/s/ *Fred J. Livingstone*

Fred J. Livingstone (0009528)
Taft, Stettinius & Hollister LLP
3500 BP Tower
200 Public Square
Cleveland, OH 44114-2302
(216) 241-2838
(216) 241-3707 – Fax
flivingstone@taftlaw.com

Attorney for Plaintiff
Statesman II Apartments, Inc.,

Of Counsel:
Mark J. Valponi
Majeed G. Makhlouf
Taft, Stettinius & Hollister LLP
3500 BP Tower
200 Public Square
Cleveland, Ohio 44114-2302
(216) 241-2838
(216) 241-3707 – Fax