IN THE UNITED STATES
COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **STATESMAN II APARTMENTS, INC., ET AL.,** | ) | Case Nos. 04-805C and No. 04-806C (Consolidated) |
| Plaintiffs, | ) | JUDGE LETTOW |
| v. | ) | |
| **THE UNITED STATES OF AMERICA,** | ) | **JOINT STIPULATIONS OF FACT** |
| Defendant. | ) | |

Pursuant to ¶17 of Appendix A to the Rules of the Court of Federal Claims, plaintiffs, Statesman II Apartments, Inc. and Beach House Development Company, and defendant, the United States of America, agree and stipulate as follows:

A. **Fair Market Rents**

1. The Department of Housing and Urban Development ("HUD") published in the Federal Register the following Fair Market Rents applicable to one-bedroom, two-bedroom, and three-bedroom units in walk-up structures in the Cleveland, Ohio Market Area, in which Statesman Apartments and Lakeshore Village are located:

| Effective Date | 1-Bedroom | 2-Bedroom | 3-Bedroom |
|---|---|---|---|
| October 1, 1979 | $353 | $411 | $464 |
| October 1, 1980 | $397 | $425 | $494 |
| October 1, 1981 | $416 | $446 | $518 |

The Fair Market Rents effective on October 1, 1981 were trended ahead to October 1, 1983.

B. **Contract Rent Annual Rent Adjustment Factors**

2. HUD published in the Federal Register the following contract rent annual adjustment factors (highest cost utility excluded) for the PMSA Cleveland-Lorain-Elyria, Ohio area, in which Statesman Apartments and Lakeshore Village are located:

{K0259814.1}

| Effective Date | Turnover Units | Non-Turnover Units |
|---|---|---|
| October 1, 1998 | 1.033 | 1.023 |
| October 1, 1999 | 1.051 | 1.041 |
| October 1, 2000 | 1.020 | 1.010 |
| October 1, 2001 | 1.022 | 1.012 |
| January 22, 2003 | 1.029 | 1.019 |

**C. Statesman Apartments**

3. Statesman II Apartments, Inc. (Statesman II), an Ohio Corporation, is the owner of Statesman Apartments, a low-income rental housing project located at 16705-16825 Van Aken Boulevard, Shaker Heights, Ohio. Mr. Jeffrey I. Friedman is (and from 1993 to the present has been) the President and Chief Executive Officer of Statesman II.

4. Statesman Apartments consists of five, two-story, walk-up apartment buildings containing a total of 20 one-bedroom units and 27 two-bedroom units.

5. Statesman II acquired Statesman Apartments on or about November 18, 1993, from Statesman Apartments Development Company II, an Ohio limited partnership (the Partnership). The Partnership's general partners were Messrs. Jeffrey I. Friedman, Jerome Spevack, and Morris Fien.

6. On or about June 7, 1979, the Partnership submitted to HUD a Preliminary Proposal under the Section 8 Housing Assistance Program for Substantial Rehabilitation for 47 units of substantially rehabilitated housing at Statesman Apartments. By letter dated September 6, 1979, HUD notified the Partnership that its Preliminary Proposal for Statesman Apartments had been selected for approval.

7. The Partnership applied to HUD for a mortgage loan insured by HUD with which to finance the acquisition and construction of Statesman Apartments.

8. On April 9, 1980, HUD notified the Partnership that its Final Proposal dated November 5, 1979, to provide 47 units of substantially rehabilitated housing had been approved

with contract rents of $420 for each of the one-bedroom apartment units and $489 per month for each of the two-bedroom apartment units.

9. On April 11, 1980, HUD issued a commitment to insure a private loan of $1,738,500 to finance the acquisition and substantial rehabilitation of Statesman Apartments by the Partnership.

10. On May 21, 1980, HUD's approval of the Partnership's Final Proposal for Statesman Apartments was amended to provide that the approved monthly contract rent for each of the one-bedroom apartment units was $370 and the approved monthly contract rent for each of the two-bedroom apartment units was $424.

11. On June 20, 1980, the Partnership and the United States, acting through HUD, executed an Agreement to Enter into a Housing Assistance Payments Contract (AHAP) for Statesman Apartments. The AHAP provided that the monthly contract rents for Statesman Apartments would be $370 for each of the one-bedroom units and $424 for each of the two-bedroom units.

12. The Partnership acquired and substantially rehabilitated Statesman Apartments in 1980 with the proceeds of a $1,738,500 mortgage loan insured by HUD pursuant to section 221 (d)(4) of the National Housing Act, as amended (12 U.S.C. §1715*l*(d)(4)). Statesman Apartments was developed by the Partnership under the Section 8 Housing Assistance Payments Program for Substantial Rehabilitation.

13. The Partnership and the United States, acting through HUD, entered into a Housing Assistance Payments Contract for Statesman Apartments (the Statesman II HAP Contract). The Statesman II HAP Contract, which was executed in stages beginning with Stage 1 effective on November 14, 1980, covered all of the 47 apartment units contained in the Statesman Apartments.

14. The Statesman II HAP Contract was for an initial term of five years, renewable for three additional terms of five years each at the owner's option, for a maximum of 20 years. See Statesman II HAP Contract, Part I, §§1.1c, 1.4a (Alternative 2). The anniversary date of the Statesman II HAP Contract was November 14. The Statesman II HAP Contract was terminated on November 30, 2000.

15. The initial monthly contract rents under the Statesman II HAP Contract were $370 for each of the one-bedroom apartment units and $424 for each of the two-bedroom apartment units. See Statesman II HAP Contract, at Exhibit A. The Statesman II HAP Contract provided that "[a]pplicable contract rents do not include unit cost of gas and electric." Id. The initial monthly gross rent of $420 for the one-bedroom apartment units covered by the Statesman II HAP Contract consisted of the contract rent ($370) and a tenant utility allowance ($50). The initial monthly gross rent of $489 for the two-bedroom apartment units covered by the Statesman II HAP Contract consisted of the contract rent ($424) and a tenant utility allowance ($65).

16. From 1980 until 1993, when Statesman II acquired Statesman Apartments from the Partnership, the A.E.C. Management Company was the managing agent for Statesman Apartments. Mr. Jeffrey I. Freidman was the President and a director of the A.E.C. Management Company. From 1993 to the present, the Associated Estates Realty Corporation has been the managing agent for Statesman Apartments. Mr. Friedman is the President and a director of the Associated Estates Realty Corporation.

17. The most recent rent adjustment for Statesman Apartments under the Statesman II HAP Contract was effective on November 14, 1992. From November 14, 1992, until November 30, 2000, when the Statesman II HAP Contract was terminated, the monthly contract rents for Statesman Apartments were $586 for each of the one-bedroom apartment units and $671 for each of the two-bedroom apartment units.

18. Under the rent schedule for Statesman Apartments in effect from November 14, 1992, until November 30, 2000, the HUD-approved monthly tenant utility allowance for the one-bedroom apartment units was $76 and the HUD-approved monthly tenant utility allowance for the two-bedroom apartment units was $100.

19. On April 2, 2004, Statesman made a request to HUD for additional housing assistance payments for the years 1998 through 2000 and submitted comparability studies for the years 1998 through 2000 and other documents required by HUD Notice 95-12 and the notices that extended it. On April 23, 2004, said request was denied by HUD.

20. Under the Statesman II HAP Contract, the cost of gas and electricity for the one-bedroom units and the two-bedroom units were not included in the contract rents for those units. The tenants were given a utility allowance by HUD which was distributed to them by Statesman II. The one-bedroom units and the two-bedroom units in Statesman Apartments were individually metered for gas and electricity usage. The tenant, not Statesman II, was billed directly by the gas and electric utility companies for gas and electrical service to the tenant's unit and the tenant, not Statesman II, was responsible for payment of those utility charges.

21. The monthly contract rents for comparable unassisted dwelling units for the years 1998 through 2000 for the one-bedroom units and the two-bedroom units covered by the Statesman Apartments HAP Contract are as follows:

| Year | One-Bedroom Units | Two-Bedroom Units |
|---|---|---|
| 1998 | $518 | $576 |
| 1999 | $527 | $581 |
| 2000 | $527 | $582 |

**D. Lakeshore Village**

22. Beach House Development Company, an Ohio limited partnership (Beach House), is the owner of Lakeshore Village, a low-income rental housing project located at 16151

Lake Shore Boulevard, Cleveland, Ohio. From 1982 until 1993, Mr. Jeffrey I. Friedman was one of the general partners of Beach House. From 1993 to the present, Associated Estates Realty Corporation and OSF Properties, Inc., have been the general partners of Beach House.

23. Lakeshore Village consists of five, three-story, walk-up apartment buildings containing 102 two-bedroom units and six three-bedroom units.

24. On or about July 29, 1977, Beach House submitted to HUD a Preliminary Proposal under the Section 8 Housing Assistance Program for New Construction to provide the newly-constructed housing project known as Lakeshore Village. On September 12, 1977, HUD notified Beach House that its Preliminary Proposal for Lakeshore Village had been selected for approval.

25. Beach House applied to HUD for a mortgage loan insured by HUD with which to finance the acquisition and construction of Lakeshore Village.

26. On January 25, 1982, HUD issued a commitment to insure a private loan of $4,732,300 to finance the acquisition and construction of Lakeshore Village by Beach House.

27. Beach House acquired the land for and constructed Lakeshore Village in 1982 with the proceeds of a $4,732,300 mortgage loan insured by HUD pursuant to section 221(d)(4) of the National Housing Act, as amended (12 U.S.C. §1715*l*(d)(4)). Lakeshore Village was developed by Beach House under the Section 8 Housing Assistance Payments Program for New Construction.

28. From 1980 until the present, the managing agent for Lakeshore Village has been either A.E.C. Management Company or Associated Estates Realty Corporation.

29. Beach House and the United States, acting through HUD, entered a Housing Assistance Payments Contract for Lakeshore Village (the Beach House HAP Contract). The

Beach House HAP Contract, which was executed in stages beginning with Stage 1 effective on October 4, 1982, covered the 108 apartment units contained in Lakeshore Village.

30. The Beach House HAP Contract was for an initial term of five years, renewable for three additional terms of five years each at the owner's option, for a maximum of 20 years. See Beach House HAP Contract, Part I, §§1.1b, 1.1c, 1.1d, 1.4a (Alternative 1). The anniversary date of the Beach House HAP Contract was October 4.

31. The initial monthly contract rents under the Beach House HAP Contract were $474 for each of the two-bedroom apartment units and $537 for each of the three-bedroom apartment units. See Beach House HAP Contract, at Exhibit A. The initial monthly gross rent of $524 for the two-bedroom apartment units covered by the Beach House HAP Contract consisted of the contract rent ($474) and a tenant utility allowance ($50). The initial monthly gross rent of $597 for the three-bedroom apartment units covered by the Beach House HAP Contract consisted of the contract rent ($537) and a tenant utility allowance ($60).

32. The most recent rent adjustment for Lakeshore Village under the Beach House HAP Contract was effective on October 4, 1994. From October 4, 1994, until October 3, 2002, when the Beach House HAP Contract expired, the monthly contract rents for Lakeshore Village were $662 for the two-bedroom apartment units and $779 for the three-bedroom apartment units.

33. Under the rent schedules for Lakeshore Village in effect from October 4, 1994, until October 3, 2002, the HUD-approved monthly tenant utility allowance for the two-bedroom apartment units was $98 and the HUD-approved monthly tenant utility allowance for the three-bedroom apartment units was $118.

34. On April 2, 2004, Beach House made a request to HUD for the payment of additional housing assistance payments for the years 1998 through 2002 and submitted the comparability studies for the years 1998 through 2002 and other documents required by HUD

Notice 95-12 and the notices that extended it. On April 23, 2004, said request was denied by HUD.

35. Under the Beach House HAP Contract, the cost of gas and electricity for the two-bedroom units and the three-bedroom units was not included in the contract rents for those units. The tenants were given utility allowances by HUD which was distributed to them by Beach House. The two-bedroom units and the three-bedroom units in Lakeshore Village were individually metered for gas and electricity usage. The tenant, not Beach House, was billed directly by the gas and electric utility companies for gas and electrical service to the tenant's unit and the tenant, not Beach House, was responsible for payment of those utility charges.

36. The monthly contract rents for comparable unassisted dwelling units for the years 1998 through 2002 for the two-bedroom units and the three-bedroom units covered by the Beach House HAP Contract are as follows:

| Year | One-Bedroom Units | Two-Bedroom Units |
|---|---|---|
| 1998 | $450 | $555 |
| 1999 | $460 | $565 |
| 2000 | $470 | $585 |
| 2001 | $490 | $595 |
| 2002 | $520 | $645 |

37. HUD Notice 95-12 and the HUD notices that extend it contain the only definition by HUD of what constitutes a "material difference," for purposes of the "overall limitation" upon rent adjustments contained in plaintiffs' HAP contracts, after the enactment of the 1994 amendments to 42 U.S.C. §1437f.

Respectfully submitted,

FRED J. LIVINGSTONE (0009528)
Taft, Stettinius & Hollister LLP
3500 BP Tower
200 Public Square
Cleveland, OH 44114-2302
(216) 241-2838
(216) 241-3707 – Fax
flivingstone@taftlaw.com

Of Counsel:
MARK J. VALPONI
MAJEED G. MAKHLOUF
Taft, Stettinius & Hollister LLP
3500 BP Tower
200 Public Square
Cleveland, Ohio 44114-2302
(216) 241-2838
(216) 241-3707 – Fax

*Attorneys for Plaintiffs*
*Statesman II Apartments, Inc., et al.*

PETER D. KEISLER
Assistant Attorney General
DAVID M. COHEN
Director

JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
(202) 307-0282
(202) 514-8624 – Fax

*Attorneys for Defendant*
*United States of America*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 10, 2006, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Respectfully submitted,

/s/ Fred J. Livingstone
Fred J. Livingstone (0009528)
Taft, Stettinius & Hollister LLP
3500 BP Tower
200 Public Square
Cleveland, OH 44114-2302
(216) 241-2838
(216) 241-3707 – Fax
flivingstone@taftlaw.com

Attorney for Plaintiffs

Of Counsel:
Mark J. Valponi
Majeed G. Makhlouf
Taft, Stettinius & Hollister LLP
3500 BP Tower
200 Public Square
Cleveland, Ohio 44114-2302
(216) 241-2838
(216) 241-3707 – Fax