**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **STATESMAN II APARTMENTS, INC., ET AL.,** | ) | **Case Nos. 04-805C and No. 04-806C (Consolidated)** |
| **Plaintiffs,** | ) | **JUDGE LETTOW** |
| **v.** | ) | |
| **THE UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

# PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

Fred J. Livingstone (Ohio No. 0009528)
*flivingstone@taftlaw.com*
TAFT, STETTINIUS & HOLLISTER LLP
3500 BP Tower
200 Public Square
Cleveland, Ohio 44114-2302
(216) 241-2838
(216) 241-3707 (facsimile)

*Attorney for Plaintiff*

Of Counsel:

Mark J. Valponi (Ohio No. 0009527)
Majeed G. Makhlouf (Ohio No. 0073853; District of Columbia No. 481643)
TAFT, STETTINIUS & HOLLISTER LLP
3500 BP Tower
200 Public Square
Cleveland, Ohio 44114-2302
(216) 241-2838

March 10, 2005

## TABLE OF CONTENTS


TABLE OF CONTENTS ........ i

TABLE OF AUTHORITIES ........ iii

TABLE OF APPENDIX ........ iv

I. INTRODUCTION ........ 1

II. PLAINTIFFs EXPECT TO PROVE THE FOLLOWING FACTS ........ 3

A. Statesman II (All of the facts in this subsection A are contained in Joint Stipulations 3 through 21) ........ 3

B. Beach House (All of the facts contained in this subsection B are contained in Joint Stipulations 22 through 36) ........ 4

C. HAP Contracts ........ 5

III. PLAINTIFFS' POSITION AS TO FACTS ON WHICH HUD IS EXPECTED TO RELY ........ 7

A. Overall Limitation ........ 7

IV. ISSUES OF FACT AND LAW TO BE RESOLVED BY THE COURT ........ 12

A. Issues Of Fact to be Resolved ........ 12

B. Issues of Law to be Resolved ........ 12

V. LEGAL PRINCIPLES APPLICABLE ........ 13

A. For the Years in Question, the Presumptive Adjusted Contract Rent Applies Without Limitation Because of HUD's Failure to Appropriately Exercise its Discretion to Make a Determination of Material Difference. ........ 13

B. The Regulations Governing the Development of Statesman Were as Amended in 1977 and for Beach House Were as Amended in 1976. ........ 20

VI. RESPONSE TO DEFENDANT'S ANTICIPATED LEGAL POSITION ........ 21

A. The Sum of Comparable Rent and Initial Difference Determined by the Notice to be the Overall Limitation of the Adjustment of Contract Rent is Not a Reasonable Interpretation of That Provision. ........ 21

B. The Requirement of Material Difference is Not Satisfied by the Initial Difference Even if the Initial Difference is Substantial.......... 21

C. The Initial Difference is the Difference Between Assisted and Comparable Unassisted Units to the Extent That Such Differences May Have Existed With Respect to the Initial Contract Rent. .......... 23

# TABLE OF AUTHORITIES

## CASE LAW

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) ............24

*Cisneros v. Alpine Ridge Group,* 508 U.S. 10 (1993)..........................................................14, 16

*Cuyahoga Metropolitan Housing Authority v. United States,* 65 Fed. Cl. 534 (2005)............ 21-22

*Graham Oil Co. v. ARCO Prod. Co.*, 43 F.3d 1244 (9th Cir. 1995) ...........................................18

*Hudson v. Wylie*, 242 F.2d 435 (9th Cir. 1957) ................................................................... passim

*ITT Indus., Inc. v. Rayonier, Inc*., No. 05 Civ.4322, 2005 WL 1744988 (S.D.N.Y. 2005)..... 18-19

*National Leased Housing Assn. v. United States*, 105 F.3d 1423 (Fed. Cir. 1997)................15, 22

*National Leased Housing Assn. v. United States*, 32 Fed. Cl. 454 (1994) .............................15,22

*Park Village Apts. v. United States*, 32 Fed. Cl. 441 (1994) ..................................... 15-16, 17, 22

*Torrence v. AAmes Funding Corp.*, 242 F.Supp.2d 862 (D.Or. 2002).........................................17

*Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) ...........................................................................24

*Statesman II Apartments, Inc. v. United States,*
66 Fed.Cl. 608 (2005) ............................................................. 1-2, 6-7, 11, 14-17, 19, 22-22, 24

## LEGISLATION

42 U.S.C. §1437f ...................................................................................................................2, 19

Department of Veterans Affairs and Housing and Urban Development
and Independent Agencies Appropriates Act of 1995, Pub. L. No. 103-327,
108 Stat. 2298 (1994)......................................................................................................................2

## CODE OF FEDERAL REGULATIONS

24 C.F.R. § Part 880 ......................................................................................... 6, 13, 30-21, 23

24 C.F.R. § Part 881.....................................................................................................................6, 13

HUD NOTICES

HUD Notice 95-12 ........................................................................... 2, 4-6, 10, 12-16, 21-23

OTHER AUTHORITIES

Merriam-Webster Collegiate Dictionary (11th Edition) ........................................................ 16

Joseph D. Calamari & Joseph M. Perillo, *Contracts* (3d ed. 1987) ..................................... passim

## TABLE OF APPENDIX

Plaintiff's Witness List ............................................................................................................ A

Plaintiff's Exhibit List ............................................................................................................. B

**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **STATESMAN II APARTMENTS, INC., ET AL.,** | ) | Case Nos. 04-805C and No. 04-806C (Consolidated) |
| Plaintiffs, | ) | JUDGE LETTOW |
| v. | ) | |
| **THE UNITED STATES OF AMERICA,** | ) | **PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW** |
| Defendant. | ) | |

In accordance with paragraph 14 of Appendix A of the Rules of the United States Court of Federal Claims and the Court's Order, dated September 2, 2005, Plaintiffs are submitting their Memorandum of Contentions of Fact and Law.

## I. INTRODUCTION

Plaintiffs, Statesman II Apartments, Inc., an Ohio corporation ('Statesman II"), and Beach House Development Company, an Ohio limited partnership ("Beach House"), are suing The United States of America, acting through one of its agencies, the Department of Housing and Urban Development ("HUD"), for breach of housing assistance payments contracts ("HAP Contracts"). The Complaints allege that HUD refused to grant appropriate increases in their Contract Rents for the anniversary years 1998 through 2000 for Statesman II and 1998 through 2002 for Beach House. In its Order of July 20, 2005,[1] this Court found that the Government was liable for breach of the HAP Contracts because of the enactment of certain provisions of the

---

[1] *Statesman II Apartments, Inc. v. United States*, 66 Fed.Cl. 608 (2005)**.** The order will be cited herein by as Opinion at __ ("Op. at ___").

1994 Amendments to the Housing Act ("Amendments")[2] and HUD Notice 95-12 and successor notices issued pursuant thereto ("the Notice"). Op. at 623. It also found that the Notice read out of the HAP Contracts the concept of "material difference" ("Material Difference"), particularly the word "material." Ibid.

The matter is set for trial on April 25, 2006, on the issue of damages. However, Joint Stipulation 37 of the parties makes a trial in Cleveland unnecessary. That stipulation reads:

> "HUD Notice 95-12 and the HUD notices that extend it contain the only definition by HUD of what constitutes a "material difference" for the purposes of the "overall limitation" upon rent adjustments contained in Plaintiffs' HAP Contracts after the enactment of the 1994 Amendments to 42 U.S.C. §1437f."

HUD's only determination of Material Difference is contained in the Notice. However, this Court has already found that the Notice was improper because it read Material Difference out of the Overall Limitation provision. Clearly, Material Difference cannot be severed from the Overall Limitation without destroying the meaning of the provision and consequently, its enforceability .

Accordingly, based on Joint Stipulation 37 that the Notice is HUD's only determination of Material Difference and the Court's finding that the Notice improperly read an integral term out of the Overall Limitation provision, HUD cannot enforce the Overall Limitation provision and limit the adjusted rent increases. Consequently, there is no need for a trial in this case because the presumptive adjusted rent must become the Contract Rent. A finding that the presumptive adjusted rent becomes the Contract Rent obviates the need to try the factual issue of Initial Difference because Initial Difference is part of the Overall Limitation. Initial Difference does not need to be determined if the Overall Limitation is not being applied. Section V.A. of

---

[2] Department of Veterans Affairs and Housing and Urban Development and Independent Agencies Appropriates Act of 1995, Pub. L. No. 103-327, 108 Stat. 2298, 2315 (1994) (amending 42 U.S.C. § 1437f(c)(2)(A).

this Memorandum will further elaborate why the within instant cases should be decided as a matter of law.

## II. PLAINTIFFS EXPECT TO PROVE THE FOLLOWING FACTS

### A. Statesman II (All of the facts in this subsection A are contained in Joint Stipulations 3 through 21)

Statesman II is the owner of Statesman Apartments, a low-income rental housing project, consisting of five, two-story, walk-up apartment buildings containing a total of 20 one-bedroom units and 27 two-bedroom units. On or about June 7, 1979, its predecessor partnership ("Partnership") submitted to HUD a Preliminary Proposal under the Section 8 Housing Assistance Program for substantial rehabilitation of said units. On September 6, 1979, HUD notified the Partnership that its Preliminary Proposal had been selected for approval.

After the completion of rehabilitation, the Partnership and HUD entered into a Housing Assistance Payments Contract ("the Statesman II HAP Contract"), which was executed in stages beginning with Stage 1 effective on November 14, 1980, the anniversary date of the contract. In addition, the Partnership obtained HUD-insured financing for the project.

The Statesman II HAP Contract was for a maximum of 20 years and was terminated on November 30, 2000. The initial monthly contract rents under the Statesman II HAP Contract were $370 for the one-bedroom units with a $50 tenant utility allowance and $424 for the two-bedroom units with a $65 tenant utility allowance. The most recent rent adjustment for the Statesman Apartments was effective on November 14, 1992. From November 14, 1992, until November 30, 2000, when the Statesman II HAP Contract expired, the monthly contract rents for Statesman Apartments were $586 with a tenant utility allowance of $76 for the one-bedroom units, and $671 with a tenant utility allowance of $100 for the two-bedroom units.

On April 2, 2004, Statesman II made a request to HUD for additional HAP payments for the years 1998 through 2000. Statesman II submitted comparability studies for the years 1998 through 2002 and the other documents required by the Notice. On April 23, 2004, HUD denied that request.

All of the above facts have been stipulated by the parties.

**B. Beach House (All of the facts contained in this subsection B are contained in Joint Stipulations 22 through 36)**

Beach House is the owner of Lakeshore Village, a low-income rental housing project, consisting of five, three-story, walk-up apartment buildings containing 102 two-bedroom units and six three-bedroom units. On or about July 29, 1977, Beach House submitted to HUD a Preliminary Proposal under the Section 8 Housing Assistance Program for New Construction for construction of Lakeshore Village. On September 12, 1977, HUD notified Beach House that its Preliminary Proposal had been selected for approval.

After completion of construction, Beach House and HUD entered into a Housing Assistance Payments Contract for Lakeshore Village ("the Beach House HAP Contract"). The contract was executed in stages beginning with Stage 1 effective on October 4, 1982. The Contract was for a maximum of 20 years and had an anniversary date of October 4. In addition, Beach House obtained HUD-insured financing for the project.

The initial monthly contract rents under the Beach House HAP Contract were $474 for the two-bedroom units with a tenant utility allowance of $50 and $537 for the three-bedroom units with a tenant utility allowance of $60. The most recent rent adjustment for Lakeshore Village under the Beach House HAP Contract was effective on October 4, 1994. From October 4, 1994, until the Beach House HAP Contract expired on October 4, 2002, the monthly contract

rents for Lakeshore Village were $662 with a tenant utility allowance of $98 for the two-bedroom units and $779 with a tenant utility allowance of $118 for the three-bedroom units.

On April 2, 2004, Beach House made a request to HUD for additional HAP payments for the years 1998 through 2002. Beach House submitted comparability studies for the years 1998 through 2002 and the other documents required by the Notice. On April 23, 2004, HUD denied that request.

All of the above facts have been stipulated by the parties.

### C. <u>HAP Contracts</u>

The Plaintiffs intend to prove that the HAP Contracts for Statesman II and Beach House are the same in their general terms. (Plaintiff's Exhibits ("Pl. Ex.") 1 and 2 (HUD Contracts).) Section 1.6a(1) provides that housing assistance payments will be paid to the owner in an amount that covers the difference between the Contract Rent and that portion of the rent payable by the resident. (Ibid.) Section 1.8b(1) provides that automatic annual adjustment factors will be determined and published by HUD and, pursuant to section 1.8b(2), on the anniversary date of the contract, the Contract Rent would be multiplied by the applicable factor to adjust the rent. (Ibid.) Finally, the rent so adjusted would be subject to the Overall Limitation in section 1.8 d. That section states that:

> "…adjustments as provided in this section shall not result in *material differences* between the rents charged for assisted and comparable unassisted units, as determined by the Government; provided, that this limitation shall not be construed to prohibit differences in rents between assisted and comparable unassisted units to the extent that such differences may have existed with respect to the initial Contract Rents."

(Ibid. (emphasis added).)

The Plaintiffs further will offer evidence that the annual adjustment of rent under the HAP Contracts occurs in a series of steps. (Pl. Ex. 35 (Donahue Dep.) at 31; Ex. 8 of Donahue

Dep. (Video Handout) at STA-HUD 0464.) This Court has already recognized this in the analysis portion of its Opinion, section A-1 "Automatic Adjustment of Rents." (Op. at 616-20) The first step is HUD's determination and publication of the AAAF. In the second step, the Contract Rent is multiplied by the AAAF to obtain the presumptive adjusted rent. (Pl. Ex. 35 (Donahue Dep.) at 31; Ex. 8 of Donahue Dep. (Video Handout) at STA-HUD 0464.) In the third step, HUD is then obligated, as this Court has already found,[3] to determine whether the Overall Limitation of section 1.8d of the HAP Contracts applies and whether a Material Difference exists between the rents charged for assisted and comparable unassisted units. Ibid. at 31-32 Since the enactment of the Amendments, HUD stipulates that its only attempt to define Material Difference is contained in the Notice. (Joint Stipulation ("Stip.")37.)

Finally, Plaintiffs will offer evidence that the Statesman II HAP Contract was subject to HUD Regulations 24 C.F.R. § Part 881 (amended 6/77) and the Beach House HAP Contract was subject to HUD Regulations 24 C.F.R. § Part 880 (amended 11/76). For each anniversary year from 1995 through 2002, HUD published the following applicable automatic annual adjustment factors ("AAAF") which, if applied without any limitation since 1995, would have yielded the following contract rents:[4]

| | | Statesman II | | Beach House | |
|---|---|---|---|---|---|
| Year | AAAF | 1BR | 2BR | 2BR | 3BR |
| 1994 | | $586 | $671 | $662 | $779 |
| 1995 | 1.017 | $596 | $682 | $673 | $792 |

[3] Op. at 617

[4] The automatic annual adjustment factors for 1998 through 2002 have been stipulated to. (Stip. 2). The factors for 1995 through 1997 are contained in the following Federal Registers: 1995 Vol. 60, No. 44, p. 12596; 1996 Vol. 60, No. 213, p. 55937; 1997 Vol. 61, No. 242, p. 66135, of which the Court can take judicial notice. The Contract Rents are calculated beginning with the following stipulated rents for 1994 through the termination date: Statesman II 1BR $586 and 2BR $671; Beach House 2BR $662 and 3BR $779. These 1994 rents are then multiplied by the 1995 AAAF. The resulting Contract Rent is then multiplied in 1996 by the applicable factor. The same procedure was followed for each of the following years.

| | | | | | |
|---|---|---|---|---|---|
| 1996 | 1.032 | $615 | $704 | $695 | $818 |
| 1997 | 1.028 | $632 | $724 | $714 | $840 |
| 1998 | 1.033 | $653 | $748 | $738 | $868 |
| 1999 | 1.051 | $686 | $786 | $775 | $913 |
| 2000 | 1.020 | $700 | $802 | $791 | $931 |
| 2001 | 1.022 | | | $808 | $951 |
| 2002 | 1.029 | | | $832 | $979 |

The same automatic annual adjustment factors ("AAAF"), if applied without any limitation since 1998, would have yielded the following contract rents:[5]

| | | Statesman | | Beach House | |
|---|---|---|---|---|---|
| Year | AAAF | 1BR | 2BR | 2BR | 3BR |
| 1998 | 1.033 | $605 | $693 | $684 | $805 |
| 1999 | 1.051 | $636 | $728 | $719 | $846 |
| 2000 | 1.020 | $649 | $743 | $733 | $863 |
| 2001 | 1.022 | | | $749 | $882 |
| 2002 | 1.029 | | | $771 | $907 |

## III. PLAINTIFFS' POSITION AS TO FACTS ON WHICH HUD IS EXPECTED TO RELY

### A. Overall Limitation

HUD bears the burden of proof on the application of the Overall Limitation pursuant to section 1.8d of the HAP Contract. HUD justifies its denial of the Contract Rent adjustments sought by Plaintiffs on this provision. Plaintiffs challenge the ability of HUD to use the Overall Limitation at all because of the failure of HUD to make an appropriate determination of what constitutes a Material Difference under that provision, as already found by the Court. Op. at 623. Plaintiffs' contentions on this issue are more fully explained in Section V.A. of this Memorandum.

Application of the Overall Limitation provision requires the ascertainment of several figures or determinations:

[5] The stipulated rents for 1994 (which were also the stipulated rents for 1998) were used as the starting rents and were then multiplied by the 1998 AAAF. The procedure described in footnote 3 was followed thereafter.

a. Comparable rent for unassisted units.

b. Initial Difference - any difference which may have existed between the initial Contract Rent and the rent for comparable unassisted units at the time the HAP Contract is entered into.[6]

c. Material Difference – a significant difference, a difference of great importance, or a "difference of concern" between a.) the Contract Rent adjusted by the applicable AAAF and b.) the sum of comparable rent for unassisted units plus the Initial Difference.[7]

HUD is expected to argue that it has the discretion to determine all three of these figures although Plaintiffs dispute that HUD has any discretion to determine Initial Difference.

1. Comparable Rents

The parties agree that the comparable rents for unassisted units for the years in question are:

| | Statesman II | | Beach House | |
|---|---|---|---|---|
| Year | 1BR | 2BR | 2BR | 3BR |
| 1998 | $518 | $576 | $450 | $555 |
| 1999 | $527 | $581 | $460 | $565 |
| 2000 | $527 | $582 | $470 | $585 |
| 2001 | | | $490 | $595 |
| 2002 | | | $520 | $645 |

(Stip. 21 and 36)

2. Initial Difference

Plaintiffs will present evidence that the Initial Difference is a component of Contract Rent separate and apart from Material Difference and must be preserved separately. The Initial Difference represents special adjustments that were added to the initial comparable rent in order

[6] Pl. Ex. 35 (Donohue Dep.), Ex. 13. of Donahue Dep.( HAP §1.8d); Pl. Ex. 49 (24 C.F.R. § 880.110 (1979)) at STA-HUD 222; Pl. Ex. 51 (24 C.F.R. § 881.110 (1977)) at STA-HUD 1321.
[7] Pl. Ex. 43 (Video Transcript) at STA-HUD 1103, 1105.

to compensate owners for increased security services and higher costs of owning and maintaining assisted family housing. (Pl. Ex. 49 (HUD Handbook 7420.1) at 9-13, STA-HUD 110.) Initial Difference is also designed to compensate for the additional costs required for the management of elderly/handicapped occupancy, as well as the cost of additional amenities and design features required for such housing. Ibid. Because these conditions persist throughout the term of the HAP Contracts, it was the reasonable expectation of the parties that this difference would continue throughout the term of the HAP Contract. (Pl. Ex. 43 (Video Transcript) at STA-HUD 1110.)

Plaintiffs will present evidence that when Statesman II and Beach House were processed for initial Contract Rent, HUD had the authority to grant up to 20% in special adjustments over and above comparable rent. (Pl. Ex. 49 (HUD Handbook 7420.1) at 9-13, STA-HUD 110; Pl. Ex. 36 (Schwegler Dep.) at 15-24.) During the time when these projects were being processed, HUD's policy varied. Initially, it was to grant special mandatory adjustments; e.g., a 10% adjustment for a 100% assisted project which was HUD-insured[8] and a 5% adjustment to compensate for the payment of mortgage discounts for HUD-insured projects. Ibid. In addition, the HUD field office was authorized to grant an additional 5% adjustment under exceptional circumstances. Ibid. These were mandatory adjustments and the Initial Difference for each of the Plaintiffs would be at least 15% of the Initial Contract Rent. This would amount to $56 for one-bedroom units($370 x .15) and $64 for two-bedroom units ($424 x .15) in the case of

[8] Statesman II and Beach House were both 100% assisted projects and had HUD-insured financing. Stip. 12, 13, 27, 29

Statesman and $72 ($474 x .15) for two-bedroom units and $81 ($537 x .15) for three-bedroom units in the case of Beach House.[9]

HUD is expected to present evidence that the Initial Difference for Statesman II was $34 for the 1BR units and $39 for the 2BR units based upon HUD Form 92273, "Estimate Market Rents by Comparison." (Pl. Ex. 4 (Initial HUD Form 92273 for Statesman).) For Beach House, there is no record of a HUD Form 92273. Under those circumstances, it is HUD's policy under the Notice to allow 10% of the initial Contract Rent as the Initial Difference. At a 10% level the Initial Difference would be $48 for the 2BR units and $54 for the 3BR units. (Pl. Ex. 43 (Video Transcript,) at STA-HUD 1106; Pl. Ex. 35 (Donahue Dep.) at 45; Ex. 8 of Donahue Dep. (Video Handout), STA-HUD 0433.)

Plaintiffs will present evidence that, pursuant to language in the Regulations and the HAP Contracts, the Initial Difference for Statesman II should have been $73 for the 1BR units and $87 for the 2BR units and for Beach House, no less than $95 for 2 BR units and $107 for 3 BR units. Additionally, Plaintiffs will show that comparability is not permitted to diminish the Initial Difference.

3. Material Difference

The parties have stipulated that the Notice was the only determination of Material Difference made by HUD after enactment of the Amendments. See Stip. 37. The Notice limits rent adjustments to the lesser of the Contract Rent as adjusted by the applicable AAAF ("Adjusted Rent") or the sum of comparable rent and Initial Difference. This Court has already found that the Notice and the Amendments:

> "effectively eliminated the qualifier "material" from the operative term "material differences" in Section 1437f(c)(2)(C) of the

[9] HUD's policy at the time was to round up all fractional dollars. (Pl. Ex. 35 (Donahue Dep.) at 31, STA-HUD 0464.)

> statute, at least when the adjusted rent would exceed the unassisted rent for a comparable unit." Op. at 621

This Court further found that HUD's justification was invalid:

> "…because it reads out the key term "material differences," triggering the overall limitation mechanism whenever any difference exists over the fair market rent or over the comparable rent plus initial difference." Op. at 623.

Nevertheless, HUD is expected to argue that any difference from comparable rent in excess of the Initial Difference is a Material Difference and that it has the discretion to determine for what reason and in what amount a Material Difference exists. (Pl. Ex. 43 (Video Transcript,) at STA-HUD 1106; Pl. Ex. 35 (Donahue Dep.) at 45; Ex. 8 of Donahue Dep. (Video Handout), STA-HUD 0434.) In other words, HUD will argue that if a difference is "of concern" to HUD, i.e., if the reason for the difference is one with which HUD does not agree, such difference is material. Ibid. Further, Plaintiffs expect that HUD will argue that Congress, by enacting the Amendments, determined that HUD should not allow any difference.

Plaintiffs will present evidence showing HUD's various inconsistent attempts over the years to satisfy their obligation under the Overall Limitation provision to reasonably define Material Difference. This Court has so noted. Op. at 623, 620-624. In 1985, HUD addressed the issue for the first time in a Memorandum. (Pl. Ex. 39 (1985 Memorandum); See Pl. Ex. 43. (Video Transcript) at STA-HUD 1113.) The 1985 Memorandum defined Material Difference as any difference from comparable rent in excess of the Initial Difference. (Pl. Ex. 35 (Donahue Dep.) at 12; Pl. Ex. 39 (1985 Memorandum) at STA-HUD 1163.) In 1986 it modified that definition to allow an excess for operating needs in addition to Initial Difference so long as the resulting adjusted rent did not exceed 120% of the sum of comparable rent and the Initial Difference. (Pl. Ex. 40 (1986 Memorandum); Pl. Ex. 35 (Donahue Dep.) at 15-18; Pl. Ex. 40 (1986 Memorandum) at 4.)

A straightforward reading of the Notice confirms the Court's finding that the Notice does not treat Material Difference as a separate component of the Contract Rent. If it could be said to do so, the effect of the Notice would be to return to the 1985 HUD determination that Material Difference is that amount, no matter how small, which is in excess of the sum of comparable rent and the Initial Difference.

## IV. ISSUES OF FACT AND LAW TO BE RESOLVED BY THE COURT

### A. <u>Issues Of Fact to be Resolved</u>

As stated earlier, if this Court finds that HUD is precluded from applying the Overall Limitation, there will be no factual issues to resolve. If a trial is necessary, the following issues must be resolved:

1. Whether the concept of Initial Difference is based on reasons separate and apart from the concept of Material Difference.

2. Whether the Initial Difference for Statesman II was $34 or $73 for one bedroom units and $39 or $87 for two bedroom units.

3. Whether the Initial Difference for Beach House was 10% of the Initial Contract Rent namely, $48 (10% of $474, rounded up) for two bedroom units and $54 (10% of $537) for three bedroom units or $95 (20% of $474, rounded up) and $107 (20% of $537), respectively.

### B. <u>Issues of Law to be Resolved</u>

1. Because HUD made an improper determination under the Notice of what is a Material Difference for the purpose of section 1.8d of the HAP Contracts, can HUD apply the Overall Limitation to limit the adjusted or "presumptive" Contract Rent?

2. If the answer to Legal Issue 1 is "no," do the Contract Rents as adjusted by the AAAF, the presumptive rent, constitute the Contract Rents for each year in question?

3. If the answer to Legal Issue 2 is "yes," are the rents calculated for 1998 through 2000 in the case of Statesman II and through 2002 in the case of Beach House, as if the Contract Rent adjustments had been made since 1995 or only since 1998?

4. Is the Statesman II HAP Contract governed by HUD Regulation 24 C.F.R. § Part 881 as amended in 1977 or as amended in 1979?

5. Is the Beach House HAP Contract governed by HUD Regulation 24 C.F.R. § Part 880 as amended in 1976 or as amended in 1979?

## V. LEGAL PRINCIPLES APPLICABLE

### A. For the Years in Question, the Presumptive Adjusted Contract Rent Applies Without Limitation Because of HUD's Failure to Appropriately Exercise its Discretion to Make a Determination of Material Difference.

This Court should find that HUD cannot enforce the Overall Limitation because it has not appropriately determined the meaning of the word "material" in the phrase "Material Difference." The word "material" is an integral part of the Overall Limitation which, as shown below, cannot be severed from it. Since the Notice is HUD's only determination of Material Difference, and since this Court has already determined that HUD, in the Notice, has improperly read the word "material" out of the Overall Limitation provision, HUD cannot now enforce such provision. Consequently, the presumptive adjusted Contract Rent must become the final Contract Rent, and there is no need for a trial in this case.

#### 1. The Automatic Annually Adjusted Rent is the Presumptive Adjusted Contract Rent.

Section 1.8 of the HAP Contracts addresses the "automatic annual adjustments" of rent. The sequence of steps set forth in that provision make it plain that after publication of the AAAFs by HUD:

> On the anniversary date of the Contract, the Contract Rents shall be adjusted by applying the applicable Automatic Annual Adjustment factor most recently published by the Government.

Section 1.8b (2). (Pl. Exs. 1 and 2 (HAP Contracts).)

The United States Supreme Court has stated:

> The rent adjustments indicated by the automatic adjustment factors remain the presumptive adjustment called for under the contract. It is only in those presumably exceptional cases where the Secretary has reason to suspect that the adjustment factors are resulting in materially inflated rents that a comparability study would ensue.

*Cisneros v. Alpine Ridge Group,* 508 U.S. 10, 19 (1993).

The Overall Limitation provision in section 1.8d is separate and apart from the automatic annual adjustment provision in section 1.8b(2) and this Court has so found. See Op. at 616. Therefore, the automatic annual adjustment of the Contract Rent necessarily has to be calculated before moving to the step of applying the Overall Limitation. (See Pl. Ex. 35 (Donahue Dep.) at 32-33). Once the Contract Rent is calculated, it is either appropriately limited by HUD's application of the Overall Limitation or, in the absence of such limitation, it becomes the Contract Rent.

2. Since Enactment of the Amendments, this Court has Found That HUD has Improperly Exercised its Discretion to Determine Material Difference Under the Overall Limitation Provision of Section 1.8d.

The parties have stipulated that the Notice is HUD's only determination of Material Difference since the enactment of the Amendments. Stip. 37. This Court has noted that the Notice does not mention the term "Material Difference" except when quoting section 1.8d of the HAP Contracts. Op. at 625. And as the Court further noted, the Notice conflates the concept of Material Difference with the concept of Initial Difference. Op. at 625-26.

In fact, Congress and HUD have effectively read the word "material" out of the term Material Difference. Indeed, the Amendments and the Notice have ignored the concept of Initial

Difference in violation of the last clause in section 1.8d. Op. at 621. That clause states explicitly that the Overall Limitation shall not be construed to eliminate any Initial Difference. Op. at 624. The rationale behind that language is that the Initial Difference represents special upward adjustments given in connection with the establishment of the initial Contract Rent to compensate owners for the additional expenses connected with subsidized housing and the obtaining of financing for same. See *National Leased Housing Assn. v. United States*, 32 Fed. Cl. 454, 469 (1994) ("*NLHA III*"); *Park Village Apts. v. United States*, 32 Fed. Cl. 441, 450 (1994) ("*Park Village II*"); *National Leased Housing Assn. v. United States*, 105 F.3d 1423, 1425 (Fed. Cir. 1997) ("*NLHA App.*"). It was the reasonable expectation of the parties that this recognition of the additional cost of operating and financing subsidized housing would continue throughout the life of the HAP Contracts. (Pl. Ex. 43 (Video Transcript) at STA-HUD 1110.) Accordingly, the continued recognition of these additional costs can only be accomplished if the Initial Difference is preserved.

Historically, HUD has always added the Initial Difference to comparable rent in calculating the Overall Limitation. "HUD apparently decided to add the initial difference to the comparable rents before applying the 120% factor to adhere to the proviso in the overall limitation that 'this limitation shall not be construed to prohibit differences in rents between assisted and comparable unassisted units to the extent such differences may have existed with respect to the initial Contract Rents.'" *Park Village II at* 453. What HUD has not done in the Notice is to allow for any amount in excess of the sum of comparable rent and Initial Difference ("the Sum").

The concept of Material Difference also has a rationale. As this Court pointed out in *Park Village II,* HUD's determination that any amount in excess of 120% of the Sum would be a

Material Difference, was beneficial to HUD because otherwise HUD would have had to perform many costly comparability studies. *Park Village II*, 452-453. Providing for a 20% Material Difference in excess of the Sum "assures that the AAAF would ordinarily control and it also brings comparability into issue where the contract rents depart fairly substantially from contract rents." Ibid, at 453. The *Cisneros* Court also felt that the need to obtain comparability studies would be the exception and not the rule. *Cisneros,* 508 U.S. at 19. Additionally, Material Difference is a recognition of the fact that appraisal is not rocket science, and allowing for a Material Difference gives the leeway that covers a range of reasonable appraisal opinions of what is comparable rent.

As this Court has found, the Notice represents HUD's failure to make a proper determination of Material Difference under the Overall Limitation provision. Op. at 621. First, there is no difference at all in excess of the Sum and second, because not only does there have to be difference, but also any difference has to be material. Op. at 624. HUD, in the past, has interpreted "material" in accordance with the accounting concept of the word; that is, "material" means to be significant and a matter of concern to the user. (Pl. Ex. 43 (Video Transcript) at STA-HUD 1103, 1105). Merriam-Webster's Collegiate Dictionary defines material as "having real importance or great consequence." Merriam-Webster Collegiate Dictionary (11th Edition).

It is difficult to conceive of any way in which the Notice comports with the requirements of the HAP Contract to provide for a difference which is significant, of real importance, of great consequence, or which would be a matter of concern and still give recognition to the independent reasons for the Initial Difference. In fact, HUD is constrained by the language of the Amendments which omit any Material Difference language and which permit HUD to adjust the rent "only to the extent that the owner demonstrates the adjusted rent would not exceed the rent

for an unassisted unit of similar quality, type and age in the same market area." Op. at 612, 618. Accordingly, it is clear that HUD has not properly exercised, and cannot properly exercise, the discretion required under the Overall Limitation provision.

3. The Consequence of Improperly Exercising HUD's Discretion Under the Overall Limitation Provision Is that HUD Cannot Apply the Overall Limitation Provision to Limit the Presumptive Adjusted Contract Rent.

HUD is obligated under section 1.8d, the Overall Limitation provision of the HAP Contracts, to exercise its discretion by making a determination of what is a Material Difference. *Park Village II* at 447. It has failed to do so properly. Op. at 617-18. At best, as this Court has found, HUD has exercised its discretion by reading the word "material" out of the term Material Difference. Op. at 623. Without an appropriate determination of Material Difference, the Overall Limitation provision cannot be enforced because Material Difference is an essential and integrated part of section 1.8d which cannot be separated from the rest without changing the entire meaning of that section 180 degrees.

Where a concept is an integral part of a provision which cannot be severed from same, that provision cannot be enforced. *Torrence v. AAmes Funding Corp.*, 242 F.Supp.2d 862 (D.Or. 2002). There are many cases dealing with the issue of whether illegal provisions can be severed from a contract without destroying the enforceability of the remaining provisions. The Ninth Circuit set forth the principles involved in making that determination as follows:

> It is a well-known principle in contract law that a clause cannot be severed from a contract when it is an integrated part of the contract. As one leading treatise has noted, "a contract should be treated as entire when by consideration of its terms, nature and purposes each and all of the parts appear to be interdependent and common to one another." Joseph D. Calamari & Joseph M. Perillo, *Contracts* 478 n. 76 (3d ed. 1987). As we noted in one of our early surveys of contract law, a "contract is entire, and not severable, when, by its terms, nature and purpose, it contemplates and intends that each and all of its parts, [and] material

> provisions…are common to the other, and interdependent." *Hudson v. Wylie*, 242 F.2d 435, 446 (9th Cir. 1957).

*Graham Oil Co. v. ARCO Prod. Co.*, 43 F.3d 1244, 1248 (9th Cir. 1995).

The court in *Graham* was faced with an arbitration clause in a contract, which had a number of provisions that violated Federal law. It used the principles applicable to whole clauses being severed from a contract to determine whether just the illegal provisions alone could be severed from the arbitration clause:

> The more difficult question is whether the *entire* arbitration clause should be severed, or simply the provisions pertaining to exemplary damages, attorney's fees, and the statute of limitations. Relying on principles that are analogous to those we use in determining whether a particular clause is severable from an entire contract, we conclude that in this case the *entire* clause must be eliminated.

Ibid. (emphasis in the original).

So too in this case, analysis shows how integral the concept of a Material Difference is to section 1.8d. If the word "material" is omitted, the pertinent parts of section 1.8d would read "…adjustments as provided in this section shall not result in…differences between rents charged for assisted and comparable unassisted units…" That clearly means differences are not permitted between assisted and unassisted rents. With the word "material" included in the term Material Differences, the meaning is that differences are permitted. The omission of "material" makes the meaning of the provision just the opposite of what it is when the word is included.

An additional way of regarding the matter is as a breach of contract. HUD, having failed to correctly make a determination of Material Difference, was in breach of contract and had no right to exercise the Overall Limitation provision. See *ITT Indus., Inc. v. Rayonier, Inc*., No. 05 Civ.4322, 2005 WL 1744988 at *4 (S.D.N.Y. 2005). In *ITT Indus.*, one party to a contract rent had discretion to allocate a certain award pursuant to specified criteria and improperly did so.

The court held its failure to properly exercise its discretion to allocate was a breach of contract. Thereafter, it could not exercise that discretion a second time. Ibid. at *4.

Under either the non-severability formulation or the breach of contract formulation, the Overall Limitation cannot be enforced. Accordingly, with HUD having no ability to apply the Overall Limitation, the presumptive adjusted rent called for under the HAP Contracts applies. See *Cisneros,* 508 U.S. at 19.

Plaintiffs' position that the presumptive adjusted rent must be awarded is further supported in the 1988 Amendments to Section 1437f(c)(2)(C). Those Amendments addressed the failure of HUD to exercise the Overall Limitation clause if HUD did not provide a comparability study at least 60 days before the anniversary date of the contract.[10] Op. at 617. If the comparability study is not provided within the time allowed, the statute states that "the automatic adjustment factor shall be applied." This reflects a clear Congressional understanding that HUD's failure to properly exercise its discretion to effectuate the Overall Limitation transforms the presumptive adjusted rent into the actual Contract Rent.

Clearly, the term "Material Differences" is an integral part of the Overall Limitation provision, from which the word "material" cannot be severed. Accordingly, these cases can be concluded as a matter of law. As stated earlier, there is no need to take evidence on Initial Difference which is part of the Overall Limitation provision because HUD is precluded from enforcing that provision. In such case, the Court will only have to determine if the automatic annual adjustments are to be calculated from 1995 or 1998, with the understanding that damages would only flow for the years 1998 to the termination of the Contracts.

---

[10] "If the Secretary or appropriate State agency does not complete and submit to the project owner a comparability study not later than 60 days before the anniversary date of the assistance contract under this section, the automatic adjustment factor shall be applied." 42 U.S.C. §1437f(c)(2)(C) (sixth sentence).

**B. The Regulations Governing the Development of Statesman Were as Amended in 1977 and for Beach House Were as Amended in 1976.**

Each project is subject to regulations in effect as amended to the date on which notification was issued of selection of its proposal for a HAP Contract. 24 C.F.R. § Part 880.104 (Beach House)[11]; 24 C.F.R. § 881.126 (Statesman II).[12] Since the Beach House notification of

---

[11] The pertinent parts of the 1981 version of Section 880.104 have remained unchanged since 1976 and read as follows:

> (a) The revised Part 880 applies to all proposals for which a notification of selection was not issued before the effective date of this revision. Where a notification of selection was issued for a proposal before the effective date, the revised Part will apply if the owner notifies HUD within 60 calendar days that he/she wishes the revision to apply and promptly brings the proposal into conformance.
> (b) Subparts E (Housing Assistance Payments Contract) and F (Management) apply to all projects for which an Agreement was not executed before the effective date of the revision. Where an Agreement was so executed:
>> (1) The owner and HUD may agree to make the revised Subpart E applicable and to execute appropriate amendments to the Agreement and/or Contract.
>> (2) The owner and HUD may agree to make the revised Subpart F applicable (with or without the limitation on distributions) and to execute appropriate amendments to the Agreement and/or Contract.

[12] The 1977 version of Section 881.126 is as follows:

> (a) If, prior to April 26, 1976, an Invitation for Proposals had been issued and (1) the deadline in said Invitation had passed and (2) copies of Proposals had been sent to the A-95 Clearinghouse and/or unit of general local government for comment, such Proposals shall be processed and selection shall be made in accordance with this Part prior to said date.
> (b) If, prior to April 26, 1976, an Invitation for Proposals had been issued but any of the conditions specified in paragraph (a) of this section had not occurred, Proposals shall continue to be received in accordance with the Invitation and the field office director shall make a determination whether to perform all further processing and other activities with respect to said Invitation and resulting Proposals (1) in accordance with this Part prior to said date until the selection of Proposals has been completed, or (2) in accordance with this Part as amended on said date. Where alternative (2) is utilized, the filed office shall notify the Owners who have submitted Proposals prior to the deadline of the additional documentation required and shall allow them a reasonable time, not to exceed 15 calendar days, to furnish such documentation.

selection occurred on September 12, 1977, it was subject to the version of the Regulations as amended in 1976. The 1979 Amendments to 24 C.F.R. § 880, claimed by HUD to be applicable, became effective on October 15, 1979, long after Beach House was notified of it selection.

Because the Statesman II notification of selection occurred on September 9, 1979, it was subject to the Regulations as amended in 1978. Our search of the Federal Register does not reveal any 1979 amendments to 24 C.F.R. § 881, claimed by HUD to be applicable.

## VI. RESPONSE TO DEFENDANT'S ANTICIPATED LEGAL POSITION

### A. The Sum of Comparable Rent and Initial Difference Determined by the Notice to be the Overall Limitation of the Adjustment of Contract Rent is Not a Reasonable Interpretation of That Provision.

HUD is expected to argue that the Notice provisions defining Material Difference as any excess over the Sum of comparable rent and the Initial Difference constitutes a reasonable interpretation of that provision. This Court has already found that not to be so. Op. at 623. This Court stated that HUD's reasoning is invalid for two reasons: first, because it was inconsistent with earlier interpretations of "Material Difference," and second, because it triggers the Overall Limitation mechanism whenever any difference exists over the fair market rent or over comparable rent plus initial difference. Ibid.

### B. The Requirement of Material Difference is Not Satisfied by the Initial Difference Even if the Initial Difference is Substantial.

In the alternative to its position outlined in "A" above, HUD is expected to argue that where the Initial Difference is substantial, the requirement of a Material Difference from comparable rent in Section 1.8d of the HAP Contract is satisfied. See *Cuyahoga Metropolitan Housing Authority v. United States*, 65 Fed. Cl. 534 (2005) ("*Cuyahoga II*"). To the extent *Cuyahoga* makes such a finding, it is inconsistent with the finding of this Court that " [HUD's] reasoning is invalid because it reads out the key term 'material differences,' triggering the

overall limitation mechanism whenever any difference exists over fair market rent or over the comparable rent plus the initial difference." Op. at 624. Additionally, the decision in *Cuyahoga* does not address the fact that the Initial Difference has a special purpose: i.e., it represents special additional adjustments to the initial contract rent to compensate owners for increased costs associated with subsidized housing. *NLHA App.* at 1425; *NLHA III* at 469-470; *Park Village II* at 450-451. Those additional costs persist throughout the life of the project and therefore, the Initial Difference needs to be protected and not merged into the concept of Material Difference.

To merge the concepts of Initial Difference and Material Difference eliminates one or the other in violation of section 1.8d. Historically, HUD treated them as separate components of Contract Rent. In 1987, HUD prepared a special video and accompanying handouts as training tools for calculating rent adjustments for use in its field offices. In these training materials, HUD specifically defined a Material Difference to exist when "Section 8 rent exceeds the unassisted rent by more than the initial difference and that excess is of concern to HUD". (Pl. Ex. 43, (Video Transcript) at STA-HUD 1097-1156; Pl. Ex. 35 (Donahue Dep). at 48; Ex. 8 of Donahue Dep. (Video Handout) at STA-HUD 0434.) The only things "not of concern" at that time were the operating needs of a project. If that situation <u>and only that situation</u> existed, the Adjusted Contract Rent was permitted to exceed the sum of comparable rent and Initial Difference up to a limit of 120% of that sum. (Pl. Ex. 35. (Donahue Dep.) at 31; Ex. 8 of Donahue Dep. (Video Handout), STA-HUD 0464.)

For the years in question in these cases, under the Notice, every excess is considered "material." Under that questionable standard, the Notice constitutes a breach of contract because it does not recognize the parties' reasonable expectations: 1) that the Contract Rents would

reflect comparable rents; 2) that the Contract Rents would reflect those additional costs which the Initial Difference represents; and 3) that the Contract Rents would not simply be the sum of items 1 and 2, but would not be materially different from them.

### C. <u>The Initial Difference is the Difference Between Assisted and Comparable Unassisted Units to the Extent That Such Differences May Have Existed With Respect to the Initial Contract Rent.</u>

HUD is expected to argue that the Initial Difference is the difference between the initial Contract Rents and the original correlated rent[13] determined by it on its Form 92273, "Estimate of Contract Rents by Comparison." (Pl. Ex. 4. (Initial HUD Form 92273 for Statesman).) In the absence of such a form, HUD policy, pursuant to the Notice, is to allow an Initial Difference of 10% of the initial Contract Rent. Notice at 4 (Pl. Ex. 40 (1986 Memorandum) at 2; Pl. Ex. 43 (Video Transcript) at STA-HUD 1112; Pl. Ex. 37 (DiFiore Dep.) at 13.)

Neither the HAP Contract nor the Regulations define Initial Differences as HUD is expected to argue. The HAP Contract in Section 1.8d echoes the language of regulations 24 C.F.R. § 880.110 and 24 C.F.R. § 881.110 defining Initial Difference:

> "…provided that this limitation shall not be construed to prohibit differences in rents between assisted and comparable unassisted units to the extent that such differences may have existed with respect to the initial contract rents."

The HAP Contract compares the initial Contract Rents with the rents charged for comparable unassisted units at the time the HAP Contract is entered into. Plaintiffs will demonstrate what the market rents were when the HAP Contracts were executed for each of the projects through appraisal evidence submitted by an independent, Ohio licensed appraiser, who is a Member of the Appraisal Institute ("MAI"), the premiere appraisal designation. Subtracting those rents from

---

[13] Correlated rent is the judgment of an appraiser of what is a comparable rent after reviewing rents from several properties deemed comparable. In effect, it is equivalent to the term "comparable rent."

the initial Contract Rents will comply with the contract language and the regulations. There is no ambiguity in either the regulations or the contract language that requires any interpretation by HUD under the *Chevron* or *Skidmore* rules. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944); cited and discussed in Op. at 622-23.

Respectfully submitted,

/s/ Fred J. Livingstone
FRED J. LIVINGSTONE (0009528)
Taft, Stettinius & Hollister LLP
3500 BP Tower
200 Public Square
Cleveland, OH 44114-2302
(216) 241-2838
(216) 241-3707 – Fax
flivingstone@taftlaw.com

*Attorneys for Plaintiffs*
*Statesman II Apartments, Inc., et al.*

Of Counsel:
MARK J. VALPONI
MAJEED G. MAKHLOUF
Taft, Stettinius & Hollister LLP
3500 BP Tower
200 Public Square
Cleveland, Ohio 44114-2302
(216) 241-2838
(216) 241-3707 – Fax

**CERTIFICATE OF SERVICE**

I hereby certify that on March 10, 2006, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Respectfully submitted,

/s/ Fred J. Livingstone

Fred J. Livingstone (0009528)
Taft, Stettinius & Hollister LLP
3500 BP Tower
200 Public Square
Cleveland, OH 44114-2302
(216) 241-2838
(216) 241-3707 – Fax
flivingstone@taftlaw.com

Attorney for Plaintiffs

Of Counsel:

Mark J. Valponi
Majeed G. Makhlouf
Taft, Stettinius & Hollister LLP
3500 BP Tower
200 Public Square
Cleveland, Ohio 44114-2302
(216) 241-2838
(216) 241-3707 – Fax